UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In Re:                                          Case No: 20-31858 (MER)
                                                                    Chapter 12
Buehring Properties, LLC,

                               **NOTICE OF HEARING AND MOTION**
                                    **FOR RELIEF FROM STAY**

                Debtor.

**TO:**      **ALL PARTIES IN INTEREST SPECIFIED IN LOCAL RULE 9013-3.**

1.      Unity Bank ("Bank") by and through its undersigned counsel, moves the Court for relief from the automatic stay imposed by 11 U.S.C. § 362(a) (the "Motion") and hereby provides notice of the hearing on the Motion.

2.      The Court will hold a hearing on the Motion before the Honorable Michael E. Ridgeway on October 29, 2020 at 2:30 p.m., at 300 South Fourth Street, Courtroom 7W, 7th floor, Minneapolis, Minnesota 55415.

3.      Any response to the Motion must be filed and delivered no later than October 24, 2020, which is five days prior to the time set for the hearing (including Saturdays, Sundays, and holidays) UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4.      The Court has jurisdiction over the Motion pursuant to 28 U.S.C §§ 157 and 1334. This is a core proceeding. The petition commencing this Chapter 12 case was filed on July 22, 2022 (the "Petition Date"). (Docket No. 1.)

5.      The Motion arises under 11 U.S.C § 362 and Fed. R. Bankr. P. 4001 and is filed under Fed. R. Bankr. 9014 and Local Rules 9006-1 and 9013-1 to 9013-3.

6.      Through the Motion, Bank requests an order terminating the automatic stay imposed by 11 U.S.C. § 362(a) to permit Bank to foreclose its liens on real property owned by Buehring Properties, LLC ("Debtor") and subject to mortgages in favor of Bank.

## BACKGROUND

**The Loan Documents**

### A.      LOAN XXXX0769

7.      On or about April 19, 2012, Bank made a loan to Buehring Farms LLC ("Buehring Farms") in the original principal amount of $763,000.00 ("Loan 0769").  (Declaration of Patrick Thiry (the "Thiry Dec.") Exh. A.)

8.      Loan 0769 is secured by that certain Mortgage dated April 19, 2012 (the "0769 Mortgage") executed and delivered to Bank by Nickolas Buehring A/K/A Nicholas Buehring ("Nicholas"), Diane Buehring A/K/A Diane L. Buehring ("Diane"), Brandon G. Buehring ("Brandon"), Chad Buehring ("Chad") and Lynette Buehring ("Lynette" and collectively with Nicholas, Diane, Brandon and Chad, the "Buehrings") and recorded in the Office of the County Recorder for Chisago County, Minnesota on April 19, 2012 as Document No. A-543569.  (Id. Exh. B.)

9.      The 0769 Mortgage encumbers real property located in Chisago County, Minnesota identified as parcels numbers 06.00271.00, 06.00533.15, 06.00260.00, 06.00261.00, 06.00532.00, 06.00269.00, 06.00272.10 and 06.00050.00 and as legally described in the 0769 Mortgage (the "0769 Property").

10.      On or about January 5, 2016, the 0769 Property was transferred by warranty deed to Debtor.  (Id. Exh. C.)  Despite the transfer, the Buehrings remain the mortgagors of record and the 0769 Property remains encumbered by and subject to the 0769 Mortgage.

### B.      Loan XXXX1970

11.     On or about February 14, 2002, Bank's predecessor-in-interest made a loan to Chad and Lynnette in the original principal amount of $56,000.00 ("Loan 1970").  (Id. Exh. D.)

12.     Loan 1970 is secured by that certain Mortgage dated December 14, 2002 (the "1970 Mortgage") executed and delivered by Chad and Lynnette to Bank and recorded in the Office of the County Recorder for Chisago County, Minnesota on February 15, 2002 as Document Number A-372316.  (Id. Exh. E.)

13.     The 1970 Mortgage encumbers real property located in Chisago County, Minnesota identified as parcel number 06.00533.15 (the "1970 Property").

14.     On or about January 5, 2016, Chad and Lynnette executed a warranty deed transferring the 1970 Property to Debtor.  (Id. Exh. F.)  Despite the transfer, Chad and Lynnette remain the mortgagors of record and the 1970 Property remains encumbered by and subject to the 1970 Mortgage.

### C.      LOAN XXXX3231

15.     On or about November 12, 2003, Bank's predecessor-in-interest made a loan to Brandon in the original principal amount of $35,000.00 ("Loan 3231").  (Id. Exh. G.)

16.     Loan 3231 is secured by that certain Mortgage dated November 12, 2003 (the "3231 Mortgage") executed and delivered by Brandon to Bank and recorded in the Office of the Chisago County Recorder on November 20, 2003 as Document No A-418549.  (Id. Exh. H.)

17.     The 3231 Mortgage encumbers real property located in Chisago County, Minnesota identified as parcel numbers 06.00260.00 and 06.00261.00 and as legally described in the 3231 Mortgage (the "3231 Property").

18.     On or about January 5, 2016, Brandon executed a warranty deed transferring the 3231 Property to Debtor.  (Id. Exh. I.)  Despite the transfer, Brandon remains the mortgagor of record and the 3231 Property remains encumbered by and subject to the 3231 Mortgage.

**D.     LOAN XXXX4321**

19.     On or about July 18, 2005, Bank's predecessor-in-interest made a loan to Brandon in the original principal amount of $210,000 ("Loan 4321").  (Id. Exh. J.)

20.     Loan 4321 is secured by that certain Mortgage dated July 20, 2005 (the "4321 Mortgage") executed and delivered by Brandon to Bank and recorded in the Office of the County Recorder for Chisago County, Minnesota on July 20, 2005 as Document No A-452996.  (Id. Exh. K.)

21.     The 4321 Mortgage encumbers real property located in Chisago County, Minnesota identified as parcel numbers 06.00260.00 & 06.00261.00 and as legally described in the 4321 Mortgage (the "4321 Property").

22.     On or about January 5, 2016, the 4321 Property was transferred by warranty deed to Debtor.  (Id. Exh. L.)  Despite the transfer, Brandon remains the mortgagor of record and the 4321 Property remains encumbered by and subject to the 4321 Mortgage.

**E.     LOAN XXXX3951**

23.     On or about December 27, 2004, Bank's predecessor-in-interest made a loan to Diane in the original principal amount of $70,000.00 ("Loan 3951").  (Id. Exh. M.)

24.     Loan 3951 is secured by that certain Mortgage dated December 27, 2004 (the "3951 Mortgage") executed and delivered by Diane to Bank and recorded in the Office of the County Recorder for Chisago County, Minnesota on December 28, 2004 as Document No. A-442166.  (Id. Exh. N.)

25.     The 3951 Mortgage encumbers real property located in Chisago County, Minnesota identified as parcel numbers 06.00271.00, 06.00532.00, 06.00269.00, 06.00272.10 and 06.00050.00 and as legally described in the 3951 Mortgage (the "3951 Property").

26.     On or about January 5, 2016, the 3951 Property was transferred by warranty deed to Debtor. (Id. Exh. O.) Despite the transfer, Diane remains the mortgagor of record and the 3951 Property remains encumbered by and subject to the 3951 Mortgage.

**F.     LOAN XXXX3897**

27.     On or about December 27, 2004, Bank's predecessor-in-interest made a loan to Brandon and Chad in the original principal amount of $465,000.00 ("Loan 3897"). (Id. Exh. P.)

28.     Loan 3897 is secured by that certain Mortgage dated November 19, 2004 (the "3897 Mortgage") executed and delivered by Diane to Bank and recorded in the Office of the County Recorder for Chisago County, Minnesota on November 30, 2014 as Document No. A-440474. (Id. Exh. Q.)

29.     The 3897 Mortgage encumbers real property located in Chisago County, Minnesota identified as parcel number 06.00271.00 and as legally described in the 3897 Mortgage (the "3897 Property").

30.     On or about January 5, 2016, the 3897 Property was transferred by warranty deed to Debtor. (Id. Exh. R.) Despite the transfer, Diane remains the mortgagor of record and the 3897 Property remains encumbered by and subject to the 3897 Mortgage.

**THE DEFAULTS**

31.     Buehring Farms is in default of its obligations under Loan 0769 because, among other things, it has failed to make monthly payment due under Loan 0769. (Id. ¶ 19.)

32.    Chad and Lynnette are in default of their obligations under Loan 1970 because, among other things, they have failed to make monthly payment due under Loan 1970.  (Id. ¶ 20.)

33.    Brandon is in default of his obligations under Loan 3231 because, among other things, he has failed to make monthly payment due under Loan 3231.  (Id. ¶ 21.)

34.    Diane is in default of her obligations under Loan 3951 because, among other things, he has failed to make monthly payment due under Loan 3951.  (Id. ¶ 22.)

35.    Brandon is in default of his obligations under Loan 4321 because, among other things, he has failed to make monthly payment due under Loan 4321.   (Id. ¶ 23.)

36.    Brandon and Chad are in default of their obligations under Loan 3897 because, among other things, they have failed to make monthly payment due under Loan 3897.  (Id. ¶ 24.)

**THE AMOUNTS DUE**

37.    As of the Petition Date, the following amounts were due and owing under the loans:

a.    Loan 0769:

| Principal | $678,632.11 |
|-----------|-------------|
| Interest | $104,344.59 |
| Late Fees | $16,679.74 |
| **Total** | **$799,656.44** |

b.    Loan 1970:

| Principal | $31,291.93 |
|-----------|------------|
| Interest | $3,465.16 |
| **Total** | **$34,727.09** |

c.     <u>Loan 3231</u>:

| Principal | $32,785.61 |
|---|---|
| Interest | $3,599.13 |
| **Total** | **$36,384.74** |

d.     <u>Loan 3951</u>:

| Principal | $64,052.29 |
|---|---|
| Interest | $7,031.52 |
| **Total** | **$71,083.31** |

e.     <u>Loan 4321</u>:

| Principal | $185,799.43 |
|---|---|
| Regular Interest | $20,396.65 |
| **Total** | **$206,196.08** |

f.     <u>Loan 3897</u>:

| Principal | $168,737.52 |
|---|---|
| Interest | $22,183.49 |
| **Total** | **$190,921.01** |

(<u>Id.</u> ¶ 25.)

38.    In addition to the foregoing amount, Bank is entitled to recover all attorneys' fees

and costs incurred by Bank as a result of the defaults and post-petition default interest and late fees

which have and continue to accrue.  (Id. ¶ 26.)

PROPERTY VALUES

39.    As of the Petition Date the properties had the following estimated market values:

| PARCEL NO. | ESTIMATED MARKET VALUE |
|---|---|
| 06.00271.00 | $262,300.00 |
| 06.00533.15 | $63,500.00 |
| 06.00260.00 | $122,800.00 |
| 06.00261.00 | $217,700.00 |
| 06.00532.00 | $86,200.00 |
| 06.00269.00 | $409,300.00 |
| 06.00272.10 | $75,600.00 |
| 06.00050.00 | $107,600.00 |

(Id. Exh. S.)

**RELIEF REQUESTED**

I.    **BANK IS ENTIELD TO RELEIF FROM THE AUTOMATIC STAY BECAUSE DEBTOR DOES NOT HAVE ANY EQUITY IN THE PROPERTIES AND THE PROPERITES ARE NOT NECESSARY FOR AN EFFECTIVE REOGRANZIATOIN.**

22.    On request of a party in interest and after notice and a hearing, the court shall grant

relief from the stay if:

i.    the debtor does not have equity in the property; and

ii.    the property is not necessary to an effective reorganization.

8

11 U.S.C. § 362(d)(1), (2).

  **A.**  **THE DEBTOR HAS NO EQUITY IN THE PROPERTIES**

23.  Equity, as used in 11 U.S.C. § 362(d)(1), refers to the difference between the value of the property and all encumbrances upon it. *Stewart v. Gurley*, 745 F.2d 1194, 1197 (9th Cir. 1984).

24.  Thus, in determining whether Debtor has any equity in the properties the Court must consider all encumbers on the properties including, mortgages, judgments and post-petition interest and late fees, and attorneys' fees and costs which have and continue to accrue since the Petition Date. *See In re Gomes*, 56 B.R. 502, 504-05 (Bankr. D. Hawi. 1985) (including attorneys' fees and costs, closing costs and past due interest in equity determination).

25.  As the following makes clear, Debtor has no equity in the properties:

| PROPERTY | ESTIMATED MARKET VALUE | ENCUMBRANCES | EQUITY |
|---|---|---|---|
| 06.00271.00 | $262,300.00 | 3951 Mortgage=$71,083.31<br><br>3897 Mortgage=$190,921.01<br><br>Judgment in favor of Stearns Bank dated March 11, 2020=$239,014.57 | ($238,718.89) |
| 06.00533.15 | $63,500.00 | 0769 Mortgage=$799,656.44<br><br>1970 Mortgage=$34,727.09 | ($770,883.53) |
| 06.00260.00 | $122,800.00 | 0769 Mortgage=$799,656.44<br><br>3231 Mortgage=$36,384.74<br><br>4321 Mortgage=$206,196.08 | ($919,437.20) |
| 06.00261.00 | $217,700.00 | 0769 Mortgage=$799,656.44<br><br>3231 Mortgage=$36,384.74 | ($824,537.20) |

| | | 4321 Mortgage=$206,196.08 | |
|---|---|---|---|
| 06.00532.00 | $86,200.00 | 0769 Mortgage=$799,656.44<br><br>3951 Mortgage=$71,083.21 | ($784,448.65)) |
| 06.00269.00 | $409,300.00 | 0769 Mortgage=$799,656.44<br><br>3951 Mortgage=$71,083.21 | ($461,348.65) |
| 06.00272.10 | $75,600.00 | 0769 Mortgage=$799,656.44<br><br>3951 Mortgage=$71,083.21 | ($795,139.65) |
| 06.00050.00 | $107,600.00 | 0769 Mortgage=$799,656.44<br><br>3951 Mortgage=$71,083.21 | ($763,139.65) |

### B.    THE PROPERTIES ARE NOT NECESSARY FOR AN EFFECTIVE REORGANIZATION

26.    Since Debtor lacks any equity in the properties Debtor must establish that that the properties are "necessary to an effective reorganization." 11 U.S.C. § 362(d)(2).  "It is not enough that without the subject property there can be no reorganization."  *In re Northport Marina Associates*, 136 B.R. 903, 908 (Bankr. E.D.N.Y. 1992).  For Debtor to carry its burden, it must show "that the property is essential for an effective reorganization *that is in prospect.*" *In re United Sav. Assoc. v. Timbers of Inwood Forest Assoc., Ltd.,* 484 U.S. 365, 376 (1988) (emphasis in original). "What the Debtor [is] required to demonstrate [is] the reasonable possibility of a successful reorganization within a reasonable period of time." *Id.; see also, In re Canal Place Ltd. Partnership,* 921 F.2d 569, 577 (5th Cir. 1991); *In re PMS Assoc. No. 2,* 104 B.R. 86, 89 (Bankr. S.D. Ind. 1989).  While it is true that "a request for relief from stay should not be transformed into a through inquiry into the feasibility to a plan which has yet to be proposed… "some plan must be in prospect." *In re Northport Marina Associates*, 136 B.R. at 908 (internal citations omitted). Here, Debtor unquestionably has no prospect for reorganization.

10

27.    Debtor has scheduled total liabilities of $2,890,266.28, comprised of $2,253,606.57 in secured obligations, $5,800.00 in priority unsecured obligations and $630,859.71 in general unsecured objections.  (Docket No. 6, Sch. D and E/F.)

28.    Debtor is not an operating entity, rather a real estate holding company whose sole source of revenue is rental income generated from leasing certain portions of its real estate.

29.    Despite its roughly $3,000,000.00 in liabilities, Debtor's average *gross* income over the past three years is a mere $17,000.00.  (Docket No. 1, SOF Part 1.)

30.    There is simply no scenario under which Debtor can propose a plan to restructure roughly $3,000,000.00 in debt on gross income of $17,000.00 per year, or $1,416.67 per month. Debtor's secured obligations alone make this point clear.

31.    Debtor has $2,253,606.57 in secured obligations.  Even assuming Debtor applied the entirety of its yearly *gross* income (and using its best year (2020) of $30,000.00) to the repayment of those obligations and further assuming that its secured obligations accrued no interest *it would take Debtor 75 years to repay its secured obligation alone*.  And, since Debtor would be devoting the entity of its revenue to its secured obligations, Debtor would be unable to pay real estate taxes, insurance and any of its other obligations.

32.    Simply put, there is no possibility of a successful reorganization within a reasonable period of time and therefore the properties are not necessary for a successful reorganization.

33.    Accordingly, because Debtor has no equity in the properties and the properties are not necessary for a reorganization Bank is entitled to relief from the stay under 11 U.S.C. § 362(d).

**WHEREFORE**, Bank requests that the Court enter an Order as follows:

A.    Modifying the automatic stay of 11 U.S.C. §362(a) authorizing Bank to foreclose it security interest in the real property legally described as:

Parcel 1:

The Northeast Quarter of the Southwest Quarter (NE¼ of SW¼) and the Southwest Quarter of the
Southeast Quarter (SW¼ of SE¼), in Section Thirteen (13), Township Thirty-seven (37) North,
Range Twenty-two (22) West, Chisago County, Minnesota, EXCEPTING THEREFROM the
South 450 Feet of the Northeast Quarter of the Southwest Quarter of Section Thirteen (13),
Township Thirty-seven (37) North, Range Twenty-two (22) West, Chisago County, Minnesota.

(PID: 06.00269.00)

And

The Northeast Quarter of the Northeast Quarter (NE¼ of NE¼) of Section Twenty-four (24),
Township Thirty-seven (37) North, Range Twenty-two (22) West, Chisago County, Minnesota
EXCEPTING THEREFROM the following described parcel:

That part of the Northeast Quarter of the Northeast Quarter of Section Twenty-four (24), Township
Thirty-seven (37), Range Twenty-two (22), Chisago County, Minnesota,
described as follows:
Commencing at the northeast corner of said Section 24; thence on an assumed bearing of South 0
degrees 00 minutes 17 seconds West, along the East line of said Section 24, a distance of 850.07
feet; thence South 80 degrees 24 minutes 45 seconds West, 672.76 feet to the point of beginning
of the tract herein described; thence continuing on a bearing of South 80 degrees 24 minutes 45
seconds West, 390.14 feet; thence North 5 degrees 52 minutes 03 seconds West, 315.69 feet,
thence North 89 degrees 45 minutes 13 seconds West 185.38 feet to the West line of said Northeast
Quarter of the Northeast Quarter; thence South 0 degrees 08 minutes 15 seconds East, along last
said line 601.45 feet; thence North 80 degrees 24 minutes 45 seconds East 610.00 feet; thence
North 0 degrees 08 minutes 15 seconds West 250.00 feet to the point of beginning.

(PID: 06.00532.00, with the excepted property as 06.00532.10)

Parcel 2:

The Southwest Quarter of the Northwest Quarter (SW ¼ of NW ¼), Section Eighteen (18),
Township Thirty-seven (37) North, Range Twenty-one (21) West, except the South 2 Rods thereof,
Chisago County, Minnesota.

(PID: 06.00050.00)

Parcel 3:

The North Half of the Southeast Quarter of Section Thirteen (13), Township Thirty-seven (37),
Range Twenty-two (22), Chisago County, Minnesota.
(PID: 06.00271.00)

Parcel 4:

The West Half of the Southeast Quarter of the Southeast Quarter of Section Thirteen (13), Township Thirty-seven (37), Range Twenty-two (22), Chisago County, Minnesota.

(PID: 06.00272.10)

Parcel 5:

The Southeast Quarter of the Southeast Quarter (SE¼ of SE¼) of Section Twelve (12), Township Thirty-seven (37), Range Twenty-two (22), Chisago County, Minnesota.

(PID: 06.00260.00)

And

The East Half of the Northeast Quarter (E ½ of NE¼) of Section Thirteen (13), Township Thirty-seven (37), Range Twenty-two (22), Chisago County, Minnesota.

(PID: 06.00261.00)

Parcel 6:

That part of the Northwest Quarter of the Northeast Quarter (NW ¼ of NE ¼), Section Twenty-four (24), Township Thirty-seven (37) North, Range Twenty-two (22) West, described as follows:

Commencing at the north quarter corner of said Sec. 24; thence 92 degrees 15 minutes 40 seconds, assumed azimuth from North along the north line of the NE¼ of said Sec. 24, a distance of 647.07 feet; thence 179 degrees 35 minutes, 634.48 feet; thence 270 degrees 59 minutes 42 seconds, a distance of 32.70 feet to the point of beginning of the parcel to be described; thence return 90 degrees 59 minutes 42 seconds along the last described line, a distance of 32.70 feet; thence 89 degrees 35 minutes to the east line of said NW¼ of NE ¼; thence northerly, along said east line to the northeast corner of said NW ¼ of NE ¼ thence 272 degrees 15 minutes 40 seconds along the north line of said NW ¼ of NE ¼ to a point distant 248.73 feet easterly of the north quarter corner of said Sec. 24; thence 176 degrees 22 minutes 23 seconds, a distance of 234.36 feet; thence 139 degrees 29 minutes 42 seconds, a distance of 546.75 feet to the point of beginning.

 (PID: 06.00533.15)

13

Dated:  October 8, 2020

/s/Jacob B. Sellers

Matthew J. Bialick, Esq. (#0389088)
10505 Wayzata Blvd. Suite 103
Minnetonka, MN 55305
Phone: 952-239-3095
Email: matthew@jblawmn.com

Jacob B. Sellers, Esq. (#0348879)
825 Nicollet Mall, Suite 1648
Minneapolis, MN 55402
Phone: 612-345-7492
Email: jacob@greensteinsellers.com

*Attorneys for Unity Bank*

**VERIFICATION**


I, Partick Thiry of Unity Bank, declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge and belief.


Executed on: October 7, 2020                          /s/ Patrick Thiry
                                                       Patrick Thiry

4844-5595-8478, v. 1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

---

In Re:

Buehring Properties, LLC,

                                    Debtor.

Case No: 20-31858 (WJF)
Chapter 12

**DECLARATION OF PATRICK THIRY**

---

I, Patrick Thiry of Unity Bank ("<u>Bank</u>"), make this declaration in support of Unity Bank's ("<u>Bank</u>") Motion for Relief from the Automatic Stay.  I have personal knowledge of all the matters contained in this declaration and the documents attached hereto, all of which are kept in the ordinary course of Bank's business.  I also have personal knowledge of the calculation of the amounts due under the loan documents that are the subject matter of this motion and I personally participated in the preparation of that calculation in connection with this declaration.

**A.    LOAN XXXX0769**

1.    On or about April 19, 2012, Bank made a loan to Buehring Farms LLC ("<u>Buehring Farms</u>") in the original principal amount of $763,000.00 ("<u>Loan 0769</u>"). Attached hereto as **Exhibit A** is a true and correct copy of the promissory note evidencing Loan 0769.

2.    Loan 0769 is secured by that certain Mortgage dated April 19, 2012 (the "<u>0769 Mortgage</u>") executed and delivered to Bank by Nickolas Buehring A/K/A Nicholas Buehring ("<u>Nicholas</u>"), Diane Buehring A/K/A Diane L. Buehring ("<u>Diane</u>"), Brandon G.

Buehring ("Brandon"), Chad Buehring ("Chad") and Lynette Buehring ("Lynette" and collectively with Nicholas, Diane, Brandon and Chad, the "Buehrings") and recorded in the Office of the County Recorder for Chisago County, Minnesota on April 19, 2012 as Document No. A-543569.  Attached hereto as **Exhibit B** is a true and correct copy of the 0769 Mortgage.

3.      On or about January 5, 2016, the 0769 Property was transferred by warranty deed to Debtor.  Attached hereto as **Exhibit C** is a true and correct copy of that warranty deed.

**B.      Loan XXXX1970**

4.      On or about February 14, 2002, Bank's predecessor-in-interest, Stearns Bank National Association ("Stearns"), made a loan to Chad and Lynnette in the original principal amount of $56,000.00 ("Loan 1970").  Attached hereto as **Exhibit D** is a true and correct copy of the promissory note evidencing Loan 1970 and the allonge thereto.

5.      Loan 1970 is secured by that certain Mortgage dated December 14, 2002 (the "1970 Mortgage") executed and delivered by Chad and Lynnette to Bank and recorded in the Office of the County Recorder for Chisago County, Minnesota on February 15, 2002 as Document Number A-372316.  Attached hereto as **Exhibit E** is a true and correct copy of the 1970 Mortgage and assignments thereto.

6.      On or about January 5, 2016, Chad and Lynnette executed a warranty deed transferring the 1970 Property to Debtor.  Attached hereto as **Exhibit F** is a true and correct copy of that warranty deed.

### C.   LOAN XXXX3231

7.      On or about November 12, 2003, Bank's predecessor-in-interest, Stearns, made a loan to Brandon in the original principal amount of $35,000.00 ("Loan 3231"). Attached hereto as **Exhibit G** is a true and correct copy of the promissory note evidencing 3231 Loan and the allonge thereto.

8.      Loan 3231 is secured by that certain Mortgage dated November 12, 2003 (the "3231 Mortgage") executed and delivered by Brandon to Bank and recorded in the Office of the Chisago County Recorder on November 20, 2003 as Document No A-418549. Attached hereto as **Exhibit H** is a true and correct copy of the 3231 Mortgage and the assignments thereto.

9.      On or about January 5, 2016, Brandon executed a warranty deed transferring the 3231 Property to Debtor.  Attached hereto as **Exhibit I** is a true and correct copy of that warranty deed.

### D.   LOAN XXXX4321

10.     On or about July 18, 2005, Bank's predecessor-in-interest, Stearns, made a loan to Brandon in the original principal amount of $210,000 ("Loan 4321").  Attached hereto as **Exhibit J** is a true and correct copy of the promissory note evidence Loan 4321 and the allonge thereto.

11.     Loan 4321 is secured by that certain Mortgage dated July 20, 2005 (the "4321 Mortgage") executed and delivered by Brandon to Bank and recorded in the Office of the County Recorder for Chisago County, Minnesota on July 20, 2005 as Document No A-

452996.  Attached hereto as **Exhibit K** is a true and correct copy of the 4321 Mortgage and the assignments thereto.

12.    On or about January 5, 2016, the 4321 Property was transferred by warranty deed to Debtor.  Attached hereto as **Exhibit L** is a true and correct copy of that warranty deed.

**E.    LOAN XXXX3951**

13.    On or about December 27, 2004, Bank's predecessor-in-interest, Stearns, made a loan to Diane in the original principal amount of $70,000.00 ("Loan 3951"). Attached hereto as **Exhibit M** is a true and correct copy of the promissory note evidencing Loan 3951 and the allonge thereto.

14.    Loan 3951 is secured by that certain Mortgage dated December 27, 2004 (the "3951 Mortgage") executed and delivered by Diane to Bank and recorded in the Office of the County Recorder for Chisago County, Minnesota on December 28, 2004 as Document No. A-442166.  Attached hereto as **Exhibit N** is a true and correct copy of the 3951 Mortgage and the assignments thereto.

15.    On or about January 5, 2016, the 3951 Property was transferred by warranty deed to Debtor.  Attached hereto as **Exhibit O** is a true and correct copy of that warranty deed.

**F.    LOAN XXXX3897**

16.    On or about December 27, 2004, Bank's predecessor-in-interest, Stearns, made a loan to Brandon and Chad in the original principal amount of $465,000.00 ("Loan

4

3897"). Attached hereto as **Exhibit P** is a true and correct copy of the promissory note evidencing Loan 1970 and the allonge thereto.

17.    Loan 3897 is secured by that certain Mortgage dated November 19, 2004 (the "3897 Mortgage") executed and delivered by Diane to Bank and recorded in the Office of the County Recorder for Chisago County, Minnesota on November 30, 2014 as Document No. A-440474.  Attached hereto as **Exhibit Q** is a true and correct copy of the 3897 Mortgage and the assignments thereto.

18.    On or about January 5, 2016, the 3897 Property was transferred by warranty deed to Debtor.  Attached hereto as **Exhibit R** is a true and correct copy of that warranty deed.

THE DEFAULTS

19.    Buehring Farms is in default of its obligations under Loan 0769 because, among other things, it has failed to make monthly payment due under Loan 0769.

20.    Chad and Lynnette are in default of their obligations under Loan 1970 because, among other things, they failed to make monthly payment due under Loan 1970

21.    Brandon is in default of his obligations under Loan 3231 because, among other things, he has failed to make monthly payment due under Loan 3231.

22.    Diane is in default of her obligations under Loan 3951 because, among other things, she has failed to make monthly payment due under Loan 3951.

23.    Brandon is in default of his obligations under Loan 4321 because, among other things, he has failed to make monthly payment due under Loan 4321.

5

24.     Brandon and Chad are in default of their obligations under Loan 3897 because, among other things, they have failed to make monthly payment due under Loan 3897.

**THE AMOUNTS DUE**

25.     As of July 22, 2022, the following amounts were due and owing under the loans:

a.     <u>Loan 0769</u>:

| Principal | $678,632.11 |
|-----------|-------------|
| Interest | $104,344.59 |
| Late Fees | $16,679.74 |
| **Total** | **$799,656.44** |

b.     <u>Loan 1970</u>:

| Principal | $31,291.93 |
|-----------|------------|
| Interest | $3,465.16 |
| **Total** | **$34,727.09** |

c.     <u>Loan 3231</u>:

| Principal | $32,785.61 |
|-----------|------------|
| Interest | $3,599.13 |

| Total | $36,384.74 |
|---|---|

    d.    <u>Loan 3951</u>:

| Principal | $64,052.29 |
|---|---|
| Interest | $7,031.52 |
| **Total** | **$71,083.31** |

    e.    <u>Loan 4321</u>:

| Principal | $185,799.43 |
|---|---|
| Regular Interest | $20,396.65 |
| **Total** | **$206,196.08** |

    f.    <u>Loan 3897</u>:

| Principal | $168,737.52 |
|---|---|
| Interest | $22,183.49 |
| **Total** | **$190,921.01** |

26.    In addition to the foregoing amounts, Bank has incurred attorneys' fees and costs as a result of the defaults and post-petition default interest and late fees has and continues to accrue.

7

27.     Attached hereto as **Exhibit S** are true and correct copies of print outs from Chisago County's property identification website for each of the properties subject to Bank's mortgages.

Dated: October 7, 2020                          /s/ Patrick Thiry
                                                Patrick Thiry

4828-4449-3774, v. 1

8

| LOAN NUMBER | LOAN NA.. | ACCT NUMBER | N. | | |
|---|---|---|---|---|---|
| ▓▓769 | BUEHRING FARMS LLC | | 04/19/4 | | PAT |
| **NOTE AMOUNT** | **INDEX (w/Margin)** | **RATE** | **MATURITY DATE** | | **LOAN PURPOSE** |
| $763,000.00 | Farmer Mac II 10-Yr COFI plus 2.000% | 5.750% | 04/01/42 | | Agricultural |
| | | **Creditor Use Only** | | | |

## PROMISSORY NOTE
### (Agricultural - Draw)

**DATE AND PARTIES.** The date of this Promissory Note (Note) is April 19, 2012. The parties and their addresses are:

**LENDER:**
**UNITY BANK**
1180 W 4th St
Rush City, MN 55069
Telephone: (320) 358-3600

**BORROWER:**
**BUEHRING FARMS LLC**
a Minnesota Limited Liability Company
51100 DRIFTWOOD AVE
RUSH CITY, MN 55069

1. **DEFINITIONS.** As used in this Note, the terms have the following meanings:

   **A. Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Note, individually and together. "You" and "Your" refer to the Lender.

   **B. Note.** Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.

   **C. Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note.

   **D. Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

   **E. Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

   **F. Percent.** Rates and rate change limitations are expressed as annualized percentages.

   **G. Dollar Amounts.** All dollar amounts will be payable in lawful money of the United States of America.

2. **PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, amounts advanced from time to time under the terms of this Note up to the maximum total principal balance of **$763,000.00 (Principal)**, plus interest from the date of disbursement, on the unpaid outstanding Principal balance until this Note is paid in full and you have no further obligations to make advances to me under the Loan.

On April 19, 2012 I will receive an initial advance of $268,486.63.

All advances made will be made subject to all other terms and conditions of the Loan.

3. **INTEREST.** Interest will accrue on the unpaid Principal balance of this Note at the rate of **5.750 percent (Interest Rate)** until January 1, 2022, after which time it may change as described in the Variable Rate subsection.

   **A. Interest After Default.** If you declare a default under the terms of the Loan, including for failure to pay in full at maturity, you may increase the Interest Rate payable on the outstanding Principal balance of this Note. In such event, interest will accrue on the outstanding Principal balance at 12.000 percent until paid in full.

   **B. Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Note will be limited to the maximum lawful amount of interest allowed by state or federal law, whichever is greater. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

   **C. Statutory Authority.** The amount assessed or collected on this Note is authorized by the Minnesota usury laws under Minn. Stat. § 47.59.

   **D. Accrual.** Interest accrues using an Actual/365 days counting method.

   **E. Variable Rate.** The Interest Rate may change during the term of this transaction.

EXHIBIT A

(1) Index. Beginning with the first Change Date, the Interest Rate will be based on the following Index: the base rate posted by Farmer Mac II as the 10-Year Conventional Index, page 25 of 38

The Current Index is the most recent index figure available on each Change Date. You do not guaranty by selecting this Index, or the margin, that the Interest Rate on this Note will be the same rate you charge on any other loans or class of loans you make to me or other borrowers. If this Index is no longer available, you will substitute a similar index. You will give me notice of your choice.

(2) Change Date. Each date on which the Interest Rate may change is called a Change Date. The Interest Rate may change January 1, 2022 and every 10 years thereafter.

(3) Calculation Of Change. On each Change Date you will calculate the Interest Rate, which will be the Current Index plus 2.000 percent. The result of this calculation will be rounded to the nearest .125 percent. Subject to any limitations, this will be the Interest Rate until the next Change Date. The new Interest Rate will become effective on each Change Date. The Interest Rate and other charges on this Note will never exceed the highest rate or charge allowed by law for this Note.

(4) Effect Of Variable Rate. A change in the Interest Rate will have the following effect on the payments: The amount of scheduled payments will change.

**4. ADDITIONAL CHARGES.** As additional consideration, I agree to pay, or have paid, these additional fees and charges.

**A. Nonrefundable Fees and Charges.** The following fees are earned when collected and will not be refunded if I prepay this Note before the scheduled maturity date.

**FSA PROCESSING FEE.** A(n) FSA PROCESSING FEE fee of $500.00 payable from the loan proceeds.

**FSA GUARANTY FEE.** A(n) FSA GUARANTY FEE fee of $10,300.50 payable from the loan proceeds.

**FSA RE APPLICATION FEE.** A(n) FSA RE APPLICATION FEE fee of $1,500.00 payable from the loan proceeds.

**COURIER FEE .** A(n) COURIER FEE fee of $60.00 payable from the loan proceeds.

**Tax Service.** A(n) Tax Service fee of $62.00 payable from the loan proceeds.

**Loan Origination.** A(n) Loan Origination fee of $7,300.00 payable from the loan proceeds.

**FLOOD INSURANCE MONITORING CHARGE.** A(n) FLOOD INSURANCE MONITORING CHARGE fee of $10.00 payable from the loan proceeds.

**Closing - Affects APR.** A(n) Closing - Affects APR fee of $250.00 payable from the loan proceeds.

**INSPECTION FEE/PRIORITY PICS.** A(n) INSPECTION FEE/PRIORITY PICS fee of $125.00 payable from the loan proceeds.

**FILING - REQUEST FOR NOTICE.** A(n) FILING - REQUEST FOR NOTICE fee of $46.00 payable from the loan proceeds.

**ENDORSEMENT FEE.** A(n) ENDORSEMENT FEE fee of $350.00 payable from the loan proceeds.

**DRAFTING/DOC PREP FEE.** A(n) DRAFTING/DOC PREP FEE fee of $150.00 payable from the loan proceeds.

**LOT/PLAT DRAWING.** A(n) LOT/PLAT DRAWING fee of $300.00 payable from the loan proceeds.

**Title Examination.** A(n) Title Examination fee of $1,200.00 payable from the loan proceeds.

**State Tax Stamps - Mortgage.** A(n) State Tax Stamps - Mortgage fee of $659.03 payable from the loan proceeds.

**Recording - Mortgage.** A(n) Recording - Mortgage fee of $46.00 payable from the loan proceeds.

**Lender's Title Insurance.** A(n) Lender's Title Insurance fee of $1,801.00 payable from the loan proceeds.

**Flood Certification.** A(n) Flood Certification fee of $18.00 payable from the loan proceeds.

**LOAN DOCUMENTATION.** A(n) LOAN DOCUMENTATION fee of $150.00 payable from the loan proceeds.

**Attorneys.** A(n) Attorneys fee of $150.00 payable from the loan proceeds.

**Appraisal.** A(n) Appraisal fee of $1,600.00 payable from the loan proceeds.

**Abstract or Title Search.** A(n) Abstract or Title Search fee of $750.00 payable from the loan proceeds.

**5. REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Note.

**A. Late Charge.** If a payment is more than **10** days late, I will be charged **5.000** percent of the Unpaid Portion of Payment. However, this charge will not be greater than **$500.00**. I will pay this late charge promptly but only once for each late payment. This amount may then increase so as to always be the highest amount allowed by law under Minnesota Statutes § 47.59.

**B. Returned Check Charge.** I agree to pay a service charge for each returned check, negotiable order of withdrawal, draft or automatic payment request. The amount of the service charge will generally be $27.00.

**C. Stop Payment Fee.** A(n) Stop Payment Fee equal to $27.00.

**6. GOVERNING AGREEMENT.** This Note is further governed by the Commercial Loan Agreement executed between you and me as a part of this Loan, as modified, amended or supplemented. The Commercial Loan Agreement states the terms and conditions of this Note, including the terms and conditions under which the maturity of this Note may be accelerated. When I sign this Note, I represent to you that I have reviewed and am in compliance with the terms contained in the Commercial Loan Agreement.

**7. PAYMENT.** I will make 6 payment(s) of Interest beginning June 1, 2012 and on the 1st day of each month thereafter. I will make 352 payment(s) of Principal and Interest of the lesser of $4,487.55, or accrued interest and so much of the Note Amount as may be advanced, beginning December 1, 2012 and on the 1st day of each month thereafter. I will make a single, final payment of the entire unpaid balance of Principal, earned fees and charges, and accrued and unpaid interest, on April 1, 2042.

BUEHRING FARMS LLC
Minnesota Promissory Note

EXHIBIT A

Payments will be rounded to... charges owing and the amount of any advances you have made... Payments on a Loan scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Interest only payments will be applied first to any charges I owe other than late charges, then to accrued, but unpaid interest, then to late charges. Principal only payments will be applied first to the amount of the scheduled Principal payment, then to any late charges.

Payments of Principal and interest will be applied first to interest that is due, then to principal that is due, and finally to any charges that I owe other than principal and finance charges. If you and I agree to a different application of payments, we will describe our agreement on this Note. You may change how payments are applied in your sole discretion without notice to me. The actual amount of my final payment will depend on my payment record.

**8. PREPAYMENT.** I may prepay this Loan in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**9. LOAN PURPOSE.** The purpose of this Loan is DEBT RESTRUCTURE AND ADDITIONAL FUNDS FOR AGRICULTURAL IMPROVEMENTS.

**10. ADDITIONAL TERMS.** Payments received after 3:00 p.m. CST or received on Saturdays / holidays will be credited on the next business day.

Loan is further governed by FSA Loan Agreement dated April 19, 2012, between Buehring Farms LLC and Unity Bank, which will supplement the terms and conditions stated in Unity Bank's Promissory Note and Loan Agreement and which shall control in the event of conflicting terms and conditions.

**11. SECURITY.** The Loan is secured by separate security instruments prepared together with this Note as follows:

| Document Name | Parties to Document | Date of Security Document |
|---|---|---|
| Security Agreement - BUEHRING FARMS LLC | BUEHRING FARMS LLC | April 19, 2012 |
| Mortgage - 51100 DRIFTWOOD AVE; 51765 ELMCREST AVE; VARIOUS UNIMPROVED PARCELS | NICKOLAS BUEHRING A/K/A NICHOLAS BUEHRING , DIANE BUEHRING A/K/A DIANE L BUEHRING , BRANDON G BUEHRING , CHAD N BUEHRING , LYNNETTE BUEHRING | April 19, 2012 |

and by the following, previously executed, security instruments or agreements: SECURITY AGREEMENT BY BUEHRING FARMS LLC DATED MAY 14, 2010.

**12. DUE ON SALE OR ENCUMBRANCE.** You may, at your option, declare the entire balance of this Note to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. However, if I am in default under this Agreement, I may not sell any inventory or any farm products or inventory derived from farm products even in the ordinary course of business.

**13. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

   **A. Additional Waivers By Borrower.** In addition, I, and any party to this Note and Loan, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Note.

      **(1)** You may renew or extend payments on this Note, regardless of the number of such renewals or extensions.

      **(2)** You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

      **(3)** You may release, substitute or impair any Property securing this Note.

      **(4)** You, or any institution participating in this Note, may invoke your right of set-off.

      **(5)** You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.

      **(6)** I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.

      **(7)** I agree that you may inform any party who guarantees this Loan of any Loan accommodations, renewals, extensions, modifications, substitutions or future advances.

   **B. No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Note, or any other Loan Document, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**14. COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

EXHIBIT A

**15. APPLICABLE LAW.** This Note is governed by the laws of Minnesota, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**16. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. This Note shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**17. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is effective unless made in writing and executed by you and me. This Note and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Note is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable. No present or future agreement securing any other debt I owe you will secure the payment of this Loan if, with respect to this loan, you fail to fulfill any necessary requirements or limitations of Sections 19(a), 32 or 35 of Regulation Z or if, as a result, this Loan would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

**18. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

**19. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**20. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably request. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**21. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**22. SIGNATURES.** By signing, I agree to the terms contained in this Note. I also acknowledge receipt of a copy of this Note.

BORROWER:

BUEHRING FARMS LLC

By _Nickolas Buehring_ Date _4-19-12_
NICKOLAS BUEHRING A/K/A NICHOLAS BUEHRING, CHIEF FINANCIAL OFFICER

By _Chad Buehring_ Date _4-12-12_
CHAD BUEHRING, SECRETARY

By _Brandon Buehring_ Date _4-19-12_
BRANDON G BUEHRING, MANAGER

LENDER:

Unity Bank

By _Patrick A. Thiry_ Date _4-19-12_
Patrick A. Thiry, Vice President

EXHIBIT A

Received fr... ...turn to:
LINDBERG & MCKINNIS PA
200 3RD AVE NE STE 300
CAMBRIDGE, MN 55008

**OFFICE OF COUNTY RECORDER**
Chisago County, Minnesota

I hereby certify that this document was filed in this office
on **4/19/2012** at **4:17:50 PM** and was duly
recorded as document number **A-543569**
LEE OLSON-County Recorder, by____Deputy.
____p

Well Certificate: ___ Received ___ Not Required

Receipt No. _67076_
Mortgage Registration Tax $ _617.52_
Paid _April 19, 2012_
Treasurer, Chisago County, MN

Fees:
| | | |
|---|---|---|
| REC'G COMPLIANCE FUND | | $11.00 |
| STATE GENERAL FUND | | 10.50 |
| TECHNOLOGY FUND | | 10.00 |
| GENERAL ABSTRACT | | 14.50 |
| | Total | $46.00 |

A-543569

# MORTGAGE
(With Future Advance Clause)

**DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is April 19, 2012. The parties and their addresses are:

**MORTGAGOR:**

**NICKOLAS BUEHRING A/K/A NICHOLAS BUEHRING**
Spouse of DIANE BUEHRING A/K/A DIANE L BUEHRING
AS A TENANT IN COMMON OR AS A JOINT TENANT
55110 DRIFTWOOD AVE
RUSH CITY, MN 55069

**DIANE BUEHRING A/K/A DIANE L BUEHRING**
Spouse of NICKOLAS BUEHRING A/K/A NICHOLAS BUEHRING
AS A TENANT IN COMMON OR AS A JOINT TENANT
55110 DRIFTWOOD AVE
RUSH CITY, MN 55069

**BRANDON G BUEHRING**
An unmarried individual
51100 DRIFTWOOD AVE
RUSH CITY, MN 55069

**CHAD N BUEHRING**
Spouse of LYNNETTE BUEHRING
AS A JOINT TENANT
3838 RUSH LAKE RD
RUSH CITY, MN 55069

**LYNNETTE BUEHRING**
Spouse of CHAD N BUEHRING
AS A JOINT TENANT
3838 RUSH LAKE RD
RUSH CITY, MN 55069

---

BUEHRING FARMS LLC
Minnesota **Mortgage**
MN/4XXDMOORE00000000000625073041912N    Wolters Kluwer Financial Services ©1996, 2012 Bankers Systems™    Page 1

EXHIBIT B

**LENDER:**
    **UNITY BANK**
    Organized and existing under the laws of Minnesota
    1180 W 4th St
    Rush City, MN  55069

**1. CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debts and Mortgagor's performance under this Security Instrument, Mortgagor does hereby grant, bargain, convey, sell, mortgage and warrant to Lender, with the power of sale, the following described property:

SEE ATTACHED EXHIBIT 'A'

The property is located in Chisago County at 51100 DRIFTWOOD AVE; 51765 ELMCREST AVE; VARIOUS UNIMPROVED PARCELS, RUSH CITY, Minnesota 55069.

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, wells, ditches and water stock, crops, timber, all diversion payments or third party payments made to crop producers and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described (all referred to as Property). This Security Instrument will remain in effect until the Secured Debts and all underlying agreements have been terminated in writing by Lender.

**2. SECURED DEBTS AND FUTURE ADVANCES.** The term "Secured Debts" includes and this Security Instrument will secure each of the following:

    **A. Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note or other agreement, No. ▮▮▮▮▮0769, dated April 19, 2012, from BUEHRING FARMS LLC (Borrower) to Lender, with an initial advance amount of $278,737.90, a loan amount of $763,000.00 and maturing on April 1, 2042.

    **B. Future Advances.** All future advances from Lender to BUEHRING FARMS LLC under the Specific Debts executed by BUEHRING FARMS LLC in favor of Lender after this Security Instrument. If more than one person signs this Security Instrument, each agrees that this Security Instrument will secure all future advances that are given to BUEHRING FARMS LLC either individually or with others who may not sign this Security Instrument. All future advances are secured by this Security Instrument even though all or part may not yet be advanced. All future advances are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future advances in any amount. Any such commitment must be agreed to in a separate writing. In the event that Lender fails to provide any required notice of the right of rescission, Lender waives any subsequent security interest in the Mortgagor's principal dwelling that is created by this Security Instrument. This Security Instrument will not secure any other debt if Lender fails, with respect to that other debt, to fulfill any necessary requirements or limitations of Sections 19(a), 32, or 35 of Regulation Z.

    **C. All Debts.** All present and future debts from BUEHRING FARMS LLC to Lender, even if this Security Instrument is not specifically referenced, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Security Instrument, each agrees that it will secure debts incurred either individually or with others who may not sign this Security Instrument. Nothing in this Security Instrument constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing. In the event that Lender fails to provide any required notice of the right of rescission, Lender waives any subsequent security interest in the Mortgagor's principal dwelling that is created by this Security Instrument. This Security Instrument will not secure any debt for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. This Security Instrument will not secure any debt for which a security interest is created in "margin stock"

543569

---

BUEHRING FARMS LLC
Minnesota **Mortgage**
MN/4XXDMOORE0000000000000625073041912N      Wolters Kluwer Financial Services ©1996, 2012 Bankers Systems™      Page 2

EXHIBIT B

and Lender does not obtain a "statement of purpose," as defined and required by federal law governing securities. This Security Instrument will not secure any other debt if Lender fails, with respect to that other debt, to fulfill any necessary requirements or limitations of Sections 19(a), 32, or 35 of Regulation Z.

**D. Sums Advanced.** All sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

**3. PAYMENTS.** Mortgagor agrees that all payments under the Secured Debts will be paid when due and in accordance with the terms of the Secured Debts and this Security Instrument.

**4. NON-OBLIGATED MORTGAGOR.** Any Mortgagor, who is not also identified as a Borrower in the Secured Debts section of this Security Instrument and who signs this Security Instrument, is defined as a cosigner for purposes of the Equal Credit Protection Act and the Federal Reserve Board's Regulation B, 12 C.F.R. 202.7(d)(4), and is referred to herein as a Non-Obligated Mortgagor. By signing this Security Instrument, the Non-Obligated Mortgagor does mortgage and assign their rights and interests in the Property to secure payment of the Secured Debts, to create a valid lien, to pass clear title, to waive inchoate rights and to assign earnings or rights to payment under any lease or rent of the Property. However, the Non-Obligated Mortgagor is not personally liable for the Secured Debts.

**5. WARRANTY OF TITLE.** Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell, and mortgage, with the power of sale, the Property. Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record.

**6. PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:

  **A.** To make all payments when due and to perform or comply with all covenants.

  **B.** To promptly deliver to Lender any notices that Mortgagor receives from the holder.

  **C.** Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

**7. CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

**8. DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

**9. WARRANTIES AND REPRESENTATIONS.** Mortgagor has the right and authority to enter into this Security Instrument. The execution and delivery of this Security Instrument will not violate any agreement governing Mortgagor or to which Mortgagor is a party.

**10. PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor will not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor, and of any loss or damage to the Property.

No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Mortgagor has the right to remove items of personal property comprising a part of the

EXHIBIT B

Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance. Such replacement of personal property will be deemed subject to the security interest created by this Security Instrument. Mortgagor will not partition or subdivide the Property without Lender's prior written consent.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender will give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property will be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

**11. AUTHORITY TO PERFORM.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor will not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

**12. ASSIGNMENT OF LEASES AND RENTS.** Mortgagor assigns, grants, bargains, conveys, mortgages and warrants to Lender as additional security all the right, title and interest in the following (Property).

**A.** Existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the non-homestead portion of the Property, including but not limited to any extensions, renewals, modifications or replacements (Leases).

**B.** Rents, issues and profits, including but not limited to security deposits, minimum rents, percentage rents, additional rents, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims which Mortgagor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property (Rents).

In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement. Mortgagor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default. Mortgagor will not collect in advance any Rents due in future lease periods, unless Mortgagor first obtains Lender's written consent. Upon default, Mortgagor will receive any Rents in trust for Lender and Mortgagor will not commingle the Rents with any other funds. When Lender so directs, Mortgagor will endorse and deliver any payments of Rents from the Property to Lender. Amounts collected will be applied first as set forth at Minn. Stat. Ann. § 576.01, Subdivision 2, and then at Lender's discretion to the Secured Debts, the costs of managing, protecting and preserving the Property, and other necessary expenses. Mortgagor agrees that this Security Instrument is immediately effective between Mortgagor and Lender and effective as to third parties on the recording of this Assignment. As long as this Assignment is in effect, Mortgagor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants. Mortgagor, at its sole cost and expense, will keep, observe and perform, and require all other parties to the Leases to comply with the Leases and any applicable law. If Mortgagor or any party to the Lease defaults or fails to observe any applicable law, Mortgagor will promptly notify Lender. If Mortgagor neglects or refuses to enforce compliance with the terms of the Leases, then Lender may, at Lender's option, enforce compliance. Mortgagor will not sublet, modify, extend, cancel, or otherwise alter the Leases, or accept the surrender of the Property covered by the Leases (unless the Leases so require) without Lender's consent. Mortgagor will not assign, compromise, subordinate or encumber the Leases and Rents without Lender's prior written consent. Lender does not assume or become liable for the Property's maintenance, depreciation, or other losses or damages when Lender acts to manage, protect or preserve the Property, except for losses and damages due to Lender's gross negligence or intentional torts. Otherwise, Mortgagor will indemnify Lender and hold Lender harmless for

BUEHRING FARMS LLC
Minnesota **Mortgage**
MN/4XXDMOORE00000000000625073041812N          Wolters Kluwer Financial Services ©1996, 2012 Bankers Systems™          Page 4

EXHIBIT B

all liability, loss or damage that Lender may incur when Lender opts to exercise any of its remedies against any party obligated under the Leases. This Security Instrument applies when, as additional security for the debt secured by the mortgage, it secures an original principal debt of $100,000 or more or is a lien upon residential real estate containing more than four dwelling units, and is not a lien upon Property which is entirely homesteaded as agricultural property or residential real estate containing four or fewer dwelling units where at least one of the units is homesteaded. This Security Instrument may only be enforced against the non-homestead portion of the assigned Property.

**13. DEFAULT.** Mortgagor will be in default if any of the following events (known separately and collectively as an Event of Default) occur:

**A. Payments.** Mortgagor or Borrower fail to make a payment in full when due.

**B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against Mortgagor, Borrower, or any co-signer, endorser, surety or guarantor of this Security Instrument or any other obligations Borrower has with Lender.

**C. Death or Incompetency.** Mortgagor dies or is declared legally incompetent.

**D. Failure to Perform.** Mortgagor fails to perform any condition or to keep any promise or covenant of this Security Instrument.

**E. Other Documents.** A default occurs under the terms of any other document relating to the Secured Debts.

**F. Other Agreements.** Mortgagor is in default on any other debt or agreement Mortgagor has with Lender.

**G. Misrepresentation.** Mortgagor makes any verbal or written statement or provides any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** Mortgagor fails to satisfy or appeal any judgment against Mortgagor.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** Mortgagor changes Mortgagor's name or assumes an additional name without notifying Lender before making such a change.

**K. Property Transfer.** Mortgagor transfers all or a substantial part of Mortgagor's money or property. This condition of default, as it relates to the transfer of the Property, is subject to the restrictions contained in the DUE ON SALE section.

**L. Property Value.** Lender determines in good faith that the value of the Property has declined or is impaired.

**M. Erosion.** Any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce or make possible the production of an agricultural commodity, as further explained by federal law.

**N. Insecurity.** Lender determines in good faith that a material adverse change has occurred in Borrower's financial condition from the conditions set forth in Borrower's most recent financial statement before the date of this Security Instrument or that the prospect for payment or performance of the Secured Debts is impaired for any reason.

**14. REMEDIES.** On or after the occurrence of an Event of Default, Lender may use any and all remedies Lender has under state or federal law or in any document relating to the Secured Debts, including, without limitation, the power to sell the Property. Any amounts advanced on Mortgagor's behalf will be immediately due and may be added to the balance owing under the Secured Debts. Lender may make a claim for any and all insurance benefits or refunds that may be available on Mortgagor's default.

Subject to any right to cure, required time schedules or any other notice rights Mortgagor may have under federal and state law, Lender may make all or any part of the amount owing by the terms of the Secured Debts

immediately due and foreclose this Security Instrument in a manner provided by law upon the occurrence of an Event of Default or anytime thereafter.

Upon the occurrence of an Event of Default, Lender will have the right, without declaring the whole indebtedness due and payable, to foreclose against all or any part of the Property. This lien will continue as a lien on any part of the Property not sold on foreclosure. If there is an occurrence of an Event of Default, Lender may, in addition to any other permitted remedy, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash and convey all right, title and interest of Mortgagor at such time and place as Lender designates. If Lender invokes the power of sale, Lender will give notice of the sale including the time, terms and place of sale and a description of the property to be sold as required by the applicable law in effect at the time of the proposed sale.

Lender will apply the proceeds of the sale in the following order: (a) to all expenses of exercising the sale, including but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. Lender or its designee may purchase the Property. If the Property is sold pursuant to this section, Mortgagor, or any person holding possession of the Property through Mortgagor, will immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Mortgagor or such person will be a tenant holding over and may be dispossessed in accordance with applicable law.

Upon any sale of the Property, Lender will make and deliver a special or limited warranty deed that conveys the property sold to the purchaser or purchasers. Under this special or limited warranty deed, Lender will covenant that Lender has not caused or allowed a lien or an encumbrance to burden the Property and that Lender will specially warrant and defend the Property's title of the purchaser or purchasers at the sale against all lawful claims and demand of all persons claiming by, through or under Lender. The recitals in any deed of conveyance will be prima facie evidence of the facts set forth therein.

All remedies are distinct, cumulative and not exclusive, and Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debts after the balance is due or is accelerated or after foreclosure proceedings are filed will not constitute a waiver of Lender's right to require full and complete cure of any existing default. By not exercising any remedy, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

**15. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after the occurrence of an Event of Default, to the extent permitted by law, Mortgagor agrees to pay all expenses of collection, enforcement or protection of Lender's rights and remedies under this Security Instrument or any other document relating to the Secured Debts. Mortgagor agrees to pay expenses for Lender to inspect and preserve the Property and for any recordation costs of releasing the Property from this Security Instrument. Expenses include, but are not limited to, attorneys' fees, court costs and other legal expenses. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of the Secured Debts. In addition, to the extent permitted by the United States Bankruptcy Code, Mortgagor agrees to pay the reasonable attorneys' fees incurred by Lender to protect Lender's rights and interests in connection with any bankruptcy proceedings initiated by or against Mortgagor.

**16. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substance," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

Mortgagor represents, warrants and agrees that:

EXHIBIT B

**A.** Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.

**B.** Except as previously disclosed and acknowledged in writing to Lender, Mortgagor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.

**C.** Mortgagor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor will take all necessary remedial action in accordance with Environmental Law.

**D.** Except as previously disclosed and acknowledged in writing to Lender, Mortgagor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Mortgagor or any tenant of any Environmental Law. Mortgagor will immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.

**E.** Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are and will remain in full compliance with any applicable Environmental Law.

**F.** Except as previously disclosed and acknowledged in writing to Lender, there are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.

**G.** Mortgagor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.

**H.** Mortgagor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Mortgagor and any tenant are in compliance with applicable Environmental Law.

**I.** Upon Lender's request and at any time, Mortgagor agrees, at Mortgagor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval.

**J.** Lender has the right, but not the obligation, to perform any of Mortgagor's obligations under this section at Mortgagor's expense.

**K.** As a consequence of any breach of any representation, warranty or promise made in this section, (1) Mortgagor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Security Instrument and in return Mortgagor will provide Lender with collateral of at least equal value to the Property without prejudice to any of Lender's rights under this Security Instrument.

**L.** Notwithstanding any of the language contained in this Security Instrument to the contrary, the terms of this section will survive any foreclosure or satisfaction of this Security Instrument regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

**17. CONDEMNATION.** Mortgagor will give Lender prompt notice of any pending or threatened action by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above

described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds will be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**18. INSURANCE.** Mortgagor agrees to keep the Property insured against the risks reasonably associated with the Property. Mortgagor will maintain this insurance in the amounts Lender requires. This insurance will last until the Property is released from this Security Instrument. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debts. Mortgagor may choose the insurance company, subject to Lender's approval, which will not be unreasonably withheld.

All insurance policies and renewals shall include a standard "mortgage clause" (or "lender loss payable clause") endorsement that names Lender as "mortgagee" and "loss payee". If required by Lender, all insurance policies and renewals will also include an "additional insured" endorsement that names Lender as an "additional insured". If required by Lender, Mortgagor agrees to maintain comprehensive general liability insurance and rental loss or business interruption insurance in amounts and under policies acceptable to Lender. The comprehensive general liability insurance must name Lender as an additional insured. The rental loss or business interruption insurance must be in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing).

Mortgagor will give Lender and the insurance company immediate notice of any loss. All insurance proceeds will be applied to restoration or repair of the Property or to the Secured Debts, at Lender's option. If Lender acquires the Property in damaged condition, Mortgagor's rights to any insurance policies and proceeds will pass to Lender to the extent of the Secured Debts.

Mortgagor will immediately notify Lender of cancellation or termination of insurance. If Mortgagor fails to keep the Property insured, Lender may obtain insurance to protect Lender's interest in the Property and Mortgagor will pay for the insurance on Lender's demand. Lender may demand that Mortgagor pay for the insurance all at once, or Lender may add the insurance premiums to the balance of the Secured Debts and charge interest on it at the rate that applies to the Secured Debts. This insurance may include coverages not originally required of Mortgagor, may be written by a company other than one Mortgagor would choose, and may be written at a higher rate than Mortgagor could obtain if Mortgagor purchased the insurance. Mortgagor acknowledges and agrees that Lender or one of Lender's affiliates may receive commissions on the purchase of this insurance.

**19. ESCROW FOR TAXES AND INSURANCE.** Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

**20. WAIVERS.** Except to the extent prohibited by law, Mortgagor waives all homestead exemption rights relating to the Property.

**21. FIXTURE FILING.** Mortgagor gives to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property.

**22. CROPS; TIMBER; MINERALS; RENTS, ISSUES, AND PROFITS.** Mortgagor gives to Lender a security interest in all crops, timber, and minerals located on the Property as well as all rents, issues and profits of them including, but not limited to, all Conservation Reserve Program (CRP) and Payment in Kind (PIK) payments and similar governmental programs (all of which shall also be included in the term Property).

**23. APPLICABLE LAW.** This Security Instrument is governed by the laws of Minnesota, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**24. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** Each Mortgagor's obligations under this Security Instrument are independent of the obligations of any other Mortgagor. Lender may sue each Mortgagor individually or together with any other Mortgagor. Lender may release any part of the Property and Mortgagor will still be obligated under this Security Instrument for the remaining Property. Mortgagor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Mortgagor's consent. Such a change will not release Mortgagor

EXHIBIT B

from the terms of this Security Instrument. The duties and benefits of this Security Instrument will bind and benefit the successors and assigns of Lender and Mortgagor.

**25. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Security Instrument may not be amended or modified by oral agreement. No amendment or modification of this Security Instrument is effective unless made in writing and executed by Mortgagor and Lender. This Security Instrument and any other documents relating to the Secured Debts are the complete and final expression of the agreement. If any provision of this Security Instrument is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**26. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Security Instrument.

**27. NOTICE, ADDITIONAL DOCUMENTS AND RECORDING FEES.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Mortgagor will be deemed to be notice to all Mortgagors. Mortgagor will inform Lender in writing of any change in Mortgagor's name, address or other application information. Mortgagor will provide Lender any other, correct and complete information Lender requests to effectively mortgage or convey the Property. Mortgagor agrees to pay all expenses, charges and taxes in connection with the preparation and recording of this Security Instrument. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and to confirm Lender's lien status on any Property, and Mortgagor agrees to pay all expenses, charges and taxes in connection with the preparation and recording thereof. Time is of the essence.

**543569**

EXHIBIT B

**SIGNATURES.** By signing, Mortgagor agrees to the terms and covenants contained in this Security Instrument. Mortgagor also acknowledges receipt of a copy of this Security Instrument.

**MORTGAGOR:**

_Nickolas Buehring_ Date _4-19-12_
NICKOLAS  BUEHRING A/K/A NICHOLAS BUEHRING
Individually

_Diane L Buehring_ Date _4-19/12_
DIANE  BUEHRING A/K/A DIANE L BUEHRING
Individually

_Brandon B_ Date _4-19-12_
BRANDON G BUEHRING
Individually

_Chad Buehring_ Date _4-19-12_
CHAD N BUEHRING
Individually

_Lynnette Buehring_ Date _4/18/12_
LYNNETTE  BUEHRING
Individually

**LENDER:**

Unity Bank

By _Patrick A. Thiry_ Date _4-18-12_
Patrick A. Thiry, Vice President

EXHIBIT B

**ACKNOWLEDGMENT.**

**(Individual)**

State _____ OF ___Minnesota___ , ___County___ OF ___Isanti___ ss.

This instrument was acknowledged before me this ___19th___ day of ___April, 2012___ , _____
by NICKOLAS BUEHRING A/K/A NICHOLAS BUEHRING , spouse of DIANE BUEHRING A/K/A DIANE L
BUEHRING, AS TENANTS IN COMMON OR AS JOINT TENANTS.

My commission expires:

_____
(Notary Public)

GRANT W. LINDBERG
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2016

**(Individual)**

State _____ OF ___Minnesota___ , ___County___ OF ___Isanti___ ss.

This instrument was acknowledged before me this ___19th___ day of ___April, 2012___ , _____
by DIANE BUEHRING A/K/A DIANE L BUEHRING , spouse of NICKOLAS BUEHRING A/K/A NICHOLAS
BUEHRING.

My commission expires:

_____
(Notary Public)

GRANT W. LINDBERG
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2016

543569

EXHIBIT B

**(Individual)**

State ___ OF _Minnesota_ , County ___ OF _Isanti_ ___ ss.

This instrument was acknowledged before me this ___19th___ day of ___April___ , _2012_
by BRANDON G BUEHRING , an unmarried individual.

       My commission expires:



(Notary Public)

GRANT W. LINDBERG
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2016

---

**(Individual)**

State ___ OF _Minnesota_ , County ___ OF _Isanti_ ___ ss.

This instrument was acknowledged before me this ___19th___ day of ___April___ , _2012_
by CHAD N BUEHRING , spouse of LYNNETTE BUEHRING , AS A JOINT TENANT.

       My commission expires:

(Notary Public)

GRANT W. LINDBERG
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2016

**543569**

EXHIBIT B

**(Individual)**

_State_ OF _Minnesota_ , _County_ OF _Chisago_ ss.

This instrument was acknowledged before me this ___18th___ day of ___April___ , _2012_
by LYNNETTE BUEHRING , spouse of CHAD N BUEHRING, AS A JOINT TENANT.

My commission expires:



(Notary Public)

TABETHA FORCIER
Notary Public
Minnesota
My Commission Expires January 31, 2016

**(Lender Acknowledgment)**

___State___ OF ___Minnesota___ , ___County___ OF ___Isanti___ ss.

This instrument was acknowledged before me this ___19th___ day of ___April___ , ___2012___
by Patrick A. Thiry as Vice President of Unity Bank.

My commission expires:



(Notary Public)

GRANT W. LINDBERG
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2016

This instrument was drafted by Loan Department, Unity Bank, PO Box 604, Rush City, MN 55069

BUEHRING FARMS LLC
Minnesota **Mortgage**
MN/4XXDMOORE00000000000625073041812N

Wolters Kluwer Financial Services ®1996, 2012 Bankers Systems™

Page 13

EXHIBIT B

EXHIBIT "A"

Parcel 1:

The Northeast Quarter of the Southwest Quarter (NE ¼ of SW ¼) and the Southwest Quarter of the Southeast Quarter (SW ¼ of SE ¼), in Section Thirteen (13), Township Thirty-seven (37) North, Range Twenty-two (22) West, Chisago County, Minnesota, EXCEPTING THEREFROM the South 450 Feet of the Northeast Quarter of the Southwest Quarter of Section Thirteen (13), Township Thirty-seven (37) North, Range Twenty-two (22) West, Chisago County, Minnesota.

And

The Northeast Quarter of the Northeast Quarter (NE ¼ of NE ¼) of Section Twenty-four (24), Township Thirty-seven (37) North, Range Twenty-two (22) West, Chisago County, Minnesota EXCEPTING THEREFROM the following described parcel:

That part of the Northeast Quarter of the Northeast Quarter of Section Twenty-four (24), Township Thirty-seven (37), Range Twenty-two (22), Chisago County, Minnesota, described as follows:

Commencing at the northeast corner of said Section 24; thence on an assumed bearing of South 0 degrees 00 minutes 17 seconds West, along the East line of said Section 24, a distance of 850.07 feet; thence South 80 degrees 24 minutes 45 seconds West, 672.76 feet to the point of beginning of the tract herein described; thence continuing on a bearing of South 80 degrees 24 minutes 45 seconds West, 390.14 feet; thence North 5 degrees 52 minutes 03 seconds West, 315.69 feet, thence North 89 degrees 45 minutes 13 seconds West 185.38 feet to the West line of said Northeast Quarter of the Northeast Quarter; thence South 0 degrees 08 minutes 15 seconds East, along last said line 601.45 feet; thence North 80 degrees 24 minutes 45 seconds East 610.00 feet; thence North 0 degrees 08 minutes 15 seconds West 250.00 feet to the point of beginning.

Parcel 2:

The Southwest Quarter of the Northwest Quarter (SW ¼ of NW ¼), Section Eighteen (18), Township Thirty-seven (37) North, Range Twenty-one (21) West, except the South 2 Rods thereof, Chisago County, Minnesota

Parcel 3:

The North Half of the Southeast Quarter of Section Thirteen (13), Township Thirty-seven (37), Range Twenty-two (22), Chisago County, Minnesota.

EXHIBIT "A" continued.....


Parcel 4:

The West Half of the Southeast Quarter of the Southeast Quarter of Section Thirteen (13), Township Thirty-seven (37), Range Twenty-two (22), Chisago County, Minnesota.

Parcel 5:

The Southeast Quarter of the Southeast Quarter (SE ¼ of SE ¼) of Section Twelve (12), Township Thirty-seven (37), Range Twenty-two (22), Chisago County, Minnesota.

And

The East Half of the Northeast Quarter (E ½ of NE ¼) of Section Thirteen (13), Township Thirty-seven (37), Range Twenty-two (22), Chisago County, Minnesota.

Parcel 6:

That part of the Northwest Quarter of the Northeast Quarter (NW ¼ of NE ¼), Section Twenty-four (24), Township Thirty-seven (37) North, Range Twenty-two (22) West, described as follows:

Commencing at the north quarter corner of said Sec. 24; thence 92 degrees 15 minutes 40 seconds, assumed azimuth from North along the north line of the NE ¼ of said Sec. 24, a distance of 647.07 feet; thence 179 degrees 35 minutes, 634.48 feet; thence 270 degrees 59 minutes 42 seconds, a distance of 32.70 feet to the point of beginning of the parcel to be described; thence return 90 degrees 59 minutes 42 seconds along the last described line, a distance of 32.70 feet; thence 89 degrees 35 minutes to the east line of said NW ¼ of NE ¼; thence northerly, along said east line to the northeast corner of said NW ¼ of NE ¼ thence 272 degrees 15 minutes 40 seconds along the north line of said NW ¼ of NE ¼ to a point distant 248.73 feet easterly of the north quarter corner of said Sec. 24; thence 176 degrees 22 minutes 23 seconds, a distance of 234.36 feet; thence 139 degrees 29 minutes 42 seconds, a distance of 546.75 feet to the point of beginning.

543569

6.269
6.532
6.272.10
6.50
6.271

**NO DELINQUENT TAX**

Transfer entered this ___5th___

day of __January__ 20_16_

_Dennis J. Freed_
County Auditor

By _Susan M Susse_
Deputy

Office of County Recorder     Fee   **$46.00**
**Chisago County, Minnesota**    Pages:   3
Certified, filed and/or Recorded on: January 5, 2016 3:05 PM
**Lee Olson, County Recorder**
Well Certificate [ ] Received     **Doc #**
                         **A584688**

Received from:    SIGNATURES CLOSING & TITLE - PINE CITY
Returned To:      SIGNATURES CLOSING & TITLE - PINE CITY
                  205 5TH ST SE

                  PINE CITY, MN 55063-1511

(Top 3 inches reserved for recording data)

**WARRANTY DEED**
**Individual(s) to Business Entity**

eCRV number: _____

DEED TAX DUE: $ 1.65                                   DATE: December 9, 2015

FOR VALUABLE CONSIDERATION, <u>Diane Buehring</u>, a widowed person ("Grantor"), hereby conveys and warrants to <u>Buehring</u>
**Properties, LLC,** a Limited Liability Company under the laws of **Minnesota** ("Grantee"), real property in **Chisago** County, Minnesota,
legally described as follows:

**See attached <u>Exhibit A</u>.**

The total consideration for this transfer is $500.00 or less.

_Check here if all or part of the described real property is Registered (Torrens)_ ☐

together with all hereditaments and appurtenances belonging thereto, subject to the following exceptions:
**None**

_Check applicable box:_

☐ The Seller certifies that the Seller does not know of any wells
    on the described real property.

☐ A well disclosure certificate accompanies this document or has
    been electronically filed. (If electronically filed, insert WDC
    number: [...].)

☐ I am familiar with the property described in this instrument and
    I certify that the status and number of wells on the described
    real property have not changed since the last previously filed
    well disclosure certificate.

Grantor

_Diane Buehring_

**Diane Buehring**

Receipt No. _64530_

Deed Tax $ _1.65_ Date _1-5-16_

_Lee Thornbyne_
Treasurer, Chisago County, MN

Page 2 of 3                                                               **WARRANTY DEED**

State of Minnesota, County of **Pine**

This instrument was acknowledged before me on  _____, 2015, by Diane Buehring, a widowed person.

                  {Stamp}

_____
(signature of notarial officer)

DAWN J. GIBB
Notary Public-Minnesota
My Commission Expires Jan 31, 2020

Title (and Rank): _____

My commission expires: __1/31/2020__
                                        (month/day/year)

THIS INSTRUMENT WAS DRAFTED BY:
John M. Cabak
CABAK LAW, LLC
243 Main Street S
Pine City, MN 55063
(320) 629-2529
john@cabaklaw.com
Attny Reg. No. 0388929

TAX STATEMENTS FOR THE REAL PROPERTY DESCRIBED IN THIS
INSTRUMENT SHOULD BE SENT TO:
Buehring Properties, LLC
51100 Driftwood Avenue
Rush City, MN 55069

EXHIBIT C

# Exhibit A

Parcel No. 1
The Northeast Quarter of the Southwest Quarter (NE ¼ of SW ¼) and the Southwest Quarter of the Southeast Quarter (SW ¼ of SE ¼), in Section Thirteen (13), Township Thirty-seven (37), Range Twenty-two (22), Chisago County, Minnesota, EXCEPTING THEREFROM the South 450 feet of the Northeast Quarter of the Southwest Quarter of Section Thirteen (13), Township Thirty-seven (37) North, Range Twenty-two (22) West, Chisago County, Minnesota.

Parcel No. 2
The Northeast Quarter of the Northeast Quarter (NE ¼ of NE ¼) of Section Twenty-four (24), Township Thirty-seven (37), Range Twenty-two (22), Chisago County, Minnesota EXCEPTING THEREFROM the following described parcel:

That part of the Northeast Quarter of the Northeast Quarter of Section Twenty-four (24), Township Thirty-seven (37), Range Twenty-two (22), Chisago County, Minnesota, described as follows:

Commencing at the northeast corner of said Section 24; thence on an assumed bearing of South 0 degrees 00 minutes 17 seconds West, along the East line of said Section 24, a distance of 850.07 feet; thence South 80 degrees 24 minutes 45 seconds West, 672.76 feet to the point of beginning of the tract herein described; thence continuing on a bearing of South 80 degrees 24 minutes 45 seconds West, 390.14 feet; thence North 5 degrees 52 minutes 03 seconds West, 315.69 feet, thence North 89 degrees 45 minutes 13 seconds West 185.38 feet to the West line of said Northeast Quarter of the Northeast Quarter; thence South 0 degrees 08 minutes 15 seconds East, along last said line 601.45 feet; thence North 80 degrees 24 minutes 45 seconds East 610.00 feet; thence North 0 degrees 08 minutes 15 seconds West 250.00 feet to the point of beginning.

Parcel No. 3
W ½ of SE ¼ of SE ¼ of Section 13, Township 37, Range 22, Chisago County, Minnesota

Parcel No. 4
The Southwest Quarter of the Northwest Quarter (SW ¼ of NW ¼), Section Eighteen (18), Township Thirty-seven (37) North, Range Twenty-one (21) West, except the South 2 rods thereof, Chisago County, Minnesota

Parcel No. 5
The North Half of the Southeast Quarter of Section Thirteen (13), Township Thirty-seven (37), Range Twenty-two (22), Chisago County, Minnesota

EXHIBIT C

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| 1970 | Chad N. Buehring | | 02/14/02 | pat |
| NOTE AMOUNT | INDEX (w/Margin) | RATE | MATURITY DATE | LOAN PURPOSE |
| $56,000.00 | Not Applicable | 8.000% | 02/14/05 | Agricultural |
| | | Creditor Use Only | | |

### PROMISSORY NOTE
(Agricultural - Single Advance - Fixed Rate)

**DATE AND PARTIES.** The date of this Promissory Note (Note) is February 14, 2002. The parties and their addresses are:

LENDER:
PINE CITY STATE BANK
P.O. BOX 49
600 HILLSIDE AVENUE
PINE CITY, Minnesota 55063-0049
Telephone: (320) 629-6713

BORROWER:
CHAD N. BUEHRING
635 Estate Drive
Rush City, Minnesota 55069

LYNNETTE BUEHRING
635 Estate Drive
Rush City, Minnesota 55069

**1. DEFINITIONS.** As used in this Note, the terms have the following meanings:

A. Pronouns. The pronouns "I," "me," and "my" refer to each Borrower signing this Note, individually and together with their heirs, successors and assigns, and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Note. "You" and "Your" refer to the Lender, with its participants or syndicators, successors and assigns, or any person or company that acquires an interest in the Loan.

B. Note. Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.

C. Loan. Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note.

D. Property. Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

E. Percent. Rates and rate change limitations are expressed as annualized percentages.

**2. PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, the principal sum of $56,000.00 (Principal) plus interest from February 14, 2002 on the unpaid Principal balance until this Note matures or this obligation is accelerated.

**3. INTEREST.** Interest will accrue on the unpaid Principal balance of this Note at the rate of 8.000 percent (Interest Rate).

A. Interest After Default. If you declare a default under the terms of this Loan, including for failure to pay in full at maturity, you may increase the Interest Rate otherwise payable as described in this section. In such event, interest will accrue on the unpaid Principal balance of this Note at the Interest Rate in effect from time to time under the terms of this Note, until paid in full.

B. Maximum Interest Amount. Any amount assessed or collected as interest under the terms of this Note or obligation will be limited to the Maximum Lawful Amount of interest allowed by state or federal law. Amounts collected in excess of the Maximum Lawful Amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

C. Statutory Authority. The amount assessed or collected on this Note is authorized by the Minnesota usury laws under Minn. Stat. § 47.59.

D. Accrual. During the scheduled term of this Loan interest accrues using an Actual/360 days counting method.

**4. ADDITIONAL CHARGES.** As additional consideration, I agree to pay, or have paid, these additional fees and charges.

A. Refundable Fees and Charges. Some or all of the following fees may be refunded if I pay this Note in full before the scheduled maturity date.
Loan Origination. A(n) Loan Origination fee of $560.00 payable from the loan proceeds.

B. Nonrefundable Fees and Charges. The following fees are earned when collected and will not be refunded if I prepay this Note before the scheduled maturity date.
Title Insurance. A(n) Title Insurance fee of $168.00 payable from the loan proceeds.
Title Examination. A(n) Title Examination fee of $150.00 payable from the loan proceeds.
State Tax Stamps - Mortgage. A(n) State Tax Stamps - Mortgage fee of $128.80 payable from the loan proceeds.
State Tax Stamps - Deed. A(n) State Tax Stamps - Deed fee of $39.21 payable from the loan proceeds.
Sale Closing Fee. A(n) Sale Closing Fee fee of $200.00 payable from the loan proceeds.
Recording - Releases. A(n) Recording - Releases fee of $40.00 payable from the loan proceeds.
Recording - Mortgage. A(n) Recording - Mortgage fee of $20.00 payable from the loan proceeds.
Recording - Deed. A(n) Recording - Deed fee of $20.00 payable from the loan proceeds.
Priority Recording . A(n) Priority Recording fee of $20.00 payable from the loan proceeds.
Plat Drawing . A(n) Plat Drawing fee of $75.00 payable from the loan proceeds.
Document Recording Fee. A(n) Document Recording Fee fee of $40.00 payable from the loan proceeds.
Document Preparation. A(n) Document Preparation fee of $200.00 payable from the loan proceeds.
Closing. A(n) Closing fee of $250.00 payable from the loan proceeds.
Abstract or Title Search. A(n) Abstract or Title Search fee of $298.25 payable from the loan proceeds.


EXHIBIT D

I understand and agree that some payments to third parties as part of this transaction may also involve money retained by you or paid back to you as commissions or other remuneration.

**5. REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Note.

**A. Late Charge.** If a payment is more than 10 days late, I will be charged 5.000 percent of the Amount of Payment. I will pay this late charge promptly but only once for each late payment. This amount may then increase so as to always be the highest amount allowed by law under Minnesota Statutes § 47.59.

**B. Returned Check Charge.** I agree to pay a service charge for each returned check, negotiable order of withdrawal, draft or automatic payment request. The amount of the service charge will generally be $10.00.

**C. Stop Payment.** A(n) Stop Payment equal to $10.00.

**6. PURCHASE MONEY LOAN.** You may include the name of the seller on the check or draft for this Note.

**7. PAYMENT.** I agree to pay this Note on demand, but if no demand is made, I agree to pay this Note in 36 payments. I will make 35 payments of $538.78 beginning on March 14, 2002, and on the 14th day of each month thereafter. A single "balloon payment" of the entire unpaid balance of Principal and interest will be due on February 14, 2005.

Payments will be rounded up to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Each payment I make on this Note will be applied first to any charges that I owe other than principal and interest then to interest that is due, and finally to principal that is due. If you and I agree to a different application of payments, we will describe our agreement on this Note. The actual amount of my final payment will depend on my payment record.

**8. PREPAYMENT.** I may prepay this Loan in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**9. LOAN PURPOSE.** The purpose of this Loan is to purchase land and payoff debt.

**10. SECURITY.** This Loan is secured by separate security instruments prepared together with this Note as follows:

| Document Name | Parties to Document |
|---|---|
| Mortgage - XXX Driftwood Avenue | Chad Buehring, Lynnette Buehring |

**11. DEFAULT.** I understand that you may demand payment anytime at your discretion. For example, you may demand payment in full if any of the following occur:

**A. Payments.** I fail to make a payment in full when due.

**B. Insolvency.** I make an assignment for the benefit of creditors or become insolvent, either because my liabilities exceed my assets or I am unable to pay my debts as they become due.

**C. Death or Incompetency.** I die or am declared legally incompetent.

**D. Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Note.

**E. Other Documents.** A default occurs under the terms of any other transaction document.

**F. Other Agreements.** I am in default on any other debt or agreement I have with you.

**G. Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** I fail to satisfy or appeal any judgment against me.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** I change my name or assume an additional name without notifying you before making such a change.

**K. Property Transfer.** I transfer all or a substantial part of my money or property.

**L. Property Value.** The value of the Property declines or is impaired.

**M. Erosion.** Any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained by federal law.

**N. Insecurity.** You reasonably believe that you are insecure.

**12. ASSUMPTIONS.** Someone buying the Property cannot assume the obligation. You may declare the entire balance of the Note to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, or transfer of the Property.

**13. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

**A. Additional Waivers By Borrower.** In addition, I, and any party to this Note and Loan, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Note.

(1) You may renew or extend payments on this Note, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property securing this Note.

(4) You, or any institution participating in this Note, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.

**B. No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Note, or other Loan documents, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**14. REMEDIES.** After I default, and after you give any legally required notice and opportunity to cure the default, you may at your option do any one or more of the following.

Chad N. Buehring
Minnesota Promissory Note
MN/4jahnwsom00529B00003528011021402N

©1996 Bankers Systems, Inc., St. Cloud, MN Ex∫erts

Initials CB AB
Page 2

A. **Acceleration.** You may make all or any part of the amount owing by the terms of this Note immediately due.

B. **Sources.** You may use any and all remedies you have under state or federal law or in any instrument securing this Note.

C. **Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.

D. **Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the balance owing under the terms of this Note, and accrue interest at the highest post-maturity interest rate.

E. **Attachment.** You may attach or garnish my wages or earnings.

F. **Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Note against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Note" means the total amount to which you are entitled to demand payment under the terms of this Note at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay this Note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

G. **Waiver.** Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**15. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Note. Expenses include, but are not limited to, attorneys' fees, court costs and other legal expenses. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest in effect as provided in the terms of this Note. All fees and expenses will be secured by the Property I have granted to you, if any. To the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees you incur to collect this Debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**16. WARRANTIES AND REPRESENTATIONS.** I have the right and authority to enter into this Note. The execution and delivery of this Note will not violate any agreement governing me or to which I am a party.

**17. INSURANCE.** I understand and agree that any insurance premiums paid to insurance companies as part of this Loan Agreement will involve money retained by or paid back to you as commissions or other remuneration.

A. **Property Insurance.** I will insure or retain insurance coverage on the Property and abide by the insurance requirements of any security instrument securing this Loan.

B. **Insurance Warranties.** I agree to purchase any insurance coverages that are required, in the amounts you require, as described in this or any other documents I sign for this Loan. I will provide you with continuing proof of coverage. I will buy or provide insurance from a firm licensed to do business in the State where the Property is located. If I buy or provide the insurance from someone other than you, the firm will be reasonably acceptable to you. I will have the insurance company name you as loss payee on any insurance policy. You will apply the insurance proceeds toward what I owe you on the outstanding balance. I agree that if the insurance proceeds do not cover the amounts I still owe you, I will pay the difference. I will keep the insurance until all debts secured by this agreement are paid. If I want to buy the insurance from you, I have signed a separate statement agreeing to this purchase.

C. **Prepayment.** If I prepay in full or if I default and you demand payment of the unpaid balance, I may be entitled to a partial refund credit of any prepaid, unearned insurance premiums. This refund may be obtained from you or from the insurance company named in my policy or certificate of insurance.

**18. APPLICABLE LAW.** This Note is governed by the laws of Minnesota, the United States of America and to the extent required, by the laws of the jurisdiction where the Property is located.

**19. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay this Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on this Loan, or any number of us together, to collect this Loan. Extending this Loan or new obligations under this Loan, will not affect my duty under this Loan and I will still be obligated to pay this Loan. The duties and benefits of this Loan will bind and benefit the successors and assigns of you and me.

**20. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is effective unless made in writing and executed by you and me. This Note is the complete and final expression of the agreement. If any provision of this Note is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**21. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

**22. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one party will be deemed to be notice to all parties. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**23. CREDIT INFORMATION.** I agree that from time to time you may obtain credit information about me from others, including other lenders and credit reporting agencies, and report to others (such as a credit reporting agency) your credit experience with me. I agree that you will not be liable for any claim arising from the use of information provided to you by others or for providing such information to others.

**24. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between

you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**25. SIGNATURES.** By signing, I agree to the terms contained in this Note. I also acknowledge receipt of a copy of this Note.

BORROWER:

_Chad N. Buehring_
Chad N. Buehring

_Lynnette Buehring_
Lynnette Buehring

Chad N. Buehring
Minnesota Promissory Note
MN-4janiv.com00529800003528011021402N

©1996 Bankers Systems, Inc., St. Cloud, MN Experia

Initials CB JB
Page 4

EXHIBIT D

**ALLONGE TO NOTE**

LOAN # ▮1970

THIS ALLONGE IS TO BE ATTACHED TO AND MADE A PART of that certain

PROMISSORY NOTE
Dated:  February 14, 2002
Payable by:   Chad N. Buehring and Lynnette Buehring, Husband and Wife
In the original loan amount of $56,000.00

PAY TO THE ORDER OF:

STEARNS BANK N.A. WITHOUT RECOURSE AND WITHOUT
REPRESENTATION OR WARRANTY, EXPRESS, IMPLIED OR BY
OPERATION OF LAW, OF ANY KIND AND NATURE WHATSOEVER.

Federal Deposit Insurance Corporation as Receiver for Horizon Bank, Pine City,
Minnesota

BY:  _____
      Name:  Nancy H. Kubasek
      Its:     Attorney-in-Fact

EXHIBIT D

*Reserved for Recording Information*

## ALLONGE TO PROMISSORY NOTE

Allonge to Promissory Note dated February 14, 2002 in the original principal amount of $56,000.00 executed by Chad N. Buehring and Lynnette Buehring, as Borrowers together with any subsequent renewals, modifications, and/or extensions thereof, and payable to Horizon Bank, f/k/a/ Pine City State Bank and assigned to Stearns Bank National Association in that certain assignment and bill of sale dated April 13, 2010.

Pay to the order of Unity Bank, pursuant to the terms and conditions of the Assignment of Mortgage dated October 31, 2019 together with any modifications and/or extensions thereof. Except as expressly provided in the Assignment Agreement dated October 30, 2019, this Allonge is made without recourse and without representation or warranty, express, implied, or by operation of law, or of any kind and nature whatsoever.

**STEARNS BANK NATIONAL ASSOCIATION**
**a national banking association**

Dated: October 31, 2019

By: _____

Name: __Steve Domine__

Its: __Senior Vice President__

STATE OF MINNESOTA )
               ) ss
COUNTY OF STEARNS )

The foregoing instrument was acknowledgement before me this 6th day of October 2019, by __Steve Domine__ the __Senior Vice President__ of Stearns Bank National Association, a national banking association on behalf of the Bank.

[Notary Stamp]

DAWN M. BROUILLET
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2024

Notary Public
My Commission Expires: __1-31-24__

EXHIBIT D

11970

Chisago

OFFICE OF COUNTY RECORDER
Chisago County, Minnesota

I hereby certify that this document was filed in this office
on   2/15/2002   at   4:00:00 PM      and was duly
recorded as document number A-372316
ELAINE OFTELIE – County Recorder, by _____ Deputy.
_____ p
Well Certificate: ___ Received ___ Not Required

Fees:
ELECTRONIC FILING FEE          $.50
EQUIPMENT FUND                 1.00
STATE SURCHARGE                4.50
GENERAL ABSTRACT              14.00
                    Total    $20.00

Receipt No. 15983
Registration Tax at $128.80   February
15  no 2002   Lee Olson / ____
             Treas., Chisago County, Minn.

A-372316

# MORTGAGE

**DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is February 14, 2002. The parties and their addresses are:

**MORTGAGOR:**
**CHAD N. BUEHRING**
635 Estate Drive
Rush City, Minnesota 55069
Spouse of Lynnette Buehring

**LYNNETTE BUEHRING**
635 Estate Drive
Rush City, Minnesota 55069
Spouse of Chad N. Buehring

Received from return to:
CITY TITLE
600 HILLWIDE AVE SW
PINE CITY, MN 55063- 2048

**LENDER:**
**PINE CITY STATE BANK**
Organized and existing under the laws of Minnesota
P.O. BOX 49
600 HILLSIDE AVENUE
PINE CITY, Minnesota  55063-0049
410350530

**1. CONVEYANCE.**  For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debts and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, conveys, sells, mortgages and warrants to Lender, with the power of sale, the following described property:

See Attached

The property is located in Chisago County at XXX Driftwood Avenue, Rush City, Minnesota 55069.

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, crops, timber, all diversion payments or third party payments made to crop producers and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described (all referred to as Property).  This Security Instrument will remain in effect until the Secured Debts and all underlying agreements have been terminated in writing by Lender.

**2. MAXIMUM OBLIGATION LIMIT.**  Notwithstanding anything to the contrary herein, enforcement of this Security Instrument is limited to a predetermined debt amount of $56,000.00 under chapter 287 of Minnesota Statutes.  This limitation does not include interest and any other amount advanced by Lender in protection of the Property or this Security Instrument, including but not limited to taxes, assessments, charges, claims, fines, impositions, insurance premiums, amounts due under prior or superior mortgages and other prior or superior liens, encumbrances and interests, legal expenses and attorneys' fees.

**3. SECURED DEBTS.** This Security Instrument will secure the following Secured Debts:

**A. Specific Debts.**  The following debts and all extensions, renewals, refinancings, modifications and replacements.  A promissory note, No. ■ 970, dated February 14, 2002, from Mortgagor to Lender, with a loan amount of $56,000.00 with an interest rate of 8.0 percent per year and maturing on February 14, 2005.

**B. Sums Advanced.**  All sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

**4. PAYMENTS.**  Mortgagor agrees that all payments under the Secured Debts will be paid when due and in accordance with the terms of the Secured Debts and this Security Instrument.

Chad N. Buehring
Minnesota Mortgage
MN/4janewsom00529800000352801102140 2Y

©1996 Bankers Systems, Inc., St. Cloud, MN *Exp3re5*                              Initials
                                                                                    Page 1

EXHIBIT E

**5. WARRANTY OF TITLE.** Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell, and mortgage, with the power of sale, the Property. Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record.

**6. PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:

    **A.** To make all payments when due and to perform or comply with all covenants.

    **B.** To promptly deliver to Lender any notices that Mortgagor receives from the holder.

    **C.** Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

**7. CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

**8. DUE ON SALE.** Lender may, at its option, declare the entire balance of the Secured Debts to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of the Property. This right is subject to the restrictions imposed by federal law governing the preemption of state due-on-sale laws, as applicable.

**9. WARRANTIES AND REPRESENTATIONS.** Mortgagor has the right and authority to enter into this Security Instrument. The execution and delivery of this Security Instrument will not violate any agreement governing Mortgagor or to which Mortgagor is a party.

**10. PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor will not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor, and of any loss or damage to the Property.

No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Mortgagor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance. Such replacement of personal property will be deemed subject to the security interest created by this Security Instrument. Mortgagor will not partition or subdivide the Property without Lender's prior written consent.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender will give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property will be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

**11. AUTHORITY TO PERFORM.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor will not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

**12. ASSIGNMENT OF LEASES AND RENTS.** Except as otherwise provided in this section, Mortgagor grants, bargains, sells, and conveys to Lender as additional security all the right, title and interest in and to any and all:

    **A.** Existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases").

    **B.** Rents, issues and profits (all referred to as "Rents"), including but not limited to security deposits, minimum rent, percentage rent, additional rent, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims which Mortgagor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property.

In the event any item listed as Leases or Rents is determined to be personal property, this Security Instrument will also be regarded as a security agreement.

Mortgagor will promptly provide Lender with true and correct copies of all existing and future Leases. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default. Except for one lease period's rent, Mortgagor will not collect in advance any future Rents without Lender's prior written consent. Upon default, Mortgagor will receive Rents in trust for Lender and Mortgagor will not commingle the Rents with any other funds. Amounts collected will be applied first, as set forth in M.S.A. §576.01 Subdivision 2 and then, at Lender's discretion to payments on the Secured Debts as therein provided, to costs of managing, protecting

EXHIBIT E

and preserving the Property and to any other necessary related expenses including Lender's attorneys' fees and court costs.

Mortgagor agrees that this assignment is effective immediately upon the execution of this Mortgage and perfected upon the recording of this Mortgage. Thereafter, either Lender or Mortgagor may notify the tenants and demand that all future Rents be paid directly to Lender. On receiving the notice of default, Mortgagor will endorse and deliver to Lender any payments of Rents. If Mortgagor becomes subject to a voluntary or involuntary bankruptcy, Mortgagor agrees that Lender is entitled to receive relief from the automatic stay in bankruptcy for the purpose of making this assignment effective and enforceable under state and federal law.

Mortgagor warrants that no default exists under the Leases or any applicable landlord law. Mortgagor also agrees to maintain, and to require the tenants to comply with, the Leases and any applicable law. Mortgagor will promptly notify Lender of any noncompliance. If Mortgagor neglects or refuses to enforce compliance with the terms of the Leases, then Lender may, at Lender's option, enforce compliance. Mortgagor will obtain Lender's written authorization before Mortgagor consents to sublet, modify, cancel, or otherwise alter the Leases, to accept the surrender of the Property covered by such Leases (unless the Leases so require), or to assign, compromise or encumber the Leases or any future Rents. If Lender acts to manage, protect and preserve the Property, Lender does not assume or become liable for its maintenance, depreciation, or other losses or damages, except those due to Lender's gross negligence or intentional torts. Otherwise, Mortgagor will hold Lender harmless and indemnify Lender for any and all liability, loss or damage that Lender may incur as a consequence of the assignment under this section.

This section applies only if the Mortgage secures an original principal debt of $100,000 or more or is a lien upon residential real estate containing more than four dwelling units, and is not a lien upon property which is entirely homesteaded as agricultural property or residential real estate containing four or fewer dwelling units where at least one of the units is homesteaded. This assignment may only be enforced against the nonhomestead portion of the mortgaged property.

**13. DEFAULT.** Mortgagor will be in default if any of the following occur:

**A. Payments.** Mortgagor fails to make a payment in full when due.

**B. Insolvency.** Mortgagor makes an assignment for the benefit of creditors or becomes insolvent, either because Mortgagor's liabilities exceed Mortgagor's assets or Mortgagor is unable to pay Mortgagor's debts as they become due.

**C. Death or Incompetency.** Mortgagor dies or is declared legally incompetent.

**D. Failure to Perform.** Mortgagor fails to perform any condition or to keep any promise or covenant of this Security Instrument.

**E. Other Documents.** A default occurs under the terms of any other transaction document.

**F. Other Agreements.** Mortgagor is in default on any other debt or agreement Mortgagor has with Lender.

**G. Misrepresentation.** Mortgagor makes any verbal or written statement or provides any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** Mortgagor fails to satisfy or appeal any judgment against Mortgagor.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** Mortgagor changes Mortgagor's name or assumes an additional name without notifying Lender before making such a change.

**K. Property Transfer.** Mortgagor transfers all or a substantial part of Mortgagor's money or property. This condition of default, as it relates to the transfer of the Property, is subject to the restrictions contained in the DUE ON SALE section.

**L. Property Value.** The value of the Property declines or is impaired.

**M. Erosion.** Any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained by federal law.

**N. Insecurity.** Lender reasonably believes that Lender is insecure.

**14. REMEDIES.** Lender may use any and all remedies Lender has under state or federal law or in any instrument evidencing or pertaining to the Secured Debts, including, without limitation, the power to sell the Property. Any amounts advanced on Mortgagor's behalf will be immediately due and may be added to the balance owing under the Secured Debts. Lender may make a claim for any and all insurance benefits or refunds that may be available on Mortgagor's default. Upon default, Lender will have the right, without declaring the whole indebtedness due and payable, to foreclose against all or any part of the Property. This lien will continue as a lien on any part of the Property not sold on foreclosure.

Subject to any right to cure, required time schedules or other notice rights Mortgagor may have under federal and state law, Lender may make all or any part of the amount owing by the terms of the Secured Debts immediately due and foreclose this Security Instrument in a manner provided by law upon the occurrence of a default or anytime thereafter.

If there is a default, Lender may, in addition to any other permitted remedy, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash and convey absolute title free and clear of all right, title and interest of Mortgagor at such time and place as Lender designates. If Lender invokes the power of sale, Lender will give notice of the sale including the time, terms and place of sale and a description of the property to be sold as required by the applicable law in effect at the time of the proposed sale.

Upon sale of the Property and to the extent not prohibited by law, Lender will make and deliver a deed to the Property sold which conveys absolute title to the purchaser. Lender will apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to

EXHIBIT E

all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. Lender or its designee may purchase the Property at any sale. The recitals in any deed of conveyance will be prima facie evidence of the facts set forth therein.

If the Property is sold pursuant to this section, Mortgagor, or any person holding possession of the Property through Mortgagor, will immediately surrender possession of the Property to the purchaser at the sale.  If possession is not surrendered, Mortgagor or such person will be a tenant holding over and may be dispossessed in accordance with applicable law.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth.  The acceptance by Lender of any sum in payment or partial payment on the Secured Debts after the balance is due or is accelerated or after foreclosure proceedings are filed will not constitute a waiver of Lender's right to require complete cure of any existing default.  By choosing any one or more of these remedies Lender does not give up Lender's right to use any other remedy.  Lender does not waive a default if Lender chooses not to use a remedy.  By electing not to use any remedy, Lender does not waive Lender's right to later consider the event a default and to use any remedies if the default continues or happens again.

**15. COLLECTION EXPENSES AND ATTORNEYS' FEES.**  On or after Default, to the extent permitted by law, Mortgagor agrees to pay all expenses of collection, enforcement or protection of Lender's rights and remedies under this Security Instrument.   Mortgagor agrees to pay expenses for Lender to inspect and preserve the Property and for any recordation costs of releasing the Property from this Security Instrument.   Expenses include, but are not limited to, attorneys' fees, court costs and other legal expenses. These expenses are due and payable immediately.  If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of the Secured Debts.  To the extent permitted by the United States Bankruptcy Code, Mortgagor agrees to pay the reasonable attorneys' fees Lender incurs to collect the Secured Debts as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**16. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.**  As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substance," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

Mortgagor represents, warrants and agrees that:

**A.** Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.

**B.** Except as previously disclosed and acknowledged in writing to Lender, Mortgagor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.

**C.** Mortgagor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor will take all necessary remedial action in accordance with Environmental Law.

**D.** Except as previously disclosed and acknowledged in writing to Lender, Mortgagor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Mortgagor or any tenant of any Environmental Law.   Mortgagor will immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.

**E.** Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are and will remain in full compliance with any applicable Environmental Law.

**F.** Except as previously disclosed and acknowledged in writing to Lender, there are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.

**G.** Mortgagor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.

**H.** Mortgagor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Mortgagor and any tenant are in compliance with applicable Environmental Law.

**I.** Upon Lender's request and at any time, Mortgagor agrees, at Mortgagor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender.   The choice of the environmental engineer who will perform such audit is subject to Lender's approval.

EXHIBIT E

**J.** Lender has the right, but not the obligation, to perform any of Mortgagor's obligations under this section at Mortgagor's expense.

**K.** As a consequence of any breach of any representation, warranty or promise made in this section, (1) Mortgagor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Security Instrument and in return Mortgagor will provide Lender with collateral of at least equal value to the Property secured by this Security Instrument without prejudice to any of Lender's rights under this Security Instrument.

**L.** Notwithstanding any of the language contained in this Security Instrument to the contrary, the terms of this section will survive any foreclosure or satisfaction of this Security Instrument regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

**17. CONDEMNATION.** Mortgagor will give Lender prompt notice of any pending or threatened action by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds will be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**18. INSURANCE.** Mortgagor agrees to keep the Property insured against the risks reasonably associated with the Property. Mortgagor will maintain this insurance in the amounts Lender requires. This insurance will last until the Property is released from this Security Instrument. Mortgagor may choose the insurance company, subject to Lender's approval, which will not be unreasonably withheld.

All insurance policies and renewals will include a standard "mortgage clause" and, where applicable, "loss payee clause." If required by Lender, Mortgagor agrees to maintain comprehensive general liability insurance and rental loss or business interruption insurance in amounts and under policies acceptable to Lender. The comprehensive general liability insurance must name Lender as an additional insured. The rental loss or business interruption insurance must be in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing.)

Mortgagor will give Lender and the insurance company immediate notice of any loss. All insurance proceeds will be applied to restoration or repair of the Property or to the Secured Debts, at Lender's option. If Lender acquires the Property in damaged condition, Mortgagor's rights to any insurance policies and proceeds will pass to Lender to the extent of the Secured Debts.

Mortgagor will immediately notify Lender of cancellation or termination of insurance. If Mortgagor fails to keep the Property insured Lender may obtain insurance to protect Lender's interest in the Property. This insurance may include coverages not originally required of Mortgagor, may be written by a company other than one Mortgagor would choose, and may be written at a higher rate than Mortgagor could obtain if Mortgagor purchased the insurance.

**19. ESCROW FOR TAXES AND INSURANCE.** Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

**20. CO-SIGNERS.** If Mortgagor signs this Security Instrument but does not sign the Secured Debts, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debts and Mortgagor does not agree to be personally liable on the Secured Debts. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws.

**21. WAIVERS.** Except to the extent prohibited by law, Mortgagor waives all homestead exemption rights relating to the Property.

**22. APPLICABLE LAW.** This Security Instrument is governed by the laws of Minnesota, except to the extent otherwise required by the laws of the jurisdiction where the Property is located, and the United States of America.

**23. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** Each Mortgagor's obligations under this Security Instrument are independent of the obligations of any other Mortgagor. Lender may sue each Mortgagor individually or together with any other Mortgagor. Lender may release any part of the Property and Mortgagor will still be obligated under this Security Instrument for the remaining Property. The duties and benefits of this Security Instrument will bind and benefit the successors and assigns of Lender and Mortgagor.

**24. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Security Instrument may not be amended or modified by oral agreement. No amendment or modification of this Security Instrument is effective unless made in writing and executed by Mortgagor and Lender. This Security Instrument is the complete and final expression of the agreement. If any provision of this Security Instrument is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**25. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Security Instrument.

**26. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the

A-372316

EXHIBIT E

DATE AND PARTIES section, or to any other address designated in writing. Notice to one party will be deemed to be notice to all parties. Mortgagor will inform Lender in writing of any change in Mortgagor's name, address or other application information. Mortgagor will provide Lender any financial statements or information Lender requests. All financial statements and information Mortgagor gives Lender will be correct and complete. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and to confirm Lender's lien status on any Property. Time is of the essence.

**SIGNATURES.** By signing, Mortgagor agrees to the terms and covenants contained in this Security Instrument. Mortgagor also acknowledges receipt of a copy of this Security Instrument.

**MORTGAGOR:**

_Chad N. Buehring_
Chad N. Buehring

_Lynnette Buehring_
Lynnette Buehring

**ACKNOWLEDGMENT.**
(Individual)

_State_ OF _Minnesota_, _County_ OF _Pine_ ss.
This instrument was acknowledged before me this _14_ day of _February_, _2002_ by Chad N. Buehring, spouse of Lynnette Buehring, and Lynnette Buehring, spouse of Chad N. Buehring.

My commission expires. THIRY
Notary Public
Minnesota
My Commission Expires Jan 31, 2005

_Patrick A. Thiry_
(Notary Public)

This instrument was drafted by City Title, Inc., 600 Hillside Ave, Pine City, Minnesota 55063

EXHIBIT E

EXHIBIT "A"

That part of the Northwest Quarter of the Northeast Quarter
(NW¼ of NE¼), Section Twenty-four (24), Township Thirty-
seven (37) North, Range Twenty-two (22) West, described as
follows:

Commencing at the north quarter corner of said
Sec. 24; thence 92°15'40", assumed azimuth from
North along the north line of the NE¼ of said
Sec. 24, a distance of 647.07 feet; thence
179°35', 634.48 feet; thence 270°59'42", a dis-
tance of 32.70 feet to the point of beginning
of the parcel to be described; thence return
90°59'42" along the last described line, a dis-
tance of 32.70 feet; thence 89°35' to the east
line of said NW¼ of NE¼; thence northerly, along
said east line to the northeast corner of said
NW¼ of NE¼; thence 272°15'40" along the north
line of said NW¼ of NE¼ to a point distant
248.73 feet easterly of the north quarter cor-
ner of said Sec. 24; thence 176°22'23", a dis-
tance of 234.36 feet; thence 139°29'42", a dis-
tance of 546.75 feet to the point of beginning.

Subject to Driftwood Avenue.

A-372316

**OFFICE OF COUNTY RECORDER**
Chisago County, Minnesota

I hereby certify that this document was filed in this office on **4/16/2010** at **11:35:08 AM** and was duly recorded as document number **A-520798**

LEE OLSON-County Recorder, by____Deputy.
____p

Well Certificate: ___ Received ___ Not Required

Fees:
| | |
|---|---|
| REC'G COMPLIANCE FUND | $11.00 |
| STATE GENERAL FUND | 10.50 |
| TECHNOLOGY FUND | 10.00 |
| GENERAL ABSTRACT | 14.50 |
| Total | $46.00 |

Recording Requested By/Return To:
Stearns Bank N.A
**Attn: Julie Forrest**
600 Hillside Ave SW
Pine City, MN 55063

Prepared By: Julie Forrest
Stearns Bank, N. A.
600 Hillside Ave SW
Pine City, MN 55063

**NOTE# 1970**

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of Mortgage (herein "Assignor") whose address is 1601 Bryan Street, Dallas, Texas 75201, does hereby grant, sell, assign, transfer and convey effective as of June 26, 2009, unto Stearns Bank, N.A. its successors and assigns (herein "Assignee"), whose address is 4191 2nd Street South, St. Cloud, MN 56301, a certain Mortgage dated February 14, 2002 made and executed by, Chad N. Buehring and Lynnette Buehring, Husband and Wife in favor of Horizon Bank, Pine City, Minnesota , such Mortgage having been given to secure payment of **$56,000.00** (Original Principal Amount), which Mortgage is of record in **Instrument No.A-372316** of the Official Records of Chisago County, State of Minnesota, together with the note(s) and obligations therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under Mortgage

TO HAVE AND TO HOLD the same unto Assignee, its successors and assigns, forever, subject only to the Terms and conditions of the above-described Mortgage.

THIS ASSIGNMENT IS MADE WITHOUT RECOURSE, REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, WRITTEN OR ORAL, BY THE FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR HORIZON BANK,. THE LOAN SECURED BY THE MORTGAGE, AS ASSIGNED AND MODIFIED, IS CONVEYED "AS IS" AND "WITH ALL FAULTS," WITHOUT ANY REPRESENTATION OR WARRANTY WHATSOEVER, INCLUDING AS TO COLLECTIBILITY, ENFORCEABILITY, VALUE OF COLLATERAL, ABILITY OF ANY OBLIGOR TO REPAY, CONDITION, FITNESS FOR ANY PARTICULAR PURPOSE MERCHANTABILITY OR ANY OTHER WARRANTY, EXPRESS OR IMPLIED, BY ANY PERSON, INCLUDING THE FDIC OR ITS OFFICERS, EMPLOYEES, AGENTS OR CONTRACTORS.

EXHIBIT E

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment Mortgage on April 13, 2010.

ASSIGNOR:
FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR HORIZON BANK, PINE CITY, MINNESOTA

By: _____

Name:   Nancy H. Kubasek
Its:      Attorney-In-Fact

**ACKNOWLEDGMENT**

State of _MN_
County of _Stearns_

The foregoing instrument was acknowledged before me this _April 13, 2010_ by _Nancy Kubasek_ the Attorney-in-Fact for FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR HORIZON BANK, PINE CITY, MINNESOTA.

(SEAL)

JENNIFER MARIE ZIERDEN
Notary Public-Minnesota
My Commission Expires Jan 31, 2014

NOTARY PUBLIC

My Commission Expires: _1/31/14_

A-520798

Received from/return to:
STEARNS BANK
600 HILLSIDE AVE SW
PO BOX 49
PINE CITY, MN 55063- 0049

EXHIBIT E

Office of County Recorder    Fee   $46.00
Chisago County, Minnesota    Pages:   3
Certified, filed and/or Recorded on: November 20, 2019 9:33 AM
Janet R. Converse, County Recorder    **Doc #**
Well Certificate [   ] Received    **A624570**

Received from:    UNITY BANK
Returned To:    UNITY BANK
PO BOX 604
1180 W 4TH ST
RUSH CITY, MN 55069 - 0000

*Reserved for Recording Information*

**Recording Prepared By:**    **Return To:**
Stearns Bank N.A.
4191 2nd Street South     **UNITY BANK**
St. Cloud, MN  56301     **1180 WEST 4TH STREET**
**PO BOX 604**
**RUSH CITY, MN 55069**

**(NOTE# ███ 1970)**

## ASSIGNMENT OF MORTGAGE

For Value Received, **Stearns Bank National Association**, ("Assignor") whose address is 4191 2nd Street South, St. Cloud, MN 56301, does hereby grant, sell, assign, transfer and convey and set over, unto **Unity Bank**, (herein "Assignee"), whose address is 1180 W 4th Street, Rush City, MN 55069, all of its right, title and interest in to that certain **Mortgage** dated February 14, 2002 executed by Chad N. Buehring and Lynnette Buehring as Mortgagor and Horizon Bank, f/k/a Pine City State Bank as Lender and recorded with the Office of the County Recorder of Chisago County on February 15, 2002 as Document Number A-372316 and assigned to the Assignor in that certain **Assignment of Mortgage** on June 26, 2009 and recorded with the Office of the County Recorder of Chisago County on April 16, 2010 as Document Number A-520798 ("Mortgage"), and which Mortgage encumbers the property more particularly described therein, together with any and all amendments, modifications, renewals and extensions, and together with all indebtedness currently due and to become due under the terms of any promissory note, evidence of indebtedness and claims secured thereby upon the following described piece or parcel of land, situate and being in said County and State, to wit:

*See Exhibit A for Property Description.*

In addition to the instrument described above, Stearns Bank National Association hereby assigns all of its right, title and interest in and to any and all notes, evidences of indebtedness, collateral, liens, security interests (real, personal and mixed property), loan documents and any other instrument that Stearns Bank National Association has an interest in with respect to the Mortgage and loan described above, together with all rights to payments and proceeds therefrom. Assignor directs all future payments under the mortgage and note, be made to Assignee.

EXHIBIT E

EXCEPT AS OTHERWISE AGREED TO IN THE ASSIGNMENT AGREEMENT EXECUTED ON OCTOBER 30, 2019 BETWEEN ASSIGNOR AND ASSIGNEE, THIS ASSIGNMENT IS MADE WITHOUT RECOURSE, REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, WRITTEN OR ORAL, BY STEARNS BANK NATIONAL ASSOCIATION. THE LOAN SECURED BY THE MORTGAGE, AS ASSIGNED AND MODIFIED IS CONVEYED "AS IS" AND "WITH ALL FAULTS" WITHOUT ANY REPRESENTATION OR WARRANTY WHATSOEVER, INCLUDING AS TO COLLECTIBILITY, ENFORCEABILITY, VALUE OF COLLATERAL, ABILITY OF ANY OBLIGOR TO REPAY, CONDITION, FITNESS FOR ANY PARTICULAR PURPOSE MERCHANTABILITY OR ANY OTHER WARRANTY, EXPRESS OR IMPLIED, BY ANY PERSON, INCLUDING THE FDIC OR ITS OFFICERS, EMPLOYEES, AGENTS OR CONTRACTORS.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on October 31, 2019.

**STEARNS BANK NATIONAL ASSOCIATION**
**a national banking association**

Witness

By: _____

Name: Steve Domine

Its: Senior Vice President

Witness

STATE OF MINNESOTA    )
                       ) ss
COUNTY OF STEARNS      )

The foregoing instrument was acknowledgement before me this 6th day of October 2019, by Steve Domine the Senior Vice President of Stearns Bank National Association, a national banking association on behalf of the Bank.

[Notary Stamp]

Notary Public
My Commission Expires: 1-31-24

DAWN M. BROUILLET
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2024

EXHIBIT E

## EXHIBIT A

That part of the Northwest Quarter of the Northeast Quarter (NW1/4 of NE1/4), Section Twenty-four (24), Township Thirty-seven (37) North, Range Twenty-two (22) West, described as follows:

Commencing at the north quarter corner of said Sec. 24; thence 92°15'40", assumed azimuth from North along the north line of the NE1/4 of said Sec. 24, a distance of 647.07 feet; thence 179°35', 634.48 feet; thence 270°59'42", a distance of 32.70 feet to the point of beginning of the parcel to be described; thence return 90°59'42" along the last described line, a distance of 32.70 feet; thence 89°35' to the east line of said NW1/4 of NE1/4; thence northerly, along said east line to the northeast corner of said NW1/4 of NE1/4; thence 272°15'40" along the north line of said NW1/4 of NE1/4 to a point distant 248.73 feet easterly of the north quarter corner of said Sec. 24; thence 176°22'23", a distance of 234.36 feet; thence 139°29'42", a distance of 546.75 feet to the point of beginning.

Subject to Driftwood Avenue.

EXHIBIT E

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| 3231 | Brandon Buehring | | 11/12/03 | pat |
| NOTE AMOUNT | INDEX (w/Margin) | RATE | MATURITY DATE | LOAN PURPOSE |
| $35,000.00 | Not Applicable | 7.500% | 02/10/04 | Agricultural |
| | | Creditor Use Only | | |

## PROMISSORY NOTE
(Agricultural - Draw - Fixed Rate)

**DATE AND PARTIES.** The date of this Promissory Note (Note) is November 12, 2003. The parties and their addresses are:

**LENDER:**
PINE CITY STATE BANK
P.O. BOX 49
600 HILLSIDE AVENUE
PINE CITY, Minnesota 55063-0049
Telephone: (320) 629-6713

**BORROWER:**
BRANDON BUEHRING
51100 Driftwood Ave.
Rush City, Minnesota 55069

NICHOLAS BUEHRING
51100 Driftwood Ave.
Rush City, Minnesota 55069

**1. DEFINITIONS.** As used in this Note, the terms have the following meanings:

**A. Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Note, individually and together with their heirs, successors and assigns, and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Note. "You" and "Your" refer to the Lender, with its participants or syndicators, successors and assigns, or any person or company that acquires an interest in the Loan.

**B. Note.** Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.

**C. Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note.

**D. Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

**E. Percent.** Rates and rate change limitations are expressed as annualized percentages.

**2. PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, amounts advanced from time to time under the terms of this Note up to the maximum total principal balance of $35,000.00 (Principal), plus interest from the date of disbursement, on the unpaid outstanding Principal balance until this Note matures or this obligation is accelerated.

All advances made will be made subject to all other terms and conditions of this Loan.

**3. INTEREST.** Interest will accrue on the unpaid Principal balance of this Note at the rate of 7.500 percent (Interest Rate).

**A. Interest After Default.** If you declare a default under the terms of this Loan, including for failure to pay in full at maturity, you may increase the Interest Rate payable on the outstanding Principal balance of this Note. In such event, interest will accrue on the outstanding Principal balance at the Interest Rate in effect from time to time under the terms of this Loan, until paid in full.

**B. Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Note or obligation will be limited to the Maximum Lawful Amount of interest allowed by state or federal law. Amounts collected in excess of the Maximum Lawful Amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

**C. Statutory Authority.** The amount assessed or collected on this Note is authorized by the Minnesota usury laws under Minn. Stat. § 47.59.

**D. Accrual.** During the scheduled term of this Loan interest accrues using an Actual/360 days counting method.

**4. ADDITIONAL CHARGES.** As additional consideration, I agree to pay, or have paid, these additional fees and charges.

**A. Refundable Fees and Charges.** Some or all of the following fees may be refunded if I pay this Note in full before the scheduled maturity date.
Loan Origination. A(n) Loan Origination fee of $350.00 payable from the loan proceeds.

**B. Nonrefundable Fees and Charges.** The following fees are earned when collected and will not be refunded if I prepay this Note before the scheduled maturity date.
State Tax Stamps - Mortgage. A(n) State Tax Stamps - Mortgage fee of $80.50 payable from the loan proceeds.
Recording - Releases. A(n) Recording - Releases fee of $40.00 payable from the loan proceeds.
Recording - Mortgage. A(n) Recording - Mortgage fee of $20.00 payable from the loan proceeds.
Record Assignment of Contract for Deed. A(n) Record Assignment of Contract for Deed fee of $20.00 payable from the loan proceeds.
FLOOD ZONE DETERMINATION FEE. A(n) FLOOD ZONE DETERMINATION FEE fee of $6.50 payable from the loan proceeds.
FLOOD ZONE DETERMINATION. A(n) FLOOD ZONE DETERMINATION fee of $18.50 payable from the loan proceeds.
County Property Taxes - Not escrowed. A(n) County Property Taxes - Not escrowed fee of $1,252.00 payable from separate funds on or before today's date.
Abstract or Title Search. A(n) Abstract or Title Search fee of $150.00 payable from the loan proceeds.


EXHIBIT_F

I understand and agree that some payments to third parties as part of this transaction may also involve money retained by you or paid back to you as commissions or other remuneration.

**5. REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Note.

**A. Late Charge.** If a payment is more than 10 days late, I will be charged 5.000 percent of the Amount of Payment. I will pay this late charge promptly but only once for each late payment. This amount may then increase so as to always be the highest amount allowed by law under Minnesota Statutes § 47.59.

**B. Returned Check Charge.** I agree to pay a service charge for each returned check, negotiable order of withdrawal, draft or automatic payment request. The amount of the service charge will generally be $10.00.

**C. Stop Payment.** A(n) Stop Payment equal to $10.00.

**6. GOVERNING AGREEMENT.** This Note is further governed by the Commercial Loan Agreement executed between you and me as part of this Loan, as modified, amended or supplemented. Upon execution of this Note, I represent that I have reviewed and am in compliance with the terms contained in the Commercial Loan Agreement.

**7. PAYMENT.** I agree to pay this Note on demand, but if no demand is made, I agree to pay this Note in a single payment of all unpaid Principal and accrued interest on February 10, 2004.

Payments will be rounded up to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

**8. PREPAYMENT.** I may prepay this Loan in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**9. LOAN PURPOSE.** The purpose of this Loan is barn construction .

**10. SECURITY.** This Loan is secured by separate security instruments prepared together with this Note as follows:

| Document Name | Parties to Document |
|---|---|
| Mortgage - 51765 Elmcrest Ave. | Brendon Buehring |

**11. ASSUMPTIONS.** Someone buying the Property cannot assume the obligation. You may declare the entire balance of the Note to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, or transfer of the Property.

**12. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

**A. Additional Waivers By Borrower.** In addition, I, and any party to this Note and Loan, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Note.

(1) You may renew or extend payments on this Note, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property securing this Note.

(4) You, or any institution participating in this Note, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.

**B. No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Note, or other Loan documents, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**13. APPLICABLE LAW.** This Note is governed by the laws of Minnesota, the United States of America and to the extent required, by the laws of the jurisdiction where the Property is located.

**14. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay this Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on this Loan, or any number of us together, to collect this Loan. Extending this Loan or new obligations under this Loan, will not affect my duty under this Loan and I will still be obligated to pay this Loan. The duties and benefits of this Loan will bind and benefit the successors and assigns of you and me.

**15. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is effective unless made in writing and executed by you and me. This Note is the complete and final expression of the agreement. If any provision of this Note is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**16. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

**17. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one party will be deemed to be notice to all parties. I will inform you in writing of any change in my name, address or other application information. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**18. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably request. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**19. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**20. SIGNATURES.** By signing, I agree to the terms contained in this Note. I also acknowledge receipt of a copy of this Note.

BORROWER:

Brandon Buehring
Individually

Nicholas Buehring
Individually

EXHIBIT_F

*Reserved for Recording Information*

## ALLONGE TO PROMISSORY NOTE

Allonge to Promissory Note dated November 12, 2003 in the original principal amount of $35,000.00 executed by Brandon Buehring and Nicholas Buehring, as Borrowers together with any subsequent renewals, modifications, and/or extensions thereof, and payable to Horizon Bank, f/k/a/ Pine City State Bank and assigned to Stearns Bank National Association in that certain assignment and bill of sale dated April 13, 2010.

Pay to the order of Unity Bank, pursuant to the terms and conditions of the Assignment of Mortgage dated October 31, 2019 together with any modifications and/or extensions thereof. Except as expressly provided in the Assignment Agreement dated October 30, 2019, this Allonge is made without recourse and without representation or warranty, express, implied, or by operation of law, or of any kind and nature whatsoever.

STEARNS BANK NATIONAL ASSOCIATION
a national banking association

Dated: October 31, 2019

By: _____

Name: Steve Dominne

Its: Senior Vice President

STATE OF MINNESOTA    )
                      ) ss
COUNTY OF STEARNS     )

The foregoing instrument was acknowledgement before me this 16th day of October 2019, by Steve Domine the Senior Vice President of Stearns Bank National Association, a national banking association on behalf of the Bank.

[Notary Stamp]

DAWN M. BROUILLET
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2024

Notary Public

My Commission Expires: 1-31-24

EXHIBIT_F

B231

## ALLONGE TO NOTE

**LOAN #** ███ **3231**

**THIS ALLONGE IS TO BE ATTACHED TO AND MADE A PART** of that certain

**PROMISSORY NOTE**
Dated:  November 12, 2003
Payable by:   Brandon Buehring, a single person
In the original loan amount of $35,000.00

**PAY TO THE ORDER OF:**

**STEARNS BANK  N.A. WITHOUT RECOURSE AND WITHOUT
REPRESENTATION OR WARRANTY, EXPRESS, IMPLIED OR BY
OPERATION OF LAW, OF ANY KIND AND NATURE WHATSOEVER.**

**Federal Deposit Insurance Corporation as Receiver for Horizon Bank, Pine City,
Minnesota**

BY:  _Nancy H. Kubasek_
Name:  Nancy H. Kubasek
Its:       Attorney-in-Fact

**OFFICE OF COUNTY RECORDER**
Chisago County, Minnesota

I hereby certify that this document was filed in this office
on   11/20/2003  at  1:00:00 PM    and was duly
recorded as document number A-418549
ELAINE OTTELIE – County Recorder, by ____ Deputy.

Well Certificate: ___ Received   ___ Not Required

*Fees:*

| | |
|---|---|
| ELECTRONIC FILING FEE | .50 |
| EQUIPMENT FUND | 1.00 |
| STATE SURCHARGE | 4.50 |
| GENERAL ABSTRACT | 14.00 |
| Total | $20.00 |

## MORTGAGE
(With Future Advance Clause)

**DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is November 12, 2003. The parties and their addresses are:

**MORTGAGOR:**
BRANDON BUEHRING
An unmarried individual
51100 Driftwood Ave.
Rush City, Minnesota 55069

Received From/return to:
PINE CITY STATE BANK
600 HILLSIDE AVENUE
PO BOX 49
PINE CITY, MN 55063- 0049

**LENDER:**
PINE CITY STATE BANK
Organized and existing under the laws of Minnesota
P.O. BOX 49
600 HILLSIDE AVENUE
PINE CITY, Minnesota 55063-0049
410350530

**1. CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debts and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, conveys, sells, mortgages and warrants to Lender, with the power of sale, the following described property:

The Southeast Quarter of the Southeast Quarter (SE 1/4 of SE 1/4) of Section Twelve (12), Township Thirty-seven (37), Range Twenty-two (22).
AND
The East Half of Northeast Quarter (E 1/2 of NE 1/4) of Section Thirteen (13), Township Thirty-seven (37), Range Twenty two (22).

The property is located in Chisago County at 51765 Elmcrest Ave., Rush City, Minnesota 55069

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, crops, timber, all diversion payments or third party payments made to crop producers and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described (all referred to as Property). This Security Instrument will remain in effect until the Secured Debts and all underlying agreements have been terminated in writing by Lender.

**2. MAXIMUM OBLIGATION LIMIT.** Notwithstanding anything to the contrary herein, enforcement of this Security Instrument is limited to a predetermined debt amount of $35,000.00 under chapter 287 of Minnesota Statutes. This limitation does not include interest and any other amount advanced by Lender in protection of the Property or this Security Instrument, including but not limited to taxes, assessments, charges, claims, fines, impositions, insurance premiums, amounts due under prior or superior mortgages and other prior or superior liens, encumbrances and interests, legal expenses and attorneys' fees.

**3. SECURED DEBTS.** This Security Instrument will secure the following Secured Debts:

**A. Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note, No. █9231, dated November 12, 2003, from Brandon Buehring and Nicholas Buehring (Borrower) to Lender, with a loan amount of $35,000.00 with an interest rate of 7.5 percent per year and maturing on February 10, 2004. One or more of the debts secured by this Security Instrument contains a future advance provision.

**B. Sums Advanced.** All sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

Brandon Buehring
Minnesota Mortgage
MN(4)anwwsam00 04400004 180012 11 1203Y

©1994 Bankers Systems, Inc. St. Cloud, MN Form GTH-MTGLAZMN

Initials **BB**

**4. PAYMENTS.** Mortgagor agrees that all payments under the Secured Debts will be paid when due and in accordance with the terms of the Secured Debts and this Security Instrument.

**5. WARRANTY OF TITLE.** Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell, and mortgage, with the power of sale, the Property. Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record.

**6. PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:

A. To make all payments when due and to perform or comply with all covenants.

B. To promptly deliver to Lender any notices that Mortgagor receives from the holder.

C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

**7. CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

**8. DUE ON SALE.** Lender may, at its option, declare the entire balance of the Secured Debts to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law governing the preemption of state due-on-sale laws, as applicable.

**9. WARRANTIES AND REPRESENTATIONS.** Mortgagor has the right and authority to enter into this Security Instrument. The execution and delivery of this Security Instrument will not violate any agreement governing Mortgagor or to which Mortgagor is a party.

**10. PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor will not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor, and of any loss or damage to the Property.

No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Mortgagor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance. Such replacement of personal property will be deemed subject to the security interest created by this Security Instrument. Mortgagor will not partition or subdivide the Property without Lender's prior written consent.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender will give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property will be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

**11. AUTHORITY TO PERFORM.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor will not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

**12. ASSIGNMENT OF LEASES AND RENTS.** Mortgagor assigns, grants, bargains, conveys, mortgages and warrants to Lender as additional security all the right, title and interest in the following (all referred to as Property).

A. Existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the non-homestead portion of the Property, including any extensions, renewals, modifications or replacements (all referred to as Leases).

B. Rents, issues and profits (all referred to as Rents), including but not limited to security deposits, minimum rent, percentage rent, additional rent, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims which Assignor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property.

In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement. Mortgagor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Mortgagor may collect, receive, enjoy and use the Rents so long as

EXHIBIT G

Mortgagor is not in default. Mortgagor will not collect in advance any Rents due in future lease periods, unless Mortgagor first obtains Lender's written consent. Upon default, Mortgagor will receive any Rents in trust for Lender and Mortgagor will not commingle the Rents with any other funds. When Lender so directs, Mortgagor will endorse and deliver any payments of Rents from the Property to Lender. Amounts collected will be applied first as set forth at Minn. Stat. Ann. § 576.01, Subdivision 2, and then at Lender's discretion to the Secured Debts, the costs of managing, protecting and preserving the Property, and other necessary expenses. Mortgagor agrees that this Security Instrument is immediately effective between Mortgagor and Lender and effective as to third parties on the recording of this Assignment. As long as this Assignment is in effect, Mortgagor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants. Mortgagor, at its sole cost and expense, will keep, observe and perform, and require all other parties to the Leases to comply with the Leases and any applicable law. If Mortgagor or any party to the Lease defaults or fails to observe any applicable law, Mortgagor will promptly notify Lender. If Mortgagor neglects or refuses to enforce compliance with the terms of the Leases, then Lender may, at Lender's option, enforce compliance. Mortgagor will not sublet, modify, extend, cancel, or otherwise alter the Leases, or accept the surrender of the Property covered by the Leases (unless the Leases so required) without Lender's consent. Mortgagor will not assign, compromise, subordinate or encumber the Leases and Rents without Lender's prior written consent. Lender does not assume or become liable for the Property's maintenance, depreciation, or other losses or damages when Lender acts to manage, protect or preserve the Property, except for losses and damages due to Lender's gross negligence or intentional torts. Otherwise, Mortgagor will indemnify Lender and hold Lender harmless for all liability, loss or damage that Lender may incur when Lender opts to exercise any of its remedies against any party obligated under the Leases. This Security Instrument applies when, as additional security for the debt secured by the mortgage, it secures an original principal debt of $100,000 or more or is a lien upon residential real estate containing more than four dwelling units, and is not a lien upon Property which is entirely *homesteaded as agricultural property or residential real estate containing four or fewer dwelling units where at least one of the units is homesteaded.* This Security Instrument may only be enforced against the non-homestead portion of the assigned Property.

**13. DEFAULT.** Mortgagor will be in default if any of the following occur:

**A. Payments.** Mortgagor fails or Guarantor fails to make a payment in full when due.

**B. Insolvency or Bankruptcy.** Any legal entity obligated on the Secured Debts makes an assignment for the benefit of creditors or become insolvent, either because its liabilities exceed its assets or it is unable to pay its debts as they become due; or it petitions for protection under federal, state or local bankruptcy, insolvency or debtor relief laws, or is the subject of a petition or action under such laws and fails to have the petition or action dismissed within a reasonable period of time not to exceed 60 days.

**C. Death or Incompetency.** Mortgagor dies or is declared legally incompetent.

**D. Failure to Perform.** Mortgagor fails to perform any condition or to keep any promise or covenant of this Security Instrument.

**E. Other Documents.** A default occurs under the terms of any other transaction document.

**F. Other Agreements.** Mortgagor is in default on any other debt or agreement Mortgagor has with Lender.

**G. Misrepresentation.** Mortgagor makes any verbal or written statement or provides any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** Mortgagor fails to satisfy or appeal any judgment against Mortgagor.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** Mortgagor changes Mortgagor's name or assumes an additional name without notifying Lender before making such a change.

**K. Property Transfer.** Mortgagor transfers all or a substantial part of Mortgagor's money or property. This condition of default, as it relates to the transfer of the Property, is subject to the restrictions contained in the DUE ON SALE section.

**L. Property Value.** The value of the Property declines or is impaired.

**M. Erosion.** Any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained by federal law.

**N. Insecurity.** Lender reasonably believes that Lender is insecure.

**14. REMEDIES.** Lender may use any and all remedies Lender has under state or federal law or in any instrument evidencing or pertaining to the Secured Debts, including, without limitation, the power to sell the Property. Any amounts advanced on Mortgagor's behalf will be immediately due and may be added to the balance owing under the Secured Debts. Lender may make a claim for any and all insurance benefits or refunds that may be available on Mortgagor's default.

Subject to any right to cure, required time schedules or any other notice rights Mortgagor may have under federal and state law, Lender may make all or any part of the amount owing by the terms of the Secured Debts immediately due and foreclose this Security Instrument in a manner provided by law upon the occurrence of a default or anytime thereafter.

Upon default, Lender will have the right, without declaring the whole indebtedness due and payable, to foreclose against all or any part of the Property. This lien will continue as a lien on any part of the Property not sold on foreclosure. If there is a default, Lender may, in addition to any other permitted remedy, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash and convey all right, title and interest of Mortgagor at such time and place as Lender designates. If Lender invokes the power of sale, Lender will give notice of the sale including the time, terms and place of sale and a description of the property to be sold as required by the applicable law in effect at the time of the proposed sale.

EXHIBIT G

Lender will apply the proceeds of the sale in the following order:  (a) to all expenses of exercising the sale, including but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.  Lender or its designee may purchase the Property. If the Property is sold pursuant to this section, Mortgagor, or any person holding possession of the Property through Mortgagor, will immediately surrender possession of the Property to the purchaser at the sale.  If possession is not surrendered, Mortgagor or such person will be a tenant holding over and may be dispossessed in accordance with applicable law.

Upon any sale of the Property, Lender will make and deliver a special or limited warranty deed that conveys the property sold to the purchaser or purchasers.  Under this special or limited warranty deed, Lender will covenant that Lender has not caused or allowed a lien or an encumbrance to burden the Property and that Lender will specially warrant and defend the Property's title of the purchaser or purchasers at the sale against all lawful claims and demand of all persons claiming by, through or under Lender.  The recitals in any deed of conveyance will be prima facie evidence of the facts set forth therein.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth.  The acceptance by Lender of any sum in payment or partial payment on the Secured Debts after the balance is due or is accelerated or after foreclosure proceedings are filed will not constitute a waiver of Lender's right to require full and complete cure of any existing default.  By not exercising any remedy, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

**15. COLLECTION EXPENSES AND ATTORNEYS' FEES.**  On or after Default, to the extent permitted by law, Mortgagor agrees to pay all expenses of collection, enforcement or protection of Lender's rights and remedies under this Security Instrument.  Mortgagor agrees to pay expenses for Lender to inspect and preserve the Property and for any recordation costs of releasing the Property from this Security Instrument.  Expenses include, but are not limited to, attorneys' fees, court costs and other legal expenses.  These expenses are due and payable immediately.  If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of the Secured Debts.  To the extent permitted by the United States Bankruptcy Code, Mortgagor agrees to pay the reasonable attorneys' fees Lender incurs to collect the Secured Debts as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**16. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.**  As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substance," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

Mortgagor represents, warrants and agrees that:

**A.** Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.

**B.** Except as previously disclosed and acknowledged in writing to Lender, Mortgagor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.

**C.** Mortgagor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor will take all necessary remedial action in accordance with Environmental Law.

**D.** Except as previously disclosed and acknowledged in writing to Lender, Mortgagor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Mortgagor or any tenant of any Environmental Law.  Mortgagor will immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.

**E.** Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are and will remain in full compliance with any applicable Environmental Law.

**F.** Except as previously disclosed and acknowledged in writing to Lender, there are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.

**G.** Mortgagor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.

**H.** Mortgagor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Mortgagor and any tenant are in compliance with applicable Environmental Law.



**I.** Upon Lender's request and at any time, Mortgagor agrees, at Mortgagor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval.

**J.** Lender has the right, but not the obligation, to perform any of Mortgagor's obligations under this section at Mortgagor's expense.

**K.** As a consequence of any breach of any representation, warranty or promise made in this section, (1) Mortgagor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Security Instrument and in return Mortgagor will provide Lender with collateral of at least equal value to the Property secured by this Security Instrument without prejudice to any of Lender's rights under this Security Instrument.

**L.** Notwithstanding any of the language contained in this Security Instrument to the contrary, the terms of this section will survive any foreclosure or satisfaction of this Security Instrument regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

**17. CONDEMNATION.** Mortgagor will give Lender prompt notice of any pending or threatened action by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds will be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**18. INSURANCE.** Mortgagor agrees to keep the Property insured against the risks reasonably associated with the Property. Mortgagor will maintain this insurance in the amounts Lender requires. This insurance will last until the Property is released from this Security Instrument. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debts. Mortgagor may choose the insurance company, subject to Lender's approval, which will not be unreasonably withheld.

All insurance policies and renewals will include a standard "mortgage clause" and, where applicable, "loss payee clause." If required by Lender, Mortgagor agrees to maintain comprehensive general liability insurance and rental loss or business interruption insurance in amounts and under policies acceptable to Lender. The comprehensive general liability insurance must name Lender as an additional insured. The rental loss or business interruption insurance must be in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing.)

Mortgagor will give Lender and the insurance company immediate notice of any loss. All insurance proceeds will be applied to restoration or repair of the Property or to the Secured Debts, at Lender's option. If Lender acquires the Property in damaged condition, Mortgagor's rights to any insurance policies and proceeds will pass to Lender to the extent of the Secured Debts.

Mortgagor will immediately notify Lender of cancellation or termination of insurance. If Mortgagor fails to keep the Property insured Lender may obtain insurance to protect Lender's interest in the Property. This insurance may include coverages not originally required of Mortgagor, may be written by a company other than one Mortgagor would choose, and may be written at a higher rate than Mortgagor could obtain if Mortgagor purchased the insurance.

**19. ESCROW FOR TAXES AND INSURANCE.** Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

**20. CO-SIGNERS.** If Mortgagor signs this Security Instrument but does not sign the Secured Debts, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debts and Mortgagor does not agree to be personally liable on the Secured Debts. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws.

**21. WAIVERS.** Except to the extent prohibited by law, Mortgagor waives all homestead exemption rights relating to the Property.

**22. APPLICABLE LAW.** This Security Instrument is governed by the laws of Minnesota, except to the extent otherwise required by the laws of the jurisdiction where the Property is located, and the United States of America.

**23. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** Each Mortgagor's obligations under this Security Instrument are independent of the obligations of any other Mortgagor. Lender may sue each Mortgagor individually or together with any other Mortgagor. Lender may release any part of the Property and Mortgagor will still be obligated under this Security Instrument for the remaining Property. The duties and benefits of this Security Instrument will bind and benefit the successors and assigns of Lender and Mortgagor.

**24. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Security Instrument may not be amended or modified by oral agreement. No amendment or modification of this Security Instrument is effective unless made in writing and executed by Mortgagor and Lender. This Security Instrument is the complete and final expression of the agreement. If any provision of this Security Instrument is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

EXHIBIT G

**25. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Security Instrument.

**26. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one party will be deemed to be notice to all parties. Mortgagor will inform Lender in writing of any change in Mortgagor's name, address or other application information. Mortgagor will provide Lender any financial statements or information Lender requests. All financial statements and information Mortgagor gives Lender will be correct and complete. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and to confirm Lender's lien status on any Property. Time is of the essence.

**SIGNATURES.** By signing, Mortgagor agrees to the terms and covenants contained in this Security Instrument. Mortgagor also acknowledges receipt of a copy of this Security Instrument.

**MORTGAGOR:**

_(signature)_
Brandon Buehring
Individually

**ACKNOWLEDGMENT.**
**(Individual)**

_____State_____ OF _Minnesota_ , _County_ OF _Minnesota_ ss.
This instrument was acknowledged before me this _14_ day of _November_ , _2003_
by Brandon Buehring , an unmarried individual.
          My commission expires:

_(signature)_
(Notary Public)

PATRICK A. THIRY
Notary Public
Minnesota
My Commission Expires January 31, 2005

This instrument was drafted by City Title, Inc., 600 Hillside Ave, Pine City, Minnesota 55063

OFFICE OF COUNTY RECORDER
Chisago County, Minnesota

I hereby certify that this document was filed in this office
on   4/16/2010   at   11:35:46 AM     and was duly
recorded as document number A-520799
LEE OLSON-County Recorder, by____Deputy.
                                                      P
Well Certificate: ___ Received   ___ Not Required

Fees:
    REC'G COMPLIANCE FUND            $11.00
    STATE GENERAL FUND                10.50
    TECHNOLOGY FUND                   10.00
    GENERAL ABSTRACT                  14.50
                            Total  $46.00

Recording Requested By/Return To:
Stearns Bank N.A
**Attn: Julie Forrest**
600 Hillside Ave SW
Pine City, MN 55063

Prepared By: Julie Forrest
Stearns Bank, N. A.
600 Hillside Ave SW
Pine City, MN 55063

NOTE# 3231

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of Mortgage (herein "Assignor") whose address is 1601 Bryan Street, Dallas, Texas 75201,  does hereby grant, sell, assign, transfer and convey effective as of June 26, 2009,  unto Stearns Bank, N.A. its successors and assigns  (herein "Assignee"), whose address is 4191 2nd Street South, St. Cloud, MN  56301, a certain Mortgage dated  November 12, 2003 made and executed by, Brandon Buehring, a single person in favor of Horizon Bank, Pine City, Minnesota , such Mortgage having been given to secure payment of **$35,000.00** (Original Principal Amount), which Mortgage is of record in **Instrument No.A-418549**  of the Official Records of Chisago County, State of Minnesota, together with the note(s) and obligations therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under Mortgage

TO HAVE AND TO HOLD the same unto Assignee, its successors and assigns, forever, subject only to the Terms and conditions of the above-described Mortgage.

THIS ASSIGNMENT IS MADE WITHOUT RECOURSE, REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, WRITTEN OR ORAL, BY THE FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR HORIZON BANK,. THE LOAN SECURED BY THE MORTGAGE, AS ASSIGNED AND MODIFIED, IS CONVEYED "AS IS" AND "WITH ALL FAULTS," WITHOUT ANY REPRESENTATION OR WARRANTY WHATSOEVER, INCLUDING AS TO COLLECTIBILITY, ENFORCEABILITY, VALUE OF COLLATERAL, ABILITY OF ANY OBLIGOR TO REPAY, CONDITION, FITNESS FOR ANY PARTICULAR PURPOSE MERCHANTABILITY OR ANY OTHER WARRANTY, EXPRESS OR IMPLIED, BY ANY PERSON, INCLUDING THE FDIC OR ITS OFFICERS, EMPLOYEES, AGENTS OR CONTRACTORS.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment Mortgage on April 13, 2010.

ASSIGNOR:
FEDERAL DEPOSIT INSURANCE CORPORATION AS
RECEIVER FOR HORIZON BANK, PINE CITY, MINNESOTA

By: _____

Name: Nancy H. Kubasek
Its:    Attorney-In-Fact

**ACKNOWLEDGMENT**

State of __MN__
County of __Stearns__

The foregoing instrument was acknowledged before me this __April 13, 2010__ by __Nancy Kubasek__ the Attorney-in-Fact for FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR HORIZON BANK, PINE CITY, MINNESOTA.

(SEAL)

JENNIFER MARIE ZIERDEN
Notary Public-Minnesota
My Commission Expires Jan 31, 2014

NOTARY PUBLIC

My Commission Expires: __1/31/14__

A-520799

Received from/return to:
STEARNS BANK
600 HILLSIDE AVE SW
PO BOX 49
PINE CITY, MN 55063- 0049

EXHIBIT G

**Office of County Recorder**                                    Fee :
**Chisago County, Minnesota**                                   Pages: :
Certified, filed and/or Recorded on: November 20, 2019 9:33
**Janet R. Converse, County Recorder**                          **Doc**
Well Certificate [ ] Received                                   **A6245**

Received from:   UNITY BANK
Returned To:     UNITY BANK
                 PO BOX 604
                 1180 W 4TH ST
                 RUSH CITY, MN 56069- 0000

*Reserved for Recording Information*

**Recording Prepared By:**          **Return To:**
Stearns Bank N.A.
4191 2nd Street South                                         (NOTE# ████ 3231)
St. Cloud, MN  56301                **UNITY BANK**
                                    **1180 WEST 4TH STREET**
                                    **PO BOX 604**
                                    **RUSH CITY, MN 55069**

### ASSIGNMENT OF MORTGAGE

For Value Received, **Stearns Bank National Association**, ("Assignor") whose address is 4191 2nd Street South, St. Cloud, MN 56301, does hereby grant, sell, assign, transfer and convey and set over, unto **Unity Bank**, (herein "Assignee"),  whose address is 1180 W 4th Street, Rush City, MN 55069, all of its right, title and interest in to that certain **Mortgage** dated November 12, 2003 executed by Brandon Buehring as Mortgagor and Horizon Bank, f/k/a Pine City State Bank, as Lender and recorded with the Office of the County Recorder of Chisago County on November 20, 2003 as Document Number A-418549 and assigned to the Assignor in that certain **Assignment of Mortgage** dated June 26, 2009 and recorded with the Office of the County Recorder of Chisago County on April 16, 2010 as Document Number A-520799 ("Mortgage"), and which Mortgage encumbers the property more particularly described therein, together with any and all amendments, modifications, renewals and extensions, and together with all indebtedness currently due and to become due under the terms of any promissory note, evidence of indebtedness and claims secured thereby upon the following described piece or parcel of land, situate and being in said County and State, to wit:

*See Exhibit A for Property Description*

In addition to the instrument described above, Stearns Bank National Association hereby assigns all of its right, title and interest in and to any and all notes, evidences of indebtedness, collateral, liens, security interests (real, personal and mixed property), loan documents and any other instrument that Stearns Bank National Association has an interest in with respect to the Mortgage and loan described above, together with all rights to payments and proceeds therefrom. Assignor directs all future payments under the mortgage and note, be made to Assignee.

**EXHIBIT G**

EXCEPT AS OTHERWISE AGREED TO IN THE ASSIGNMENT AGREEMENT EXECUTED ON OCTOBER 30, 2019 BETWEEN ASSIGNOR AND ASSIGNEE, THIS ASSIGNMENT IS MADE WITHOUT RECOURSE, REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, WRITTEN OR ORAL, BY STEARNS BANK NATIONAL ASSOCIATION. THE LOAN SECURED BY THE MORTGAGE, AS ASSIGNED AND MODIFIED IS CONVEYED "AS IS" AND "WITH ALL FAULTS" WITHOUT ANY REPRESENTATION OR WARRANTY WHATSOEVER, INCLUDING AS TO COLLECTIBILITY, ENFORCEABILITY, VALUE OF COLLATERAL, ABILITY OF ANY OBLIGOR TO REPAY, CONDITION, FITNESS FOR ANY PARTICULAR PURPOSE MERCHANTABILITY OR ANY OTHER WARRANTY, EXPRESS OR IMPLIED, BY ANY PERSON, INCLUDING THE FDIC OR ITS OFFICERS, EMPLOYEES, AGENTS OR CONTRACTORS.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on October 31, 2019.

**STEARNS BANK NATIONAL ASSOCIATION**
**a national banking association**

Witness

By: _____

Name: Steve Domine

Its: Senior Vice President

Witness

STATE OF MINNESOTA    )
                      ) ss
COUNTY OF STEARNS     )

The foregoing instrument was acknowledgement before me this 6th day of October 2019, by Steve Domine the Senior VP of Stearns Bank National Association, a national banking association on behalf of the Bank.

[Notary Stamp]

Notary Public
My Commission Expires: 1-31-24

DAWN M. BROUILLET
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2024

Page **2** of 3

EXHIBIT G

## EXHIBIT A

THE SOUTHEAST QUARTER OF THE SOUTHEAST QUARTER (SE 1/4 OF SE 1/4) OF SECTION TWELVE (12), TOWNSHIP THIRTY-SEVEN (37), RANGE TWENTY-TWO (22),
AND
THE EAST HALF OF NORTHEAST QUARTER (E 1/2 OF NE 1/4) OF SECTION THIRTEEN (13), TOWNSHIP THIRTY-SEVEN (37), RANGE TWENTY-TWO (22).

The Real Property or its address is commonly known as  51765 ELMCREST AVENUE, RUSH CITY, MN  55069.  The Real Property tax identification number is 06.00260.00 AND 06.00261.00.

EXHIBIT G

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| 4321 | Brandon Buehring | | 07/18/05 | PAT |
| NOTE AMOUNT | INDEX (w/Margin) | RATE | MATURITY DATE | LOAN PURPOSE |
| $210,000.00 | Not Applicable | 7.25% | 07/30/08 | Agricultural |
| | | Creditor Use Only | | |

## PROMISSORY NOTE
(Agricultural - Draw   Fixed Rate)

**DATE AND PARTIES.** The date of this Promissory Note (Note) is July 18, 2005.  The parties and their addresses are:

LENDER:
PINE CITY STATE BANK
P.O. BOX 49
600 HILLSIDE AVENUE
PINE CITY, Minnesota 65063-0049
Telephone: (320) 629-6713

BORROWER:
BRANDON BUEHRING
51100 Driftwood Ave.
Rush City, Minnesota 55069

**1. DEFINITIONS.**  As used in this Note, the terms have the following meanings:

A. Pronouns.  The pronouns "I," "me," and "my" refer to each Borrower signing this Note, individually and together.  "You" and "Your" refer to the Lender.

B. Note.  Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.

C. Loan.  Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note.

D. Loan Documents.  Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

E. Property.  Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

F. Percent.  Rates and rate change limitations are expressed as annualized percentages.

**2. REFINANCING.**  This Note will pay off the following described note(s):

| Note Date | Note Number | Note Amount |
|---|---|---|
| April 23, 2004 | 3518 | $4,500.00 |
| November 12, 2003 | 3231 | $35,000.00 |
| May 6, 2003 | 2912 | $60,000.00 |

The remaining balance of all notes listed in the table above is $111,792.99.

**3. PROMISE TO PAY.**  For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, amounts advanced from time to time under the terms of this Note up to the maximum total principal balance of $210,000.00 (Principal), plus interest from the date of disbursement on the unpaid outstanding Principal balance until this Note is paid in full and Lender has no further obligations to make advances to you under this Loan.

On July 18, 2005 I will receive an initial advance of $194,876.64.

All advances made will be made subject to all other terms and conditions of this Loan.

**4. INTEREST.**  Interest will accrue on the unpaid Principal balance of this Note at the rate of 7.25 percent (Interest Rate).

A. Interest After Default.  If you declare a default under the terms of this Loan, including for failure to pay in full at maturity, you may increase the Interest Rate payable on the outstanding Principal balance of this Note.  In such event, interest will accrue on the outstanding Principal balance at the Interest Rate in effect from time to time, plus an additional 5.000 percent, until paid in full.

B. Maximum Interest Amount.  Any amount assessed or collected as interest under the terms of this Note or obligation will be limited to the Maximum Lawful Amount of interest allowed by state or federal law.  Amounts collected in excess of the Maximum Lawful Amount will be applied first to the unpaid Principal balance.  Any remainder will be refunded to me.

C. Statutory Authority.  The amount assessed or collected on this Note is authorized by the Minnesota usury laws under Minn. Stat. § 47.59.

D. Accrual.  During the scheduled term of this Loan interest accrues using an Actual/360 days counting method.

**5. ADDITIONAL CHARGES.**  As additional consideration, I agree to pay, or have paid, these additional fees and charges.

A. Refundable Fees and Charges.  Some or all of the following fees may be refunded if I pay this Note in full before the scheduled maturity date.
Loan Origination.  A(n) Loan Origination fee of $1,050.00 payable from the loan proceeds.

B. Nonrefundable Fees and Charges.  The following fees are earned when collected and will not be refunded if I prepay this Note before the scheduled maturity date.
Record Quit Claim Deed .  A(n) Record Quit Claim Deed  fee of $46.00 payable from the loan proceeds.
Quit Claim Deed Tax.  A(n) Quit Claim Deed Tax fee of $1.65 payable from the loan proceeds.
Final Tract Search .  A(n) Final Tract Search  fee of $75.00 payable from the loan proceeds.
Flood Zone Determination Fee.  A(n) Flood Zone Determination Fee fee of $18.50 payable from the loan proceeds.

©2005 Bankers Systems, Inc., St. Cloud, MN

Initials BB

Case 20-31858   Doc 11   Filed 10/08/20   Entered 10/08/20 16:11:04   Desc Main
Document      Page 81 of 138

Well Certificate. A(n) Well Certificate fee of $30.00 payable from the loan proceeds.
Title Insurance. A(n) Title Insurance fee of $280.00 payable from the loan proceeds.
Title Examination. A(n) Title Examination fee of $175.00 payable from the loan proceeds.
State Tax Stamps - Mortgage. A(n) State Tax Stamps - Mortgage fee of $0.00 payable from the loan proceeds.
State Tax Stamps - Deed. A(n) State Tax Stamps - Deed fee of $330.00 payable from the loan proceeds.
Recording - Releases. A(n) Recording - Releases fee of $46.00 payable from the loan proceeds.
Recording   Mortgage. A(n) Recording - Mortgage fee of $46.00 payable from the loan proceeds.
Recording - Deed. A(n) Recording - Deed fee of $46.00 payable from the loan proceeds.
NAME SEARCH. A(n) NAME SEARCH fee of $10.00 payable from the loan proceeds.
FLOOD ZONE DETERMINATION FEE. A(n) FLOOD ZONE DETERMINATION FEE fee of $6.50 payable from the loan proceeds.
DOCUMENT RECORDING FEE. A(n) DOCUMENT RECORDING FEE fee of $40.00 payable from the loan proceeds.
Document Preparation Fee. A(n) Document Preparation Fee fee of $100.00 payable from the loan proceeds.
Closing - Affects APR. A(n) Closing - Affects APR fee of $300.00 payable from the loan proceeds.

**6. REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Note.

A. Late Charge. If a payment is more than 10 days late, I will be charged 6.000 percent of the Amount of Payment. I will pay this late charge promptly but only once for each late payment. This amount may then increase so as to always be the highest amount allowed by law under Minnesota Statutes § 47.59.

B. Returned Check Charge. I agree to pay a service charge for each returned check, negotiable order of withdrawal, draft or automatic payment request. The amount of the service charge will generally be $10.00.

C. Stop Payment. A(n) Stop Payment equal to $10.00.

**7. GOVERNING AGREEMENT.** This Note is further governed by the Commercial Loan Agreement executed between you and me as a part of this Loan, as modified, amended or supplemented. The Commercial Loan Agreement states the terms and conditions of this Note, including the terms and conditions under which the maturity of this Note may be accelerated. When I sign this Note, I represent to you that I have reviewed and am in compliance with the terms contained in the Commercial Loan Agreement.

**8. PURCHASE MONEY LOAN.** You may include the name of the seller on the check or draft for this Note.

**9. PAYMENT.** I agree to pay this Note on demand, but if no demand is made, I agree to pay as follows: This Note is amortized over 300 payments with a balloon in 36 months. I will make 35 payments of $1,536.02 beginning on August 30, 2005 and on the 30th day of each month thereafter. An initial advance of $194,876.64 will be made on July 18, 2005. An additional $15,123.36 will be available for future advances. A single "balloon payment" of the entire unpaid balance of Principal and Interest will be due on July 30, 2008.

Payments will be rounded up to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will instead, be made on the last day of such month.

Each payment I make on this Note will be applied first to any charges that I owe other than principal and interest then to interest that is due, and finally to principal that is due. If you and I agree to a different application of payments, we will describe our agreement on this Note. The actual amount of my final payment will depend on my payment record.

**10. PREPAYMENT.** I may prepay this Loan in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**11. LOAN PURPOSE.** The purpose of this Loan is to payoff contract for deed, refinance existing debt and dairy expansion .

**12. SECURITY.** This Loan is secured by separate security instruments prepared together with this Note as follows:

| Document Name | Parties to Document |
|---|---|
| Mortgage - 51765 Elmcrest Ave. | Brandon Buehring |

**13. DUE ON SALE OR ENCUMBRANCE.** You may, at your option, declare the entire balance of this Note to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

**14. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

A. Additional Waivers By Borrower. In addition, I, and any party to this Note and Loan, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Note.

(1) You may renew or extend payments on this Note, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property securing this Note.

(4) You, or any institution participating in this Note, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.

B. No Waiver By Lender. Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Note, or any other Loan Document, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**15. COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**16. APPLICABLE LAW.** This Note is governed by the laws of Minnesota, the United States of America and to the extent required, by the laws of the jurisdiction where the Property is located.

**17. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any

Brandon Buehring
Minnesota Promissory Note
MN/4Xjbhfwy0083850000482301407 1805N
©1996 Bankers Systems, Inc., St. Cloud, MN                    Initials
Page 2

number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. This Note shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**18. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is affective unless made in writing and executed by you and me. This Note and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Note is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**19. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

**20. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**21. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably request. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**22. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**23. SIGNATURES.** By signing, I agree to the terms contained in this Note. I also acknowledge receipt of a copy of this Note.

**BORROWER:**

Brandon Buehting
Individually

Brandon Buehting
Minnesota Promissory Note
MN/4Xjachiry008365000048230140718 05N

©1996 Bankers Systems, Inc., St. Cloud, MN  Expert

Initials ____
Page 3

EXHIBIT H

*Reserved for Recording Information*

## ALLONGE TO PROMISSORY NOTE

Allonge to Promissory Note dated July 18, 2005 in the original principal amount of $210,000.00 executed by Brandon Buehring as Borrower together with any subsequent renewals, modifications, and/or extensions thereof, and payable to Horizon Bank, f/k/a/ Pine City State Bank and assigned to Stearns Bank National Association in that certain assignment and bill of sale dated April 13, 2010.

Pay to the order of Unity Bank, pursuant to the terms and conditions of the Assignment of Mortgage dated October 31, 2019 together with any modifications and/or extensions thereof. Except as expressly provided in the Assignment Agreement dated October 30, 2019, this Allonge is made without recourse and without representation or warranty, express, implied, or by operation of law, or of any kind and nature whatsoever.

STEARNS BANK NATIONAL ASSOCIATION
a national banking association

Dated: October 31, 2019

By: _____

Name: _Steve Domine_____

Its: _Senior Vice President_____

STATE OF MINNESOTA    )
                      ) ss
COUNTY OF STEARNS     )

The foregoing instrument was acknowledgement before me this 6th day of October 2019, by _Steve Domine_____ the _Senior Vice President_ of Stearns Bank National Association, a national banking association on behalf of the Bank.

[Notary Stamp]

_____
Notary Public
My Commission Expires: _1-31-24_

DAWN M. BROUILLET
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2024

EXHIBIT H

4321

OFFICE OF COUNTY RECORDER
Chisago County, Minnesota

I hereby certify that this document was filed in this office
on   7/20/2005   at   2:05:00 PM       and was duly
recorded as document number A-452996

SHARON LUNDEEN - County Recorder, by _____ Depu
p
Well Certificate: ___ Received ___ Not Required

Fees:
REC'G COMPLIANCE FUND            $11.00
STATE GENERAL FUND                  10.50
TECHNOLOGY FUND                       10.00
GENERAL ABSTRACT                       14.50
                              Total   $46.00

# MORTGAGE
(With Future Advance Clause)

**DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is July 18, 2005. The parties and their addresses are:

**MORTGAGOR:**
**BRANDON BUEHRING**
An unmarried individual
51100 Driftwood Ave.
Rush City, Minnesota 55069

Received from/return to:
CITY TITLE, INC
600 HILLSIDE AVE
PINE CITY, MN 55063- 2048

**LENDER:**
**PINE CITY STATE BANK**
Organized and existing under the laws of Minnesota
P.O. BOX 49
600 HILLSIDE AVENUE
PINE CITY, Minnesota  55063-0049
TIN: 410350530

**1. CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debts and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, conveys, sells, mortgages and warrants to Lender, with the power of sale, the following described property:

The Southeast Quarter of the Southeast Quarter (SE 1/4 of SE 1/4) of Section Twelve (12), Township Thirty-seven (37), Range Twenty-two (22).
AND
The East Half of Northeast Quarter (E1/2 of NE 1/4) of Section Thirteen (13), Township Thirty-seven (37), Range Twenty-two (22).

The property is located in Chisago County at 51765 Elmcrest Ave., Rush City, Minnesota 55069.

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, crops, timber, all diversion payments or third party payments made to crop producers and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described (all referred to as Property). This Security Instrument will remain in effect until the Secured Debts and all underlying agreements have been terminated in writing by Lender.

**2. MAXIMUM OBLIGATION LIMIT.** Notwithstanding anything to the contrary herein, enforcement of this Security Instrument is limited to a predetermined debt amount of $210,000.00 under chapter 287 of Minnesota Statutes. This limitation does not include interest and any other amount advanced by Lender in protection of the Property or this Security Instrument, including but not limited to taxes, assessments, charges, claims, fines, impositions, insurance premiums, amounts due under prior or superior mortgages and other prior or superior liens, encumbrances and interests, legal expenses and attorneys' fees.

**3. SECURED DEBTS.** The term "Secured Debts" includes and this Security Instrument will secure each of the following:

**A. Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note or other agreement, No. ▮4321, dated July 18, 2005, from Mortgagor to Lender, with an initial advance amount of $194,876.64, a loan amount of $210,000.00 and maturing on July 30, 2008. One or more of the debts secured by this Security Instrument contains a future advance provision.

**B. All Debts.** All present and future debts from Mortgagor to Lender, even if this Security Instrument is not specifically referenced, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Security Instrument, each agrees that it will secure debts incurred either individually or

with others who may not sign this Security Instrument. Nothing in this Security Instrument constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing. In the event that Lender fails to provide any required notice of the right of rescission, Lender waives any subsequent security interest in the Mortgagor's principal dwelling that is created by this Security Instrument. This Security Instrument will not secure any debt for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. This Security Instrument will not secure any debt for which a security interest is created in "margin stock" and Lender does not obtain a "statement of purpose," as defined and required by federal law governing securities.

**C. Sums Advanced.**  All sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

**4. PAYMENTS.**  Mortgagor agrees that all payments under the Secured Debts will be paid when due and in accordance with the terms of the Secured Debts and this Security Instrument.

**5. WARRANTY OF TITLE.**  Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell, and mortgage, with the power of sale, the Property. Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record.

**6. PRIOR SECURITY INTERESTS.**  With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:

A. To make all payments when due and to perform or comply with all covenants.

B. To promptly deliver to Lender any notices that Mortgagor receives from the holder.

C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

**7. CLAIMS AGAINST TITLE.**  Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

**8. DUE ON SALE OR ENCUMBRANCE.**  Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

**9. WARRANTIES AND REPRESENTATIONS.**  Mortgagor has the right and authority to enter into this Security Instrument. The execution and delivery of this Security Instrument will not violate any agreement governing Mortgagor or to which Mortgagor is a party.

**10. PROPERTY CONDITION, ALTERATIONS AND INSPECTION.**  Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor will not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor, and of any loss or damage to the Property.

No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Mortgagor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance. Such replacement of personal property will be deemed subject to the security interest created by this Security Instrument. Mortgagor will not partition or subdivide the Property without Lender's prior written consent.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender will give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property will be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

**11. AUTHORITY TO PERFORM.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor will not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

**12. ASSIGNMENT OF LEASES AND RENTS.**  Mortgagor assigns, grants, bargains, conveys, mortgages and warrants to Lender as additional security all the right, title and interest in the following (Property).

A. Existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the non-homestead portion of the Property, including but not limited to any extensions, renewals, modifications or replacements (Leases).

**B.** Rents, issues and profits, including but not limited to security deposits, minimum rents, percentage rents, additional rents, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims which Mortgagor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property (Rents).

In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement. Mortgagor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies.  The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed.  Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default. Mortgagor will not collect in advance any Rents due in future lease periods, unless Mortgagor first obtains Lender's written consent.  Upon default, Mortgagor will receive any Rents in trust for Lender and Mortgagor will not commingle the Rents with any other funds.  When Lender so directs, Mortgagor will endorse and deliver any payments of Rents from the Property to Lender.  Amounts collected will be applied first as set forth at Minn. Stat. Ann. § 576.01, Subdivision 2, and then at Lender's discretion to the Secured Debts, the costs of managing, protecting and preserving the Property, and other necessary expenses. Mortgagor agrees that this Security Instrument is immediately effective between Mortgagor and Lender and effective as to third parties on the recording of this Assignment.  As long as this Assignment is in effect, Mortgagor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants.  Mortgagor, at its sole cost and expense, will keep, observe and perform, and require all other parties to the Leases to comply with the Leases and any applicable law.  If Mortgagor or any party to the Lease defaults or fails to observe any applicable law, Mortgagor will promptly notify Lender.  If Mortgagor neglects or refuses to enforce compliance with the terms of the Leases, then Lender may, at Lender's option, enforce compliance.  Mortgagor will not sublet, modify, extend, cancel, or otherwise alter the Leases, or accept the surrender of the Property covered by the Leases (unless the Leases so require) without Lender's consent.  Mortgagor will not assign, compromise, subordinate or encumber the Leases and Rents without Lender's prior written consent.  Lender does not assume or become liable for the Property's maintenance, depreciation, or other losses or damages when Lender acts to manage, protect or preserve the Property, except for losses and damages due to Lender's gross negligence or intentional torts.  Otherwise, Mortgagor will indemnify Lender and hold Lender harmless for all liability, loss or damage that Lender may incur when Lender opts to exercise any of its remedies against any party obligated under the Leases.  This Security Instrument applies when, as additional security for the debt secured by the mortgage, it secures an original principal debt of $100,000 or more or is a lien upon residential real estate containing more than four dwelling units, and is not a lien upon Property which is entirely homesteaded as agricultural property or residential real estate containing four or fewer dwelling units where at least one of the units is homesteaded.  This Security Instrument may only be enforced against the non-homestead portion of the assigned Property.

**13. DEFAULT.**  Mortgagor will be in default if any of the following occur:

**A. Payments.**  Mortgagor fails to make a payment in full when due.

**B. Insolvency or Bankruptcy.**  The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against Mortgagor, Borrower, or any co-signer, endorser, surety or guarantor of this Security Instrument or any other obligations Borrower has with Lender.

**C. Death or Incompetency.**  Mortgagor dies or is declared legally incompetent.

**D. Failure to Perform.**  Mortgagor fails to perform any condition or to keep any promise or covenant of this Security Instrument.

**E. Other Documents.**  A default occurs under the terms of any other document relating to the Secured Debts.

**F. Other Agreements.**  Mortgagor is in default on any other debt or agreement Mortgagor has with Lender.

**G. Misrepresentation.**  Mortgagor makes any verbal or written statement or provides any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.**  Mortgagor fails to satisfy or appeal any judgment against Mortgagor.

**I. Forfeiture.**  The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.**  Mortgagor changes Mortgagor's name or assumes an additional name without notifying Lender before making such a change.

**K. Property Transfer.**  Mortgagor transfers all or a substantial part of Mortgagor's money or property.  This condition of default, as it relates to the transfer of the Property, is subject to the restrictions contained in the DUE ON SALE section.

**L. Property Value.**  Lender determines in good faith that the value of the Property has declined or is impaired.

**M. Erosion.**  Any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce or make possible the production of an agricultural commodity, as further explained by federal law.

**N. Insecurity.**  Lender determines in good faith that a material adverse change has occurred in Mortgagor's financial condition from the conditions set forth in Mortgagor's most recent financial statement before the date of this Security Instrument or that the prospect for payment or performance of the Secured Debts is impaired for any reason.

Brandon Buehring
Minnesota Mortgage
MN/4Xjethry008365000004823014071805Y                    ©1996 Bankers Systems, Inc., St. Cloud, MN  Express

Initials _BB_ 
Page 3

EXHIBIT I

**14. REMEDIES.** On or after default, Lender may use any and all remedies Lender has under state or federal law or in any document relating to the Secured Debts, including, without limitation, the power to sell the Property. Any amounts advanced on Mortgagor's behalf will be immediately due and may be added to the balance owing under the Secured Debts. Lender may make a claim for any and all insurance benefits or refunds that may be available on Mortgagor's default.

Subject to any right to cure, required time schedules or any other notice rights Mortgagor may have under federal and state law, Lender may make all or any part of the amount owing by the terms of the Secured Debts immediately due and foreclose this Security Instrument in a manner provided by law upon the occurrence of a default or anytime thereafter.

Upon default, Lender will have the right, without declaring the whole indebtedness due and payable, to foreclose against all or any part of the Property. This lien will continue as a lien on any part of the Property not sold on foreclosure. If there is a default, Lender may, in addition to any other permitted remedy, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash and convey all right, title and interest of Mortgagor at such time and place as Lender designates. If Lender invokes the power of sale, Lender will give notice of the sale including the time, terms and place of sale and a description of the property to be sold as required by the applicable law in effect at the time of the proposed sale.

Lender will apply the proceeds of the sale in the following order: (a) to all expenses of exercising the sale, including but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. Lender or its designee may purchase the Property. If the Property is sold pursuant to this section, Mortgagor, or any person holding possession of the Property through Mortgagor, will immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Mortgagor or such person will be a tenant holding over and may be dispossessed in accordance with applicable law.

Upon any sale of the Property, Lender will make and deliver a special or limited warranty deed that conveys the property sold to the purchaser or purchasers. Under this special or limited warranty deed, Lender will covenant that Lender has not caused or allowed a lien or an encumbrance to burden the Property and that Lender will specially warrant and defend the Property's title of the purchaser or purchasers at the sale against all lawful claims and demand of all persons claiming by, through or under Lender. The recitals in any deed of conveyance will be prima facie evidence of the facts set forth therein.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debts after the balance is due or is accelerated or after foreclosure proceedings are filed will not constitute a waiver of Lender's right to require full and complete cure of any existing default. By not exercising any remedy, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

**15. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, Mortgagor agrees to pay all expenses of collection, enforcement or protection of Lender's rights and remedies under this Security Instrument or any other document relating to the Secured Debts. Mortgagor agrees to pay expenses for Lender to inspect and preserve the Property and for any recordation costs of releasing the Property from this Security Instrument. Expenses include, but are not limited to, attorneys' fees, court costs and other legal expenses. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of the Secured Debts. In addition, to the extent permitted by the United States Bankruptcy Code, Mortgagor agrees to pay the reasonable attorneys' fees incurred by Lender to protect Lender's rights and interests in connection with any bankruptcy proceedings initiated by or against Mortgagor.

**16. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substance," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

Mortgagor represents, warrants and agrees that:

**A.** Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.

**B.** Except as previously disclosed and acknowledged in writing to Lender, Mortgagor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.

**C.** Mortgagor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor will take all necessary remedial action in accordance with Environmental Law.

**D.** Except as previously disclosed and acknowledged in writing to Lender, Mortgagor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Mortgagor or any tenant of any Environmental Law. Mortgagor will immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any such pending or threatened investigation, claim, or proceeding.

In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.

E. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are and will remain in full compliance with any applicable Environmental Law.

F. Except as previously disclosed and acknowledged in writing to Lender, there are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.

G. Mortgagor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.

H. Mortgagor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Mortgagor and any tenant are in compliance with applicable Environmental Law.

I. Upon Lender's request and at any time, Mortgagor agrees, at Mortgagor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval.

J. Lender has the right, but not the obligation, to perform any of Mortgagor's obligations under this section at Mortgagor's expense.

K. As a consequence of any breach of any representation, warranty or promise made in this section, (1) Mortgagor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Security Instrument and in return Mortgagor will provide Lender with collateral of at least equal value to the Property without prejudice to any of Lender's rights under this Security Instrument.

L. Notwithstanding any of the language contained in this Security Instrument to the contrary, the terms of this section will survive any foreclosure or satisfaction of this Security Instrument regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

**17. CONDEMNATION.** Mortgagor will give Lender prompt notice of any pending or threatened action by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds will be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**18. INSURANCE.** Mortgagor agrees to keep the Property insured against the risks reasonably associated with the Property. Mortgagor will maintain this insurance in the amounts Lender requires. This insurance will last until the Property is released from this Security Instrument. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debts. Mortgagor may choose the insurance company, subject to Lender's approval, which will not be unreasonably withheld.

All insurance policies and renewals will include a standard "mortgage clause" and, where applicable, "loss payee clause." If required by Lender, Mortgagor agrees to maintain comprehensive general liability insurance and rental loss or business interruption insurance in amounts and under policies acceptable to Lender. The comprehensive general liability insurance must name Lender as an additional insured. The rental loss or business interruption insurance must be in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing).

Mortgagor will give Lender and the insurance company immediate notice of any loss. All insurance proceeds will be applied to restoration or repair of the Property or to the Secured Debts, at Lender's option. If Lender acquires the Property in damaged condition, Mortgagor's rights to any insurance policies and proceeds will pass to Lender to the extent of the Secured Debts.

Mortgagor will immediately notify Lender of cancellation or termination of insurance. If Mortgagor fails to keep the Property insured, Lender may obtain insurance to protect Lender's interest in the Property and Mortgagor will pay for the insurance on Lender's demand. Lender may demand that Mortgagor pay for the insurance all at once, or Lender may add the insurance premiums to the balance of the Secured Debts and charge interest on it at the rate that applies to the Secured Debts. This insurance may include coverages not originally required of Mortgagor, may be written by a company other than one Mortgagor would choose, and may be written at a higher rate than Mortgagor could obtain if Mortgagor purchased the insurance. Mortgagor acknowledges and agrees that Lender or one of Lender's affiliates may receive commissions on the purchase of this insurance.

**19. ESCROW FOR TAXES AND INSURANCE.** Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

**20. CO-SIGNERS.** If Mortgagor signs this Security Instrument but is not otherwise obligated to pay the Secured Debts, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debts and Mortgagor does not agree by signing this Security Instrument to be personally liable on the Secured Debts. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any

EXHIBIT_1

party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws.

**21. WAIVERS.** Except to the extent prohibited by law, Mortgagor waives all homestead exemption rights relating to the Property.

**22. APPLICABLE LAW.** This Security Instrument is governed by the laws of Minnesota, except to the extent otherwise required by the laws of the jurisdiction where the Property is located, and the United States of America.

**23. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** Each Mortgagor's obligations under this Security Instrument are independent of the obligations of any other Mortgagor. Lender may sue each Mortgagor individually or together with any other Mortgagor. Lender may release any part of the Property and Mortgagor will still be obligated under this Security Instrument for the remaining Property. The duties and benefits of this Security Instrument will bind and benefit the successors and assigns of Lender and Mortgagor.

**24. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Security Instrument may not be amended or modified by oral agreement. No amendment or modification of this Security Instrument is effective unless made in writing and executed by Mortgagor and Lender. This Security Instrument and any other documents relating to the Secured Debts are the complete and final expression of the agreement. If any provision of this Security Instrument is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**25. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Security Instrument.

**26. NOTICE, FINANCIAL REPORTS, ADDITIONAL DOCUMENTS AND RECORDING TAXES.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Mortgagor will be deemed to be notice to all Mortgagors. Mortgagor will inform Lender in writing of any change in Mortgagor's name, address or other application information. Mortgagor will provide Lender any financial statements or information Lender requests. All financial statements and information Mortgagor gives Lender will be correct and complete. Mortgagor agrees to pay all expenses, charges and taxes in connection with the preparation and recording of this Security Instrument. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and to confirm Lender's lien status on any Property, and Mortgagor agrees to pay all expenses, charges and taxes in connection with the preparation and recording thereof. Time is of the essence.

**SIGNATURES.** By signing, Mortgagor agrees to the terms and covenants contained in this Security Instrument. Mortgagor also acknowledges receipt of a copy of this Security Instrument.

MORTGAGOR:

Brandon Buehring
Individually

ACKNOWLEDGMENT.
(Individual)

State _____ of _____ County OF _____ ss.
This instrument was acknowledged before me this 18 day of July , 2005
by Brandon Buehring , an unmarried individual.
My commission expires:
1/3/07
(Notary Public)

JULIE D. FORREST
Notary Public
Minnesota
My Commission Expires

This instrument was drafted by City Title, Inc., 600 Hillside Avenue SW, Pine City, Minnesota 55063

EXHIBIT I

**Office of County Recorder**            Fee    $

**Chisago County, Minnesota**          Pages:   3

Certified, filed and/or Recorded on: November 20, 2019 9:33 /

**Janet R. Converse, County Recorder**        **Doc** i

Well Certificate [  ] Received              **A6245'**

Received from:     UNITY BANK
Returned To:       UNITY BANK
                   PO BOX 604
                   1180 W 4TH ST
                   RUSH CITY, MN 55069- 0000

*Reserved for Recording Information*

**Recording Prepared By:**
Stearns Bank N.A.
4191 2nd Street South
St. Cloud, MN 56301

**Return To:**

UNITY BANK
1180 WEST 4TH STREET
PO BOX 604
RUSH CITY, MN 55069

**(NOTE# 4321)**

## ASSIGNMENT OF MORTGAGE

For Value Received, **Stearns Bank National Association,** ("Assignor") whose address is 4191 2nd Street South, St. Cloud, MN 56301, does hereby grant, sell, assign, transfer and convey and set over, unto **Unity Bank,** (herein "Assignee"), whose address is 1180 W 4th Street, Rush City, MN 55069, all of its right, title and interest in to that certain **Mortgage** dated July 18, 2005 executed by Brandon Buehring as Mortgagor and Horizon Bank, f/k/a Pine City State Bank as Lender and recorded with the Office of the County Recorder of Chisago County on July 20, 2005 as Document Number A-452996 and assigned to the Assignor in that certain **Assignment of Mortgage** dated June 26, 2009 and recorded with the Office of the County Recorder of Chisago County on April 16, 2010 as Document Number A-520796 ("Mortgage"), and which Mortgage encumbers the property more particularly described therein, together with any and all amendments, modifications, renewals and extensions, and together with all indebtedness currently due and to become due under the terms of any promissory note, evidence of indebtedness and claims secured thereby upon the following described piece or parcel of land, situate and being in said County and State, to wit:

*See Exhibit A for Property Description*

In addition to the instrument described above, Stearns Bank National Association hereby assigns all of its right, title and interest in and to any and all notes, evidences of indebtedness, collateral, liens, security interests (real, personal and mixed property), loan documents and any other instrument that Stearns Bank National Association has an interest in with respect to the Mortgage and loan described above, together with all rights to payments and proceeds therefrom. Assignor directs all future payments under the mortgage and note, be made to Assignee.

EXCEPT AS OTHERWISE AGREED TO IN THE ASSIGNMENT AGREEMENT EXECUTED ON OCTOBER 30, 2019 BETWEEN ASSIGNOR AND ASSIGNEE, THIS ASSIGNMENT IS MADE WITHOUT RECOURSE, REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, WRITTEN OR ORAL, BY STEARNS BANK NATIONAL ASSOCIATION.  THE LOAN SECURED BY THE MORTGAGE, AS ASSIGNED AND MODIFIED IS CONVEYED "AS IS" AND "WITH ALL FAULTS" WITHOUT ANY REPRESENTATION OR WARRANTY WHATSOEVER, INCLUDING AS TO COLLECTIBILITY, ENFORCEABILITY, VALUE OF COLLATERAL, ABILITY OF ANY OBLIGOR TO REPAY, CONDITION, FITNESS FOR ANY PARTICULAR PURPOSE MERCHANTABILITY OR ANY OTHER WARRANTY, EXPRESS OR IMPLIED, BY ANY PERSON, INCLUDING THE FDIC OR ITS OFFICERS, EMPLOYEES, AGENTS OR CONTRACTORS.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on October 31, 2019.

**STEARNS BANK NATIONAL ASSOCIATION**
**a national banking association**

Witness

By: _____

Name: Steve Domine

Witness

Its: Senior Vice President

STATE OF MINNESOTA )
) ss
COUNTY OF STEARNS )

The foregoing instrument was acknowledgement before me this 6th day of October 2019, by Steve Domine the Senior Vice President of Stearns Bank National Association, a national banking association on behalf of the Bank.

[Notary Stamp]

Notary Public
My Commission Expires: 1-31-24

DAWN M. BROUILLET
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2024

## EXHIBIT A

THE SOUTHEAST QUARTER OF THE SOUTHEAST QUARTER (SE 1/4 OF SE 1/4) OF SECTION TWELVE (12), TOWNSHIP THIRTY-SEVEN (37), RANGE TWENTY-TWO (22),
AND
THE EAST HALF OF NORTHEAST QUARTER (E 1/2 OF NE 1/4) OF SECTION THIRTEEN (13), TOWNSHIP THIRTY-SEVEN (37), RANGE TWENTY-TWO (22).

The Real Property or its address is commonly known as  51765 ELMCREST AVENUE, RUSH CITY, MN  55069.  The Real Property tax identification number is 06.00260.00 AND 06.00261.00.

EXHIBIT I

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| ▮3951 | Nickolas  Buehring | | 12/27/04 | PAT |
| NOTE AMOUNT | INDEX (w/Margin) | RATE | MATURITY DATE | LOAN PURPOSE |
| $70,000.00 | Not Applicable | 7.250% | 07/27/05 | Agricultural |
| | | Creditor Use Only | | |

## PROMISSORY NOTE
(Agricultural - Draw - Fixed Rate)

**DATE AND PARTIES.** The date of this Promissory Note (Note) is December 27, 2004. The parties and their addresses are:

LENDER:
PINE CITY STATE BANK
P.O. BOX 49
600 HILLSIDE AVENUE
PINE CITY, Minnesota 55063-0049
Telephone: (320) 629-6713

BORROWER:
NICKOLAS  BUEHRING
51100 Driftwood Ave.
Rush City, Minnesota 55069

DIANE BUEHRING
51100 Driftwood Ave.
Rush City, Minnesota 55069

**1. DEFINITIONS.** As used in this Note, the terms have the following meanings:

**A. Pronouns.** The pronouns "I", "me", and "my" refer to each Borrower signing this Note, individually and together with their heirs, successors and assigns, and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Note. "You" and "Your" refer to the Lender, with its participants or syndicators, successors and assigns, or any person or company that acquires an interest in the Loan.

**B. Note.** Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.

**C. Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note.

**D. Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

**E. Percent.** Rates and rate change limitations are expressed as annualized percentages.

**2. PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, amounts advanced from time to time under the terms of this Note up to the maximum total principal balance of $70,000.00 (Principal), plus interest from the date of disbursement, on the unpaid outstanding Principal balance until this Note matures or this obligation is accelerated.

All advances made will be made subject to all other terms and conditions of this Loan.

**3. INTEREST.** Interest will accrue on the unpaid Principal balance of this Note at the rate of 7.250 percent (Interest Rate).

**A. Interest After Default.** If you declare a default under the terms of this Loan, including for failure to pay in full at maturity, you may increase the Interest Rate payable on the outstanding Principal balance of this Note. In such event, interest will accrue on the outstanding Principal balance at the Interest Rate in effect from time to time, plus an additional 5.000 percent, until paid in full.

**B. Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Note or obligation will be limited to the Maximum Lawful Amount of interest allowed by state or federal law. Amounts collected in excess of the Maximum Lawful Amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

**C. Statutory Authority.** The amount assessed or collected on this Note is authorized by the Minnesota usury laws under Minn. Stat. § 47.59.

**D. Accrual.** During the scheduled term of this Loan interest accrues using an Actual/360 days counting method.

**4. ADDITIONAL CHARGES.** As additional consideration, I agree to pay, or have paid, these additional fees and charges.

**A. Refundable Fees and Charges.** Some or all of the following fees may be refunded if I pay this Note in full before the scheduled maturity date.
Loan Origination. A(n) Loan Origination fee of $700.00 payable from the loan proceeds.

**B. Nonrefundable Fees and Charges.** The following fees are earned when collected and will not be refunded if I prepay this Note before the scheduled maturity date.
Final Tract Search . A(n) Final Tract Search  fee of $75.00 payable from the loan proceeds.
Title Insurance. A(n) Title Insurance fee of $90.00 payable from the loan proceeds.
Title Examination. A(n) Title Examination fee of $175.00 payable from the loan proceeds.
State Tax Stamps - Mortgage. A(n) State Tax Stamps - Mortgage fee of $161.00 payable from the loan proceeds.
Recording - Mortgage. A(n) Recording - Mortgage fee of $19.50 payable from the loan proceeds.
Recording - Deed. A(n) Recording - Deed fee of $19.50 payable from the loan proceeds.
NAME/ASSESSMENT SEARCH. A(n) NAME/ASSESSMENT SEARCH fee of $20.00 payable from the loan proceeds.
Hazard Insurance. A(n) Hazard Insurance fee of $7,296.00 payable from separate funds on or before today's date.
FLOOD ZONE DETERMINATION FEE. A(n) FLOOD ZONE DETERMINATION FEE fee of $6.50 payable from the loan proceeds.
FLOOD ZONE DETERMINATION. A(n) FLOOD ZONE DETERMINATION fee of $18.50 payable from the loan proceeds.
DOCUMENT RECORDING FEE. A(n) DOCUMENT RECORDING FEE fee of $20.00 payable from the loan proceeds.

**EXHIBIT J**

**Document Preparation.** A(n) Document Preparation fee of $100.00 payable from the loan proceeds.
**County Property Taxes - Not escrowed.** A(n) County Property Taxes - Not escrowed fee of $2,496.00 payable from separate funds on or before today's date.
**Closing - Affects APR.** A(n) Closing - Affects APR fee of $250.00 payable from the loan proceeds.

I understand and agree that some payments to third parties as part of this transaction may also involve money retained by you or paid back to you as commissions or other remuneration.

**5. REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Note.

**A. Late Charge.** If a payment is more than 10 days late, I will be charged 5.000 percent of the Amount of Payment. I will pay this late charge promptly but only once for each late payment. This amount may then increase so as to always be the highest amount allowed by law under Minnesota Statutes § 47.59.

**B. Returned Check Charge.** I agree to pay a service charge for each returned check, negotiable order of withdrawal, draft or automatic payment request. The amount of the service charge will generally be $10.00.

**C. Stop Payment.** A(n) Stop Payment equal to $10.00.

**6. GOVERNING AGREEMENT.** This Note is further governed by the Commercial Loan Agreement executed between you and me as part of this Loan, as modified, amended or supplemented. Upon execution of this Note, I represent that I have reviewed and am in compliance with the terms contained in the Commercial Loan Agreement.

**7. PURCHASE MONEY LOAN.** You may include the name of the seller on the check or draft for this Note.

**8. PAYMENT.** I agree to pay this Note on demand, but if no demand is made, I agree to pay this Note in installments of accrued interest beginning January 27, 2005, and then on the 27th day of each month thereafter. I agree to pay the entire unpaid Principal and any accrued but unpaid interest on July 27, 2005.

Payments will be rounded up to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Each payment I make on this Note will be applied first to any charges that I owe other than principal and interest then to interest that is due, and finally to principal that is due. If you and I agree to a different application of payments, we will describe our agreement on this Note. The actual amount of my final payment will depend on my payment record.

**9. PREPAYMENT.** I may prepay this Loan in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**10. LOAN PURPOSE.** The purpose of this Loan is to purchase land.

**11. SECURITY.** This Loan is secured by separate security instruments prepared together with this Note as follows:

| Document Name | Parties to Document |
|---|---|
| Mortgage - XXX Elmcrest Ave. & 51100 Driftwood Ave. | Nickolas Buehring , Diane Buehring |

**12. ASSUMPTIONS.** Someone buying the Property cannot assume the obligation. You may declare the entire balance of the Note to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, or transfer of the Property.

**13. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

**A. Additional Waivers By Borrower.** In addition, I, and any party to this Note and Loan, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Note.

(1) You may renew or extend payments on this Note, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property securing this Note.

(4) You, or any institution participating in this Note, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.

**B. No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon your strict performance of any provisions contained in this Note, or other Loan documents, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**14. APPLICABLE LAW.** This Note is governed by the laws of Minnesota, the United States of America and to the extent required, by the laws of the jurisdiction where the Property is located.

**15. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay this Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on this Loan, or any number of us together, to collect this Loan. Extending this Loan or new obligations under this Loan, will not affect my duty under this Loan and I will still be obligated to pay this Loan. The duties and benefits of this Loan will bind and benefit the successors and assigns of you and me.

**16. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is effective unless made in writing and executed by you and me. This Note is the complete and final expression of the agreement. If any provision of this Note is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**17. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

**18. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES



EXHIBIT J

section, or to any other address designated in writing. Notice to one party will be deemed to be notice to all parties. I will inform you in writing of any change in my name, address or other application information. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**19. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably request. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**20. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**21. SIGNATURES.** By signing, I agree to the terms contained in this Note. I also acknowledge receipt of a copy of this Note.

BORROWER:

Nickolas  Buehring
Individually

Diane  Buehring
Individually

Nickolas  Buehring
Minnesota Promissory Note
MN/4janewsom00725200004363O14122704N

©1996 Bankers Systems, Inc., St. Cloud, MN *Express*


Page 3

EXHIBIT J

## ALLONGE TO NOTE

**LOAN** **8951**

THIS ALLONGE IS TO BE ATTACHED TO AND MADE A PART of that certain

**PROMISSORY NOTE**
Dated:  December 27, 2004
Payable by:  Nickolas Buehring aka Nicholas Buehring and Diane Buehring,
Husband and Wife
In the original loan amount of $70,000.00

PAY TO THE ORDER OF:

STEARNS BANK  N.A. WITHOUT RECOURSE AND WITHOUT
REPRESENTATION OR WARRANTY, EXPRESS, IMPLIED OR BY
OPERATION OF LAW, OF ANY KIND AND NATURE WHATSOEVER.

Federal Deposit Insurance Corporation as Receiver for Horizon Bank, Pine City,
Minnesota

BY: _____
Name:    Nancy H. Kubasek
Its:    Attorney-in-Fact

*Reserved for Recording Information*

## ALLONGE TO PROMISSORY NOTE

Allonge to Promissory Note dated December 27, 2004 in the original principal amount of $70,000.00 executed by Nickolas Buehring and Diane Buehring, as Borrowers together with any subsequent renewals, modifications, and/or extensions thereof, and payable to Horizon Bank, f/k/a/ Pine City State Bank and assigned to Stearns Bank National Association in that certain assignment and bill of sale dated April 13, 2010.

Pay to the order of Unity Bank, pursuant to the terms and conditions of the Assignment of Mortgage dated October 31, 2019 together with any modifications and/or extensions thereof. Except as expressly provided in the Assignment Agreement dated October 30, 2019, this Allonge is made without recourse and without representation or warranty, express, implied, or by operation of law, or of any kind and nature whatsoever.

STEARNS BANK NATIONAL ASSOCIATION
a national banking association

Dated: October 31, 2019

By: _____

Name: Steve Domine

Its: Senior Vice President

STATE OF MINNESOTA )
                   ) ss
COUNTY OF STEARNS  )

The foregoing instrument was acknowledgement before me this 6th day of October 2019, by Steve Domine the Senior Vice President of Stearns Bank National Association, a national banking association on behalf of the Bank.

[Notary Stamp]

DAWN M. BROUILLET
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2024

Notary Public
My Commission Expires: 1-31-24

EXHIBIT J

3951

**OFFICE OF COUNTY RECORDER**
**Chisago County, Minnesota**

I hereby certify that this document was filed in this office on  12/28/2004  at  2 15 00 PM   and was duly recorded as document number A-442166
ELAINE OFTELIE – County Recorder, by _____ Deputy
                                                                          p
Well Certificate ____ Received ____ Not Required

Fees
  EQUIPMENT FUND                        $1 00
  STATE SURCHARGE                        4 50
  GENERAL ABSTRACT                      14 00
                              Total   $19 50

Receipt # ~ 45791

442166

## MORGAGE

## MORTGAGE

(With Future Advance Clause)

**DATE AND PARTIES**  The date of this Mortgage (Security Instrument) is December 27, 2004.  The parties and their addresses are

**MORTGAGOR**
**NICKOLAS  BUEHRING**
A/K/A Nicholas Buehring
Spouse of Diane Buehring
51100 Driftwood Ave
Rush City, Minnesota 55069

Received from/Return to
CITY TITLE, INC
600 HILLSIDE AVE
PINE CITY, MN 55063- 2048

**DIANE BUEHRING**
Spouse of Nickolas Buehring
51100 Driftwood Ave
Rush City, Minnesota 55069

**LENDER**
**PINE CITY STATE BANK**
Organized and existing under the laws of Minnesota
P.O BOX 49
600 HILLSIDE AVENUE
PINE CITY, Minnesota 55063-0049
TIN  410350530

**1. CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debts and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, conveys, sells, mortgages and warrants to Lender, with the power of sale, the following described property

W 1/2 of SE 1/4 of SE 1/4 of Section 13, Township 37, Range 22
AND
Parcel A  NE 1/4 of SW 1/4 and SW 1/4 of SE 1/4, Section 13, Township 37, Range 22, AND the NE 1/4 of NE 1/4 of Section 24, Township 37, Range 22, Chisago County, Minnesota, described as follows

EXCEPTION
Commencing at the northeast corner of said Section 24, thence on an assumed bearing of South 0 degrees 00 minutes 17 seconds West, along the East line of said Section 24, a distance of 850 07 feet, thence South 80 degrees 24 minutes 45 seconds West, 672.76 feet to the point of beginning of the tract herein described, thence continuing on a bearing of South 80 degrees 24 minutes 45 seconds West, 390.14 feet, thence North 5 degrees 52 minutes 03 seconds West, 315.69 feet, thence North 89 degrees 45 minutes 13 seconds West 185 38 feet to the West line of said Northeast Quarter of the Northeast Quarter, thence South 0 degrees 08 minutes 15 seconds East, along last said line 601.45 feet, thence North 80 degrees 24 minutes 45 seconds East 610 00 feet, thence North 0 degrees 08 minutes 15 seconds West 250 00 feet to the point of beginning

Parcel B  SW 1/4 of SW 1/4 of Section 18, Township 37, Range 21, EXCEPT the South 2 rods thereof

Parcel C  N 1/2 of SE 1/4 of Section 13, Township 37, Range 22.

The property is located in Chisago County at XXX Elmcrest Ave. & 51100 Driftwood Ave., Rush City, Minnesota 55069

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, crops, timber, all diversion payments or third party payments made to crop producers and all existing and future

Nickolas  Buehring
Minnesota Mortgage
MN/4jannewenm00726200004363014122704Y

©1996 Bankers Systems, Inc., St Cloud, MN  Express

Initials

Page 1

**EXHIBIT K**

improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described (all referred to as Property). This Security Instrument will remain in effect until the Secured Debts and all underlying agreements have been terminated in writing by Lender

**2. MAXIMUM OBLIGATION LIMIT.** Notwithstanding anything to the contrary herein, enforcement of this Security Instrument is limited to a predetermined debt amount of $70,000.00 under chapter 287 of Minnesota Statutes. This limitation does not include interest and any other amount advanced by Lender in protection of the Property or this Security Instrument, including but not limited to taxes, assessments, charges, claims, fines, impositions, insurance premiums, amounts due under prior or superior mortgages and other prior or superior liens, encumbrances and interests, legal expenses and attorneys' fees

**3 SECURED DEBTS** This Security Instrument will secure the following Secured Debts

**A. Specific Debts** The following debts and all extensions, renewals, refinancings, modifications and replacements A promissory note or other agreement, No 13951, dated December 27, 2004, from Mortgagor to Lender, with a loan amount of $70,000.00, with an interest rate of 7.25 percent per year and maturing on July 27, 2005 One or more of the debts secured by this Security Instrument contains a future advance provision

**B. All Debts** All present and future debts from Mortgagor to Lender, even if this Security Instrument is not specifically referenced, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Security Instrument, each agrees that it will secure debts incurred either individually or with others who may not sign this Security Instrument Nothing in this Security Instrument constitutes a commitment to make additional or future loans or advances Any such commitment must be in writing. In the event that Lender fails to provide any required notice of the right of rescission, Lender waives any subsequent security interest in the Mortgagor's principal dwelling that is created by this Security Instrument. This Security Instrument will not secure any debt for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices This Security Instrument will not secure any debt for which a security interest is created in "margin stock" and Lender does not obtain a "statement of purpose," as defined and required by federal law governing securities

**C. Sums Advanced.** All sums advanced and expenses incurred by Lender under the terms of this Security Instrument

**4 PAYMENTS.** Mortgagor agrees that all payments under the Secured Debts will be paid when due and in accordance with the terms of the Secured Debts and this Security Instrument

**5 WARRANTY OF TITLE** Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell, and mortgage, with the power of sale, the Property Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record.

**6. PRIOR SECURITY INTERESTS** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:

A. To make all payments when due and to perform or comply with all covenants.

B. To promptly deliver to Lender any notices that Mortgagor receives from the holder

C Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

**7. CLAIMS AGAINST TITLE** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property

**8. DUE ON SALE** Lender may, at its option, declare the entire balance of the Secured Debts to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of all or any part of the Property This right is subject to the restrictions imposed by federal law governing the preemption of state due-on-sale laws, as applicable.

**9 WARRANTIES AND REPRESENTATIONS** Mortgagor has the right and authority to enter into this Security Instrument The execution and delivery of this Security Instrument will not violate any agreement governing Mortgagor or to which Mortgagor is a party

**10 PROPERTY CONDITION, ALTERATIONS AND INSPECTION** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor will not commit or allow any waste, impairment, or deterioration of the Property Mortgagor will keep the Property free of noxious weeds and grasses Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor, and of any loss or damage to the Property,

No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Mortgagor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance Such replacement of personal property will be deemed subject to the

©1998 Bankers Systems, Inc., St. Cloud, MN. Express Initials 
Page 2

EXHIBIT K

security interest created by this Security Instrument. Mortgagor will not partition or subdivide the Property without Lender's prior written consent

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender will give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property will be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

**11 AUTHORITY TO PERFORM.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor will not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

**12. ASSIGNMENT OF LEASES AND RENTS.** Mortgagor assigns, grants, bargains, conveys, mortgages and warrants to Lender as additional security all the right, title and interest in the following (Property)

**A.** Existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the non-homestead portion of the Property, including but not limited to any extensions, renewals, modifications or replacements (Leases)

**B.** Rents, issues and profits, including but not limited to security deposits, minimum rents, percentage rents, additional rents, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims which Mortgagor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property (Rents)

In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement. Mortgagor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default. Mortgagor will not collect in advance any Rents due in future lease periods, unless Mortgagor first obtains Lender's written consent. Upon default, Mortgagor will receive any Rents in trust for Lender and Mortgagor will not commingle the Rents with any other funds. When Lender so directs, Mortgagor will endorse and deliver any payments of Rents from the Property to Lender. Amounts collected will be applied first as set forth at Minn. Stat. Ann. § 576.01, Subdivision 2, and then at Lender's discretion to the Secured Debts, the costs of managing, protecting and preserving the Property, and other necessary expenses. Mortgagor agrees that this Security Instrument is immediately effective between Mortgagor and Lender and effective as to third parties on the recording of this Assignment. As long as this Assignment is in effect, Mortgagor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants. Mortgagor, at its sole cost and expense, will keep, observe and perform, and require all other parties to the Leases to comply with the Leases and any applicable law. If Mortgagor or any party to the Lease defaults or fails to observe any applicable law, Mortgagor will promptly notify Lender. If Mortgagor neglects or refuses to enforce compliance with the terms of the Leases, then Lender may, at Lender's option, enforce compliance. Mortgagor will not sublet, modify, extend, cancel, or otherwise alter the Leases, or accept the surrender of the Property covered by the Leases (unless the Leases so require) without Lender's consent. Mortgagor will not assign, compromise, subordinate or encumber the Leases and Rents without Lender's prior written consent. Lender does not assume or become liable for the Property's maintenance, depreciation, or other losses or damages when Lender acts to manage, protect or preserve the Property, except for losses and damages due to Lender's gross negligence or intentional torts. Otherwise, Mortgagor will indemnify Lender and hold Lender harmless for all liability, loss or damage that Lender may incur when Lender opts to exercise any of its remedies against any party obligated under the Leases. This Security Instrument applies when, as additional security for the debt secured by the mortgage, it secures an original principal debt of $100,000 or more or is a lien upon residential real estate containing more than four dwelling units, and is not a lien upon Property which is entirely homesteaded as agricultural property or residential real estate containing four or fewer dwelling units where at least one of the units is homesteaded. This Security Instrument may only be enforced against the non-homestead portion of the assigned Property

**13 DEFAULT.** Mortgagor will be in default if any of the following occur

**A. Payments.** Mortgagor fails to make a payment in full when due.

**B. Insolvency or Bankruptcy.** Any legal entity obligated on the Secured Debts makes an assignment for the benefit of creditors or becomes insolvent, either because its liabilities exceed its assets or it is unable to pay its debts as they become due, or it petitions for protection under federal, state or local bankruptcy, insolvency or debtor relief laws, or is the subject of a petition or action under such laws and fails to have the petition or action dismissed within a reasonable period of time not to exceed 60 days.

**C. Death or Incompetency.** Mortgagor dies or is declared legally incompetent.

**D. Failure to Perform.** Mortgagor fails to perform any condition or to keep any promise or covenant of this Security Instrument

**E. Other Documents.** A default occurs under the terms of any other transaction document.

**F. Other Agreements.** Mortgagor is in default on any other debt or agreement Mortgagor has with Lender

**G. Misrepresentation.** Mortgagor makes any verbal or written statement or provides any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided

**H. Judgment**   Mortgagor fails to satisfy or appeal any judgment against Mortgagor

**I. Forfeiture**   The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change**   Mortgagor changes Mortgagor's name or assumes an additional name without notifying Lender before making such a change

**K. Property Transfer.**  Mortgagor transfers all or a substantial part of Mortgagor's money or property   This condition of default, as it relates to the transfer of the Property, is subject to the restrictions contained in the DUE ON SALE section

**L. Property Value.**  The value of the Property declines or is impaired

**M. Erosion.**  Any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained by federal law

**N. Insecurity**   Lender reasonably believes that Lender is insecure

**14. REMEDIES.** Lender may use any and all remedies Lender has under state or federal law or in any instrument evidencing or pertaining to the Secured Debts, including, without limitation, the power to sell the Property   Any amounts advanced on Mortgagor's behalf will be immediately due and may be added to the balance owing under the Secured Debts   Lender may make a claim for any and all insurance benefits or refunds that may be available on Mortgagor's default

Subject to any right to cure, required time schedules or any other notice rights Mortgagor may have under federal and state law, Lender may make all or any part of the amount owing by the terms of the Secured Debts immediately due and foreclose this Security Instrument in a manner provided by law upon the occurrence of a default or anytime thereafter

Upon default, Lender will have the right, without declaring the whole indebtedness due and payable, to foreclose against all or any part of the Property   This lien will continue as a lien on any part of the Property not sold on foreclosure   If there is a default, Lender may, in addition to any other permitted remedy, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash and convey all right, title and interest of Mortgagor at such time and place as Lender designates.  If Lender invokes the power of sale, Lender will give notice of the sale including the time, terms and place of sale and a description of the property to be sold as required by the applicable law in effect at the time of the proposed sale

Lender will apply the proceeds of the sale in the following order   (a) to all expenses of exercising the sale, including but not limited to, reasonable attorneys' fees, (b) to all sums secured by this Security Instrument, and (c) any excess to the person or persons legally entitled to it   Lender or its designee may purchase the Property   If the Property is sold pursuant to this section, Mortgagor, or any person holding possession of the Property through Mortgagor, will immediately surrender possession of the Property to the purchaser at the sale   If possession is not surrendered, Mortgagor or such person will be a tenant holding over and may be dispossessed in accordance with applicable law

Upon any sale of the Property, Lender will make and deliver a special or limited warranty deed that conveys the property sold to the purchaser or purchasers   Under this special or limited warranty deed, Lender will covenant that Lender has not caused or allowed a lien or an encumbrance to burden the Property and that Lender will specially warrant and defend the Property's title of the purchaser or purchasers at the sale against all lawful claims and demand of all persons claiming by, through or under Lender   The recitals in any deed of conveyance will be prima facie evidence of the facts set forth therein

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth   The acceptance by Lender of any sum in payment or partial payment on the Secured Debts after the balance is due or is accelerated or after foreclosure proceedings are filed will not constitute a waiver of Lender's right to require full and complete cure of any existing default   By not exercising any remedy, Lender does not waive Lender's right to later consider the event a default if it continues or happens again

**15. COLLECTION EXPENSES AND ATTORNEYS' FEES.**  On or after Default, to the extent permitted by law, Mortgagor agrees to pay all expenses of collection, enforcement or protection of Lender's rights and remedies under this Security Instrument   Mortgagor agrees to pay expenses for Lender to inspect and preserve the Property and for any recordation costs of releasing the Property from this Security Instrument.   Expenses include, but are not limited to, attorneys' fees, court costs and other legal expenses   These expenses are due and payable immediately   If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of the Secured Debts.  To the extent permitted by the United States Bankruptcy Code, Mortgagor agrees to pay the reasonable attorneys' fees Lender incurs to collect the Secured Debts as awarded by any court exercising jurisdiction under the Bankruptcy Code

**16. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES**   As used in this section  (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U S C  9601 et seq ), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance, and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment   The term includes, without limitation, any substances defined as "hazardous material," "toxic substance," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law

Mortgagor represents, warrants and agrees that

**A.** Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or

Nicklas  Buehring
Minnesota **Mortgage**
MN/4janewsom00725200004363014122704Y

©1996 Bankers Systems, Inc , St  Cloud  MN *Experts*

Initials _____
Page 4

EXHIBIT K

about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law

**B.** Except as previously disclosed and acknowledged in writing to Lender, Mortgagor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property

**C.** Mortgagor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property, or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor will take all necessary remedial action in accordance with Environmental Law

**D** Except as previously disclosed and acknowledged in writing to Lender, Mortgagor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property, or (2) any violation by Mortgagor or any tenant of any Environmental Law. Mortgagor will immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings

**E.** Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are and will remain in full compliance with any applicable Environmental Law.

**F** Except as previously disclosed and acknowledged in writing to Lender, there are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.

**G.** Mortgagor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.

**H.** Mortgagor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property, (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property, or (3) whether or not Mortgagor and any tenant are in compliance with applicable Environmental Law.

**I.** Upon Lender's request and at any time, Mortgagor agrees, at Mortgagor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval

**J.** Lender has the right, but not the obligation, to perform any of Mortgagor's obligations under this section at Mortgagor's expense

**K.** As a consequence of any breach of any representation, warranty or promise made in this section, (1) Mortgagor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain, and (2) at Lender's discretion, Lender may release this Security Instrument and in return Mortgagor will provide Lender with collateral at least equal value to the Property secured by this Security Instrument without prejudice to any of Lender's rights under this Security Instrument

**L.** Notwithstanding any of the language contained in this Security Instrument to the contrary, the terms of this section will survive any foreclosure or satisfaction of this Security Instrument regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived

**17. CONDEMNATION** Mortgagor will give Lender prompt notice of any pending or threatened action by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds will be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document

**18 INSURANCE** Mortgagor agrees to keep the Property insured against the risks reasonably associated with the Property. Mortgagor will maintain this insurance in the amounts Lender requires. This insurance will last until the Property is released from this Security Instrument. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debts. Mortgagor may choose the insurance company, subject to Lender's approval, which will not be unreasonably withheld.

All insurance policies and renewals will include a standard "mortgage clause" and, where applicable, "loss payee clause." If required by Lender, Mortgagor agrees to maintain comprehensive general liability insurance and rental loss or business interruption insurance in amounts and under policies acceptable to Lender. The comprehensive general liability insurance must name Lender as an additional insured. The rental loss or business interruption insurance must be in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing.)

Mortgagor will give Lender and the insurance company immediate notice of any loss. All insurance proceeds will be applied to restoration or repair of the Property or to the Secured Debts, at Lender's option. If Lender acquires the Property in damaged condition, Mortgagor's rights to any insurance policies and proceeds will pass to Lender to the extent of the Secured Debts

Mortgagor will immediately notify Lender of cancellation or termination of insurance. If Mortgagor fails to keep the Property insured Lender may obtain insurance to protect Lender's interest in the Property. This insurance

Nickolas Bushring
Minnesota **Mortgage**
MN/4jenawsom00726200004363014122704Y
®1996 Bankers Systems, Inc , St Cloud, MN Exsams
Initials 
Page 8

EXHIBIT K

may include coverages not originally required of Mortgagor, may be written by a company other than one Mortgagor would choose, and may be written at a higher rate than Mortgagor could obtain if Mortgagor purchased the insurance

**19 ESCROW FOR TAXES AND INSURANCE.** Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow

**20 CO-SIGNERS** If Mortgagor signs this Security Instrument but does not sign the Secured Debts, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debts and Mortgagor does not agree to be personally liable on the Secured Debts If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws

**21. WAIVERS.** Except to the extent prohibited by law, Mortgagor waives all homestead exemption rights relating to the Property

**22 APPLICABLE LAW** This Security Instrument is governed by the laws of Minnesota, except to the extent otherwise required by the laws of the jurisdiction where the Property is located, and the United States of America

**23 JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** Each Mortgagor's obligations under this Security Instrument are independent of the obligations of any other Mortgagor Lender may sue each Mortgagor individually or together with any other Mortgagor Lender may release any part of the Property and Mortgagor will still be obligated under this Security Instrument for the remaining Property. The duties and benefits of this Security Instrument will bind and benefit the successors and assigns of Lender and Mortgagor

**24 AMENDMENT, INTEGRATION AND SEVERABILITY** This Security Instrument may not be amended or modified by oral agreement No amendment or modification of this Security Instrument is effective unless made in writing and executed by Mortgagor and Lender This Security Instrument is the complete and final expression of the agreement If any provision of this Security Instrument is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable

**25 INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Security Instrument

**26. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing Notice to one party will be deemed to be notice to all parties Mortgagor will inform Lender in writing of any change in Mortgagor's name, address or other application information. Mortgagor will provide Lender any financial statements or information Lender requests. All financial statements and information Mortgagor gives Lender will be correct and complete. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and to confirm Lender's lien status on any Property Time is of the essence

**SIGNATURES** By signing, Mortgagor agrees to the terms and covenants contained in this Security Instrument Mortgagor also acknowledges receipt of a copy of this Security Instrument

MORTGAGOR

Nickolas   Buehring
Individually

Diane   Buehring
Individually

442166

ACKNOWLEDGMENT.

(Individual)

_State_ OF _Minnesota_ County OF _Pine_ ss.

This instrument was acknowledged before me this _27_ day of _December_, _2004_
by Nickolas Buehring, spouse of Diane Buehring, and Diane Buehring, spouse of Nickolas Buehring.

My commission expires |31|05

(Notary Public)

PATRICK A THIRY
Notary Public
Minnesota
My commission Expires January 31, 2005

This instrument was drafted by City Title, Inc., 600 Hillside Avenue SW, Pine City, Minnesota 55063

442166

EXHIBIT K

**OFFICE OF COUNTY RECORDER**
**Chisago County, Minnesota**

I hereby certify that this document was filed in this office
on  4/16/2010  at  11:33:24 AM     and was duly
recorded as document number A-520797
        LEE OLSON-County Recorder, by____Deputy.
                                                        ___p
Well Certificate: ____ Received ____ Not Required

Fees:
        REC'G COMPLIANCE FUND            $11.00
        STATE GENERAL FUND                10.50
        TECHNOLOGY FUND                   10.00
        GENERAL ABSTRACT                  14.50
                                    Total  $46.00

Recording Requested By/Return To:
Stearns Bank N.A
**Attn: Julie Forrest**
600 Hillside Ave SW
Pine City, MN 55063

Prepared By: Julie Forrest
Stearns Bank, N. A.
600 Hillside Ave SW
Pine City, MN 55063

NOTE# 895:

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of Mortgage (herein "Assignor") whose address is 1601 Bryan Street, Dallas, Texas 75201, does hereby grant, sell, assign, transfer and convey effective as of June 26, 2009, unto Stearns Bank, N.A. its successors and assigns  (herein "Assignee"), whose address is 4191 2nd Street South, St. Cloud, MN  56301, a certain Mortgage dated December 27. 2004 made and executed by, Nickolas Buehring aka Nicholas Buehring and Diane Buehring, Husband and Wife in favor of Horizon Bank, Pine City, Minnesota , such Mortgage having been given to secure payment of **$70,000.00 (Original Principal Amount)**, which Mortgage is of record in Instrument No. A-442166 of the Official Records of Chisago County, State of Minnesota, together with the note(s) and obligations therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under Mortgage

TO HAVE AND TO HOLD the same unto Assignee, its successors and assigns, forever, subject only to the Terms and conditions of the above described Mortgage.

THIS ASSIGNMENT IS MADE WITHOUT RECOURSE, REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, WRITTEN OR ORAL, BY THE FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR HORIZON BANK,. THE LOAN SECURED BY THE MORTGAGE, AS ASSIGNED AND MODIFIED, IS CONVEYED "AS IS" AND "WITH ALL FAULTS," WITHOUT ANY REPRESENTATION OR WARRANTY WHATSOEVER, INCLUDING AS TO COLLECTIBILITY, ENFORCEABILITY, VALUE OF COLLATERAL, ABILITY OF ANY OBLIGOR TO REPAY, CONDITION, FITNESS FOR ANY PARTICULAR PURPOSE MERCHANTABILITY OR ANY OTHER WARRANTY, EXPRESS OR IMPLIED, BY ANY PERSON, INCLUDING THE FDIC OR ITS OFFICERS, EMPLOYEES, AGENTS OR CONTRACTORS.

EXHIBIT K

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment Mortgage on April 13, 2010.

ASSIGNOR:
FEDERAL DEPOSIT INSURANCE CORPORATION AS
RECEIVER FOR HORIZON BANK, PINE CITY, MINNESOTA

By: _Nancy H. Kubasek_

Name: Nancy H. Kubasek
Its:    Attorney-In-Fact

**ACKNOWLEDGMENT**

State of __MN__
County of __Stearns__

The foregoing instrument was acknowledged before me this __April 13, 2010__ by __Nancy Kubasek__ the Attorney-in-Fact for FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR HORIZON BANK, PINE CITY, MINNESOTA.

(SEAL)

JENNIFER MARIE ZIERDEN
Notary Public-Minnesota
My Commission Expires Jan 31, 2014

NOTARY PUBLIC

My Commission Expires: __1/31/14__

A-520797

Received from/return to:
STEARNS BANK
600 HILLSIDE AVE SW
PO BOX 49
PINE CITY, MN 55063- 0049

EXHIBIT K

**Office of County Recorder**     Fee   **$46.00**
**Chisago County, Minnesota**     Pages:   3
Certified, filed and/or Recorded on: November 20, 2019 9:33 AM
**Janet R. Converse, County Recorder**    **Doc #**
Well Certificate [  ] Received    **A624569**

Received from:    UNITY BANK
Returned To:    UNITY BANK
     PO BOX 804
     1180 W 4TH ST
     RUSH CITY, MN 55069 - 0000

*Reserved for Recording Information*

---

**Recording Prepared By:**
Stearns Bank N.A.
4191 2nd Street South
St. Cloud, MN  56301

**Return To:**

**UNITY BANK**
**1180 WEST 4TH STREET**
**PO BOX 804**
**RUSH CITY, MN 55069**

**(NOTE#** ▮▮**951)**

## ASSIGNMENT OF MORTGAGE

For Value Received, **Stearns Bank National Association,** ("Assignor") whose address is 4191 2nd Street South, St. Cloud, MN 56301, does hereby grant, sell, assign, transfer and convey and set over, unto **Unity Bank**, (herein "Assignee"), whose address is 1180 W 4th Street, Rush City, MN 55069, all of its right, title and interest in to that certain **Mortgage** dated December 27, 2004 executed by Nickolas Buehring and Diane Buehring as Mortgagor and Horizon Bank, f/k/a Pine City State Bank as Lender and recorded with the Office of the County Recorder of Chisago County on December 28, 2004 as Document Number A-442166 and assigned to the Assignor in that certain **Assignment of Mortgage** dated June 26, 2009 and recorded with the Office of the County Recorder of Chisago County on April 16, 2010 as Document Number A-520797 ("Mortgage"), and which Mortgage encumbers the property more particularly described therein, together with any and all amendments, modifications, renewals and extensions, and together with all indebtedness currently due and to become due under the terms of any promissory note, evidence of indebtedness and claims secured thereby upon the following described piece or parcel of land, situate and being in said County and State, to wit:

*See Exhibit A for Property Description*

In addition to the instrument described above, Stearns Bank National Association hereby assigns all of its right, title and interest in and to any and all notes, evidences of indebtedness, collateral, liens, security interests (real, personal and mixed property), loan documents and any other instrument that Stearns Bank National Association has an interest in with respect to the Mortgage and loan described above, together with all rights to payments and proceeds therefrom. Assignor directs all future payments under the mortgage and note, be made to Assignee.

EXHIBIT K

EXCEPT AS OTHERWISE AGREED TO IN THE ASSIGNMENT AGREEMENT EXECUTED ON OCTOBER 30, 2019 BETWEEN ASSIGNOR AND ASSIGNEE, THIS ASSIGNMENT IS MADE WITHOUT RECOURSE, REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, WRITTEN OR ORAL, BY STEARNS BANK NATIONAL ASSOCIATION.  THE LOAN SECURED BY THE MORTGAGE, AS ASSIGNED AND MODIFIED IS CONVEYED "AS IS" AND "WITH ALL FAULTS" WITHOUT ANY REPRESENTATION OR WARRANTY WHATSOEVER, INCLUDING AS TO COLLECTIBILITY, ENFORCEABILITY, VALUE OF COLLATERAL, ABILITY OF ANY OBLIGOR TO REPAY, CONDITION, FITNESS FOR ANY PARTICULAR PURPOSE MERCHANTABILITY OR ANY OTHER WARRANTY, EXPRESS OR IMPLIED, BY ANY PERSON, INCLUDING THE FDIC OR ITS OFFICERS, EMPLOYEES, AGENTS OR CONTRACTORS.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on October 31, 2019.

**STEARNS BANK NATIONAL ASSOCIATION**
**a national banking association**

Witness

By: _____

Name: Steve Domine

Witness

Its: Senior Vice President

STATE OF MINNESOTA    )
                      ) ss
COUNTY OF STEARNS     )

The foregoing instrument was acknowledgement before me this 6th day of October 2019, by Steve Domine the Senior Vice President of Stearns Bank National Association, a national banking association on behalf of the Bank.

[Notary Stamp]

Notary Public
My Commission Expires: 1-31-24

DAWN M. BROUILLET
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2024

EXHIBIT K

## EXHIBIT A

W 1/2 OF SE 1/4 OF SECTION 13, TOWNSHIP 37, RANGE 22.
AND
PARCEL A:  NE 1/4 OF SW 1/4 AND SW 1/4 OF SE 1/4, SECTION 13, TOWNSHIP 37, RANGE 22; AND THE
NE 1/4 OF NE 1/4 OF SECTION 24, TOWNSHIP 37, RANGE 22, CHISAGO COUNTY, MINNESOTA,
DESCRIBED AS FOLLOWS:

EXCEPTION:
COMMENCING AT THE NORTHEAST CORNER OF SAID SECTION 24; THENCE ON AN
ASSUMED BEARING OF SOUTH 0 DEGREES 00 MINUTES 17 SECONDS WEST, ALONG
THE EAST LINE OF SAID SECTION 24, A DISTANCE OF 850.07 FEET; THENCE SOUTH
80 DEGREES 24 MINUTES 45 SECONDS WEST, 672.76 FEET TO THE POINT OF
BEGINNING OF THE TRACT HEREIN DESCRIBED; THENCE CONTINUING ON A
BEARING OF SOUTH 80 DEGREES 24 MINUTES 45 SECONDS WEST, 390.14 FEET;
THENCE NORTH 5 DEGREES 52 MINUTES 03 SECONDS WEST. 315.69 FEET; THENCE
NORTH 89 DEGREES 45 MINUTES 13 SECONDS WEST 185.38 FEET TO THE WEST LINE
OF SAID NORTHEAST QUARTER OF THE NORTHEAST QUARTER; THENCE SOUTH 0
DEGREES 08 MINUTES 15 SECONDS EAST, ALONG THE LAST SAID LINE 601.45 FEET;
THENCE NORTH 80 DEGREES 24 MINUTES 45 SECONDS EAST 610.00 FEET; THENCE
NORTH 0 DEGREES 08 MINUTES 15 SECONDS WEST 250.00 FEET TO THE POINT OF
BEGINNING.

PARCEL B:  SW 1/4 OF NW 1/4 OF SECTION 18, TOWNSHIP 37, RANGE 21, EXCEPT THE SOUTH 2 RODS
THEREOF.

PARCEL C:  N 1/2 OF SE 1/4 OF SECTION 13, TOWNSHIP 37, RANGE 22.

The Real Property or its address is currently known as XXX ELMCREST AVENUE & 51100 DRIFTWOOD
AVENUE, RUSH CITY, MN  55069. The Real Property tax identification number is 06.00272.10, 06.00532.00,
06.00269.00, 06.00050.00 AND 06.00271.00.

EXHIBIT K

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| ▮897 | Brandon Buehring | | 11/19/04 | PAT |
| NOTE AMOUNT | INDEX (w/Margin) | RATE | MATURITY DATE | LOAN PURPOSE |
| $465,000.00 | NEW YORK PRIME plus 1.500% | 7.0% | 12/01/14 | Agricultural |
| | | Creditor Use Only | | |

# PROMISSORY NOTE
(Agricultural - Draw - Variable Rate)

**DATE AND PARTIES.** The date of this Promissory Note (Note) is November 19, 2004. The parties and their addresses are:

**LENDER:**
PINE CITY STATE BANK
P.O. BOX 49
600 HILLSIDE AVENUE
PINE CITY, Minnesota 55063-0049
Telephone: (320) 629-6713

**BORROWER:**
BRANDON BUEHRING
51100 Driftwood Ave.
Rush City, Minnesota 55069

CHAD N. BUEHRING
635 Estate Drive
Rush City, Minnesota 55069

**1. DEFINITIONS.** As used in this Note, the terms have the following meanings:

A. **Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Note, individually and together with their heirs, successors and assigns, and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Note. "You" and "Your" refer to the Lender, with its participants or syndicators, successors and assigns, or any person or company that acquires an interest in the Loan.

B. **Note.** Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.

C. **Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note.

D. **Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

E. **Percent.** Rates and rate change limitations are expressed as annualized percentages.

**2. REFINANCING.** This Note will pay off the following described note(s):

| Note Date | Note Number | Note Amount |
|---|---|---|
| December 30, 2003 | #▮8307 | $172,000.00 |
| November 12, 2003 | #▮3231 | $35,000.00 |

The remaining balance of all notes listed in the table above is $207,000.00.

**3. PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, amounts advanced from time to time under the terms of this Note up to the maximum total principal balance of $465,000.00 (Principal), plus interest from the date of disbursement, on the unpaid outstanding Principal balance until this Note matures or this obligation is accelerated.

On November 19, 2004 I will receive an initial advance of $430,954.97.

All advances made will be made subject to all other terms and conditions of this Loan.

**4. INTEREST.** Interest will accrue on the unpaid Principal balance of this Note at the rate of 7.0 percent (Interest Rate) until November 19, 2009, after which time it may change as described in the Variable Rate subsection.

A. **Interest After Default.** If you declare a default under the terms of this Loan, including for failure to pay in full at maturity, you may increase the Interest Rate payable on the outstanding Principal balance of this Note. In such event, interest will accrue on the outstanding Principal balance at the Interest Rate in effect from time to time under the terms of this Loan, until paid in full.

B. **Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Note or obligation will be limited to the Maximum Lawful Amount of interest allowed by state or federal law. Amounts collected in excess of the Maximum Lawful Amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

C. **Statutory Authority.** The amount assessed or collected on this Note is authorized by the Minnesota usury laws under Minn. Stat. § 47.59.

D. **Accrual.** During the scheduled term of this Loan interest accrues using an Actual/360 days counting method.

E. **Variable Rate.** The Interest Rate may change during the term of this transaction.

(1) **Index.** Beginning with the first Change Date, the Interest Rate will be based on the following index: NEW YORK PRIME RATE AS PUBLISHED DAILY IN THE WALL STREET JOURNAL.

The Current Index is the most recent index figure available on each Change Date. You do not guaranty by selecting this Index, or the margin, that the Interest Rate on this Note will be the same rate you charge on any other loans or

©1896 Bankers Systems, Inc., St. Cloud, MN Ex⟨perⱡ⟩

Initials ▮▮ 
Page 1

EXHIBIT L

class of loans you make to me or other borrowers. If this Index is no longer available, you will substitute a similar index. You will give me notice of your choice.

(2) Change Date. Each date on which the Interest Rate may change is called a Change Date. The interest Rate may change November 19, 2009 and every 5 years thereafter.

(3) Calculation Of Change. On each Change Date, you will calculate the Interest Rate, which will be the Current Index plus 1.500 percent. The result of this calculation will be rounded to the nearest .001 percent. Subject to any limitations, this will be the Interest Rate until the next Change Date. The new Interest Rate will become effective on each Change Date. The Interest Rate and other charges on this Note will never exceed the highest rate or charge allowed by law for this Note.

(4) Limitations. The Interest Rate changes are subject to the following limitations:

(a) Lifetime. The Interest Rate will never be less than 7.000 percent.

(5) Effect Of Variable Rate. A change in the Interest Rate will have the following effect on the payments: The amount of the final payment will change.

## 5. ADDITIONAL CHARGES. As additional consideration, I agree to pay, or have paid, these additional fees and charges.

A. Refundable Fees and Charges. Some or all of the following fees may be refunded if I pay this Note in full before the scheduled maturity date.

Loan Origination. A(n) Loan Origination fee of $5,813.00 payable from the loan proceeds.

B. Nonrefundable Fees and Charges. The following fees are earned when collected and will not be refunded if I prepay this Note before the scheduled maturity date.

Title Insurance. A(n) Title Insurance fee of $505.00 payable from the loan proceeds.
Title Examination. A(n) Title Examination fee of $525.00 payable from the loan proceeds.
State Tax Stamps - Mortgage. A(n) State Tax Stamps   Mortgage fee of $450.45 payable from the loan proceeds.
Recording - Releases. A(n) Recording  - Releases fee of $58.50 payable from the loan proceeds.
Recording - Mortgage. A(n) Recording  - Mortgage fee of $19.50 payable from the loan proceeds.
PLAT DRAWING. A(n) PLAT DRAWING fee of $60.00 payable from the loan proceeds.
NAME/ASSESSMENT SEARCH. A(n) NAME/ASSESSMENT SEARCH fee of $20.00 payable from the loan proceeds.
Hazard Insurance. A(n) Hazard Insurance fee of $7,295.00 payable from separate funds on or before today's date.
Flood Zone Determination Fee . A(n) Flood Zone Determination Fee  fee of $18.50 payable from the loan proceeds.
FLOOD ZONE DETERMINATION FEE. A(n) FLOOD ZONE DETERMINATION FEE fee of $6.50 payable from the loan proceeds.
Final Tract Search . A(n) Final Tract Search  fee of $75.00 payable from the loan proceeds.
DOCUMENT RECORDING FEE. A(n) DOCUMENT RECORDING FEE fee of $30.00 payable from the loan proceeds.
Document Preparation. A(n) Document Preparation fee of $100.00 payable from the loan proceeds.
Courier Fee. A(n) Courier Fee fee of $25.00 payable from the loan proceeds.
County Property Taxes - Not escrowed. A(n) County Property Taxes  Not escrowed fee of $1,482.00 payable from separate funds on or before today's date.
Closing - Affects APR. A(n) Closing - Affects APR fee of $250.00 payable from the loan proceeds.
Appraisal. A(n) Appraisal fee of $2,000.00 payable from the loan proceeds.
Abstract or Title Search. A(n) Abstract or Title Search fee of $696.00 payable from the loan proceeds.

I understand and agree that some payments to third parties as part of this transaction may also involve money retained by you or paid back to you as commissions or other remuneration.

## 6. REMEDIAL CHARGES. In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment.   Additional remedial charges may be described elsewhere in this Note.

A. Late Charge. If a payment is more than 10 days late, I will be charged 5.000 percent of the Amount of Payment.  I will pay this late charge promptly but only once for each late payment. This amount may then increase so as to always be the highest amount allowed by law under Minnesota Statutes § 47.59.

B. Returned Check Charge. I agree to pay a service charge for each returned check, negotiable order of withdrawal, draft or automatic payment request. The amount of the service charge will generally be $10.00.

C. Stop Payment. A(n) Stop Payment equal to $10.00.

## 7. GOVERNING AGREEMENT. This Note is further governed by the Commercial Loan Agreement executed between you and me as part of this Loan, as modified, amended or supplemented. Upon execution of this Note, I represent that I have reviewed and am in compliance with the terms contained in the Commercial Loan Agreement.

## 8. PAYMENT. I agree to pay this Note on demand, but if no demand is made, I agree to pay as follows:  I agree to pay monthly payments beginning January 1, 2005.  Loan is structured under participation through the State of Minnesota, Department of Agriculture, Rural Finance Authority Beginning Farm Program.  See RFA Standard Loan Agreement and Note (Attached) for payment details. .

Payments will be rounded up to the nearest $.01.  With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf.  Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Each payment I make on this Note will be applied first to any charges that I owe other than principal and interest then to interest that is due, and finally to principal that is due.  If you and I agree to a different application of payments, we will describe our agreement on this Note.  The actual amount of my final payment will depend on my payment record.

## 9. PREPAYMENT. I may prepay this Loan in full or in part at any time.  Any partial prepayment will not excuse any later scheduled payments until I pay in full.

## 10. LOAN PURPOSE. The purpose of this Loan is construction and refinance of dairy operation .

## 11. SECURITY. This Loan is secured by separate security instruments prepared together with this Note as follows:

| Document Name | Parties to Document |
|---|---|
| Mortgage - 51100 Driftwood Ave. | Nickolas Buehring , Diane Buehring |

## 12. ASSUMPTIONS. Someone buying the Property cannot assume the obligation. You may declare the entire balance of the Note to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, or transfer of the Property.

EXHIBIT L

**13. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

**A. Additional Waivers By Borrower.** In addition, I, and any party to this Note and Loan, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Note.

(1) You may renew or extend payments on this Note, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property securing this Note.

(4) You, or any institution participating in this Note, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.

**B. No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Note, or other Loan documents, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**14. APPLICABLE LAW.** This Note is governed by the laws of Minnesota, the United States of America and to the extent required, by the laws of the jurisdiction where the Property is located.

**15. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay this Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on this Loan, or any number of us together, to collect this Loan. Extending this Loan or new obligations under this Loan, will not affect my duty under this Loan and I will still be obligated to pay this Loan. The duties and benefits of this Loan will bind and benefit the successors and assigns of you and me.

**16. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is effective unless made in writing and executed by you and me. This Note is the complete and final expression of the agreement. If any provision of this Note is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**17. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

**18. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one party will be deemed to be notice to all parties. I will inform you in writing of any change in my name, address or other application information. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**19. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably request. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**20. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**21. SIGNATURES.** By signing, I agree to the terms contained in this Note. I also acknowledge receipt of a copy of this Note.

**BORROWER:**

Brandon Buehring
Individually

Chad N. Buehring
Individually

©1996 Bankers Systems, Inc., St. Cloud, MN ExSereL

Initials BB BP

**EXHIBIT L**

*Reserved for Recording Information*

## ALLONGE TO PROMISSORY NOTE

Allonge to Promissory Note dated November 19, 2004 in the original principal amount of $465,000.00 executed by Brandon Buehring and Chad N. Buehring, as Borrowers together with any subsequent renewals, modifications, and/or extensions thereof, and payable to Horizon Bank, f/k/a/ Pine City State Bank and assigned to Stearns Bank National Association in that certain assignment and bill of sale dated April 13, 2010.

Pay to the order of Unity Bank, pursuant to the terms and conditions of the Assignment of Mortgage dated October 31, 2019 together with any modifications and/or extensions thereof. Except as expressly provided in the Assignment Agreement dated October 30, 2019, this Allonge is made without recourse and without representation or warranty, express, implied, or by operation of law, or of any kind and nature whatsoever.

**STEARNS BANK NATIONAL ASSOCIATION**
**a national banking association**

Dated: October 31, 2019

By: _Steve Domine_

Name: _Steve Domine_

Its: _Senior Vice President_

STATE OF MINNESOTA )
)ss
COUNTY OF STEARNS )

The foregoing instrument was acknowledgement before me this _16th_ day of October 2019, by _Steve Domine_ the _Senior Vice President_ of Stearns Bank National Association, a national banking association on behalf of the Bank.

[Notary Stamp]

Notary Public
My Commission Expires: _1-31-24_

DAWN M. BROUILLET
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2024

EXHIBIT L

B897

**OFFICE OF COUNTY RECORDER**
Chisago County, Minnesota

I hereby certify that this document was filed in this office
on  **11/30/2004**  at  **3 00 00 PM**    and was duly
recorded as document number **A-440474**
ELAINE OFTELIE – County Recorder, by ____ Deputy
____ p

Well Certificate ___ Received ___ Not Required

Fees
| | |
|---|---|
| EQUIPMENT FUND | $1 00 |
| STATE SURCHARGE | 4 50 |
| GENERAL ABSTRACT | 14 00 |
| Total | $19 50 |

# MORTGAGE
(With Future Advance Clause)

**DATE AND PARTIES** The date of this Mortgage (Security Instrument) is November 19, 2004 The parties and their addresses are

**MORTGAGOR·**
**NICKOLAS BUEHRING**
A/K/A Nicholas Buehring
Spouse of Diane Buehring
51100 Driftwood Ave.
Rush City, Minnesota 55069

**DIANE BUEHRING**
Spouse of Nicholas Buehring
51100 Driftwood Ave
Rush City, Minnesota 55069

Received from/return to
CITY TITLE, INC
600 HILLSIDE AVE
PINE CITY, MN 55063- 2048

**LENDER**
**PINE CITY STATE BANK**
Organized and existing under the laws of Minnesota
P.O. BOX 49
600 HILLSIDE AVENUE
PINE CITY, Minnesota 55063-0049
TIN 410350530

**1 CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debts and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, conveys, sells, mortgages and warrants to Lender, with the power of sale, the following described property

See Attached

The property is located in  County at 51100 Driftwood Ave  , Rush City, Minnesota 55069
Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, crops, timber, all diversion payments or third party payments made to crop producers and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described (all referred to as Property)  This Security Instrument will remain in effect until the Secured Debts and all underlying agreements have been terminated in writing by Lender

**2. MAXIMUM OBLIGATION LIMIT.** Notwithstanding anything to the contrary herein, enforcement of this Security Instrument is limited to a predetermined debt amount of $465,000 00 under chapter 287 of Minnesota Statutes  This limitation does not include interest and any other amount advanced by Lender in protection of the Property or this Security Instrument, including but not limited to taxes, assessments, charges, claims, fines, impositions, insurance premiums, amounts due under prior or superior mortgages and other prior or superior liens, encumbrances and interests, legal expenses and attorneys fees.

**3 SECURED DEBTS.** This Security Instrument will secure the following Secured Debts
**A Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications and replacements  A promissory note or other agreement, No ███3897, dated November 19, 2004, from Brandon Buehring  and Chad N. Buehring  (Borrower) to Lender, with an initial advance amount of $430,954 97, a loan amount of $465,000 00, with an initial variable interest rate of 7.0 percent per year until November 19, 2009, after which time it may change as the promissory note prescribes and maturing on December 1, 2014  One or more of the debts secured by this Security Instrument contains a future advance provision

**B. All Debts.** All present and future debts from Brandon Buehring and Chad N. Buehring to Lender, even if this Security Instrument is not specifically referenced, or if the future debt is unrelated to or of a different type than this debt  If more than one person signs this Security Instrument, each agrees that it will secure debts incurred either individually or with others who may not sign this Security Instrument. Nothing in this Security Instrument constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing  In the event that Lender fails to provide any required notice of the right of rescission, Lender waives any subsequent security interest in the Mortgagor's principal dwelling that is created by this Security Instrument  This Security Instrument will not secure any debt for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. This Security Instrument will not secure any debt for which a security interest is created in "margin stock" and Lender does not obtain a "statement of purpose," as defined and required by federal law governing securities

**C. Sums Advanced.** All sums advanced and expenses incurred by Lender under the terms of this Security Instrument

**4. PAYMENTS** Mortgagor agrees that all payments under the Secured Debts will be paid when due and in accordance with the terms of the Secured Debts and this Security Instrument

**5 WARRANTY OF TITLE.** Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell, and mortgage, with the power of sale, the Property  Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record

**6. PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees

   **A.** To make all payments when due and to perform or comply with all covenants

   **B** To promptly deliver to Lender any notices that Mortgagor receives from the holder.

   **C.** Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent

**7. CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due  Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment  Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument.  Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property

**8. DUE ON SALE.** Lender may, at its option, declare the entire balance of the Secured Debts to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of all or any part of the Property  This right is subject to the restrictions imposed by federal law governing the preemption of state due-on-sale laws, as applicable.

**9. WARRANTIES AND REPRESENTATIONS.** Mortgagor has the right and authority to enter into this Security Instrument.  The execution and delivery of this Security Instrument will not violate any agreement governing Mortgagor or to which Mortgagor is a party.

**10. PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary.  Mortgagor will not commit or allow any waste, impairment, or deterioration of the Property.  Mortgagor will keep the Property free of noxious weeds and grasses  Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent  Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent  Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor, and of any loss or damage to the Property

No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Mortgagor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance.  Such replacement of personal property will be deemed subject to the security interest created by this Security Instrument.  Mortgagor will not partition or subdivide the Property without Lender's prior written consent.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property.  Lender will give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection  Any inspection of the Property will be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection

**11. AUTHORITY TO PERFORM.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance.  Lender's right to perform for Mortgagor will not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument.  If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction

**12 ASSIGNMENT OF LEASES AND RENTS.** Mortgagor assigns, grants, bargains, conveys, mortgages and warrants to Lender as additional security all the right, title and interest in the following (Property)


**EXHIBIT M**

**A** Existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the non-homestead portion of the Property, including but not limited to any extensions, renewals, modifications or replacements (Leases)

**B.** Rents, issues and profits, including but not limited to security deposits, minimum rents, percentage rents, additional rents, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims which Mortgagor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property (Rents).

In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement. Mortgagor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies   The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed.   Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default.   Mortgagor will not collect in advance any Rents due in future lease periods, unless Mortgagor first obtains Lender's written consent   Upon default, Mortgagor will receive any Rents in trust for Lender and Mortgagor will not commingle the Rents with any other funds   When Lender so directs, Mortgagor will endorse and deliver any payments of Rents from the Property to Lender   Amounts collected will be applied first as set forth at Minn Stat Ann. § 576.01, Subdivision 2, and then at Lender's discretion to the Secured Debts, the costs of managing, protecting and preserving the Property, and other necessary expenses   Mortgagor agrees that this Security Instrument is immediately effective between Mortgagor and Lender and effective as to third parties on the recording of this Assignment   As long as this Assignment is in effect, Mortgagor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants   Mortgagor, at its sole cost and expense, will keep, observe and perform, and require all other parties to the Leases to comply with the Leases and any applicable law   If Mortgagor or any party to the Lease defaults or fails to observe any applicable law, Mortgagor will promptly notify Lender   If Mortgagor neglects or refuses to enforce compliance with the terms of the Leases, then Lender may, at Lender's option, enforce compliance   Mortgagor will not sublet, modify, extend, cancel, or otherwise alter the Leases, or accept the surrender of the Property covered by the Leases (unless the Leases so require) without Lender's consent. Mortgagor will not assign, compromise, subordinate or encumber the Leases and Rents without Lender's prior written consent.   Lender does not assume or become liable for the Property's maintenance, depreciation, or other losses or damages when Lender acts to manage, protect or preserve the Property, except for losses and damages due to Lender's gross negligence or intentional torts   Otherwise, Mortgagor will indemnify Lender and hold Lender harmless for all liability, loss or damage that Lender may incur when Lender opts to exercise any of its remedies against any party obligated under the Leases   This Security Instrument applies when, as additional security for the debt secured by the mortgage, it secures an original principal debt of $100,000 or more or is a lien upon residential real estate containing more than four dwelling units, and is not a lien upon Property which is entirely homesteaded as agricultural property or residential real estate containing four or fewer dwelling units where at least one of the units is homesteaded   This Security Instrument may only be enforced against the non homestead portion of the assigned Property.

**13 DEFAULT.** Mortgagor will be in default if any of the following occur:

**A. Payments**   Mortgagor or Borrower fail to make a payment in full when due

**B. Insolvency or Bankruptcy.**   Any legal entity obligated on the Secured Debts makes an assignment for the benefit of creditors or become insolvent, either because its liabilities exceed its assets or it is unable to pay its debts as they become due, or it petitions for protection under federal, state or local bankruptcy, insolvency or debtor relief laws, or is the subject of a petition or action under such laws and fails to have the petition or action dismissed within a reasonable period of time not to exceed 60 days

**C. Death or Incompetency.**   Mortgagor dies or is declared legally incompetent

**D  Failure to Perform.**   Mortgagor fails to perform any condition or to keep any promise or covenant of this Security Instrument

**E. Other Documents.**   A default occurs under the terms of any other transaction document.

**F. Other Agreements.**   Mortgagor is in default on any other debt or agreement Mortgagor has with Lender.

**G. Misrepresentation.**   Mortgagor makes any verbal or written statement or provides any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided

**H  Judgment.**   Mortgagor fails to satisfy or appeal any judgment against Mortgagor

**I  Forfeiture.**   The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change**   Mortgagor changes Mortgagor's name or assumes an additional name without notifying Lender before making such a change

**K  Property Transfer**   Mortgagor transfers all or a substantial part of Mortgagor's money or property.   This condition of default, as it relates to the transfer of the Property, is subject to the restrictions contained in the DUE ON SALE section

**L. Property Value.**   The value of the Property declines or is impaired

**M. Erosion**   Any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained by federal law

**N  Insecurity**   Lender reasonably believes that Lender is insecure



**14  REMEDIES.**  Lender may use any and all remedies Lender has under state or federal law or in any instrument evidencing or pertaining to the Secured Debts, including, without limitation, the power to sell the Property. Any amounts advanced on Mortgagor's behalf will be immediately due and may be added to the balance owing under the Secured Debts. Lender may make a claim for any and all insurance benefits or refunds that may be available on Mortgagor's default

Subject to any right to cure, required time schedules or any other notice rights Mortgagor may have under federal and state law, Lender may make all or any part of the amount owing by the terms of the Secured Debts immediately due and foreclose this Security Instrument in a manner provided by law upon the occurrence of a default or anytime thereafter

Upon default, Lender will have the right, without declaring the whole indebtedness due and payable, to foreclose against all or any part of the Property  This lien will continue as a lien on any part of the Property not sold on foreclosure.  If there is a default, Lender may, in addition to any other permitted remedy, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash and convey all right, title and interest of Mortgagor at such time and place as Lender designates.  If Lender invokes the power of sale, Lender will give notice of the sale including the time, terms and place of sale and a description of the property to be sold as required by the applicable law in effect at the time of the proposed sale

Lender will apply the proceeds of the sale in the following order  (a) to all expenses of exercising the sale, including but not limited to, reasonable attorneys' fees, (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.  Lender or its designee may purchase the Property.  If the Property is sold pursuant to this section, Mortgagor, or any person holding possession of the Property through Mortgagor, will immediately surrender possession of the Property to the purchaser at the sale.  If possession is not surrendered, Mortgagor or such person will be a tenant holding over and may be dispossessed in accordance with applicable law.

Upon any sale of the Property, Lender will make and deliver a special or limited warranty deed that conveys the property sold to the purchaser or purchasers.  Under this special or limited warranty deed, Lender will covenant that Lender has not caused or allowed a lien or an encumbrance to burden the Property and that Lender will specially warrant and defend the Property's title of the purchaser or purchasers at the sale against all lawful claims and demand of all persons claiming by, through or under Lender  The recitals in any deed of conveyance will be prima facie evidence of the facts set forth therein

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth  The acceptance by Lender of any sum in payment or partial payment on the Secured Debts after the balance is due or is accelerated or after foreclosure proceedings are filed will not constitute a waiver of Lender's right to require full and complete cure of any existing default.  By not exercising any remedy, Lender does not waive Lender's right to later consider the event a default if it continues or happens again

**15. COLLECTION EXPENSES AND ATTORNEYS' FEES.**  On or after Default, to the extent permitted by law, Mortgagor agrees to pay all expenses of collection, enforcement or protection of Lender's rights and remedies under this Security Instrument  Mortgagor agrees to pay expenses for Lender to inspect and preserve the Property and for any recordation costs of releasing the Property from this Security Instrument  Expenses include, but are not limited to, attorneys' fees, court costs and other legal expenses.  These expenses are due and payable immediately  If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of the Secured Debts.  To the extent permitted by the United States Bankruptcy Code, Mortgagor agrees to pay the reasonable attorneys' fees Lender incurs to collect the Secured Debts as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**16. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.**  As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U S.C  9601 et seq ), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance, and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment  The term includes, without limitation, any substances defined as "hazardous material," "toxic substance," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law

Mortgagor represents, warrants and agrees that

**A.** Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law

**B.** Except as previously disclosed and acknowledged in writing to Lender, Mortgagor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property

**C.** Mortgagor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property, or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor will take all necessary remedial action in accordance with Environmental Law.

**D** Except as previously disclosed and acknowledged in writing to Lender, Mortgagor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Mortgagor or any tenant of any Environmental Law.  Mortgagor will immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any such pending or threatened investigation, claim, or proceeding

EXHIBIT M

In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings

**E.** Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are and will remain in full compliance with any applicable Environmental Law.

**F.** Except as previously disclosed and acknowledged in writing to Lender, there are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing

**G.** Mortgagor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with

**H** Mortgagor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property, (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property, or (3) whether or not Mortgagor and any tenant are in compliance with applicable Environmental Law

**I** Upon Lender's request and at any time, Mortgagor agrees, at Mortgagor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender  The choice of the environmental engineer who will perform such audit is subject to Lender's approval

**J.** Lender has the right, but not the obligation, to perform any of Mortgagor's obligations under this section at Mortgagor's expense.

**K.** As a consequence of any breach of any representation, warranty or promise made in this section, (1) Mortgagor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain, and (2) at Lender's discretion, Lender may release this Security Instrument and in return Mortgagor will provide Lender with collateral of at least equal value to the Property secured by this Security Instrument without prejudice to any of Lender's rights under this Security Instrument

**L.** Notwithstanding any of the language contained in this Security Instrument to the contrary, the terms of this section will survive any foreclosure or satisfaction of this Security Instrument regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property.  Any claims and defenses to the contrary are hereby waived

**17. CONDEMNATION.** Mortgagor will give Lender prompt notice of any pending or threatened action by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means  Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims.  Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property  Such proceeds will be considered payments and will be applied as provided in this Security Instrument.  This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document

**18. INSURANCE**  Mortgagor agrees to keep the Property insured against the risks reasonably associated with the Property.  Mortgagor will maintain this insurance in the amounts Lender requires.  This insurance will last until the Property is released from this Security Instrument  What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debts  Mortgagor may choose the insurance company, subject to Lender's approval, which will not be unreasonably withheld

All insurance policies and renewals will include a standard "mortgage clause" and, where applicable, "loss payee clause."  If required by Lender, Mortgagor agrees to maintain comprehensive general liability insurance and rental loss or business interruption insurance in amounts and under policies acceptable to Lender  The comprehensive general liability insurance must name Lender as an additional insured  The rental loss or business interruption insurance must be in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing )

Mortgagor will give Lender and the insurance company immediate notice of any loss  All insurance proceeds will be applied to restoration or repair of the Property or to the Secured Debts, at Lender's option.  If Lender acquires the Property in damaged condition, Mortgagor's rights to any insurance policies and proceeds will pass to Lender to the extent of the Secured Debts

Mortgagor will immediately notify Lender of cancellation or termination of insurance  If Mortgagor fails to keep the Property insured Lender may obtain insurance to protect Lender's interest in the Property  This insurance may include coverages not originally required of Mortgagor, may be written by a company other than one Mortgagor would choose, and may be written at a higher rate than Mortgagor could obtain if Mortgagor purchased the insurance.

**19. ESCROW FOR TAXES AND INSURANCE**  Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

**20 CO-SIGNERS.** If Mortgagor signs this Security Instrument but does not sign the Secured Debts, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debts and Mortgagor does not agree to be personally liable on the Secured Debts  If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation  These rights may include, but are not limited to, any anti-deficiency or one-action laws

Brandon Buehring
Minnesota **Mortgage**
MN/4janewsom00725200004363011111904Y
©1996 Bankers Systems, Inc , St Cloud, MN Expere
Initials DB JB
Page 5

EXHIBIT M

**21  WAIVERS.** Except to the extent prohibited by law, Mortgagor waives all homestead exemption rights relating to the Property

**22. APPLICABLE LAW.** This Security Instrument is governed by the laws of Minnesota, except to the extent otherwise required by the laws of the jurisdiction where the Property is located, and the United States of America

**23  JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS** Each Mortgagor's obligations under this Security Instrument are independent of the obligations of any other Mortgagor   Lender may sue each Mortgagor individually or together with any other Mortgagor   Lender may release any part of the Property and Mortgagor will still be obligated under this Security Instrument for the remaining Property   The duties and benefits of this Security Instrument will bind and benefit the successors and assigns of Lender and Mortgagor

**24  AMENDMENT, INTEGRATION AND SEVERABILITY** This Security Instrument may not be amended or modified by oral agreement. No amendment or modification of this Security Instrument is effective unless made in writing and executed by Mortgagor and Lender  This Security Instrument is the complete and final expression of the agreement  If any provision of this Security Instrument is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable

**25  INTERPRETATION** Whenever used  the singular includes the plural and the plural includes the singular The section headings are for convenience only and are not to be used to interpret or define the terms of this Security Instrument

**26. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law  any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one party will be deemed to be notice to all parties   Mortgagor will inform Lender in writing of any change in Mortgagor's name, address or other application information   Mortgagor will provide Lender any financial statements or information Lender requests   All financial statements and information Mortgagor gives Lender will be correct and complete  Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and to confirm Lender's lien status on any Property   Time is of the essence.

**SIGNATURES.** By signing, Mortgagor agrees to the terms and covenants contained in this Security Instrument Mortgagor also acknowledges receipt of a copy of this Security Instrument

MORTGAGOR:

_Nickolas Buehring (signature)_
Nickolas   Buehring
Individually

_Diane Buehring (signature)_
Diane  Buehring
Individually

**ACKNOWLEDGMENT.**
**(Individual)**

_State_ OF _Minnesota_ _County_ OF _Pine_ ss
This instrument was acknowledged before me this _19_ day of _November_ _2004_
by Nickolas   Buehring , spouse of Diane Buehring, and Diane   Buehring , spouse of Nicholas Buehring
My commission expires _1/31/05_        _(signature)_
                                    (Notary Public)

PATRICK A THIRY
Notary Public
Minnesota
My Commission Expires January 31 2005

This instrument was drafted by City Title, Inc , 600 Hillside Avenue SW, Pine City, Minnesota 55063

EXHIBIT M

Per regulations under Minnesota Statutes section 273 13, subdivision 23, paragraph (a), clause (1), Pine City State Bank certifies that Nickolas Buehring and Diane Buehring executed a mortgage to Pine City State Bank in the amount of $465,000 00 dated November 19, 2004   The purpose was to refinance existing agricultural debt in the amount of $430,954 97 The balance of $34,045 03 will be used to improve their facilities for agricultural purposes  Therefore pursuant to statues $465,000 00 is exempt from mortgage registry tax

_____
Nickolas Buehring

_____
Diane Buehring

PATRICK A THIRY
Notary Public
Minnesota
My Comm. Expires January 31 2005

Pine City State Bank

_____
Patrick A  Thiry Vice President

EXHIBIT M

**Parcel A: NE 1/4 of SW 1/4 and SW 1/4 of SE 1/4, Section 13, Township 37, Range 22; AND the NE 1/4 of NE 1/4 of Section 24, Township 37, Range 22, Chisago County, Minnesota, described as follows:**

**EXCEPTION:**
**Commencing at the northeast corner of said Section 24;thence on an assumed bearing of South 0 degrees 00 minutes 17 seconds West, along the East line of said Section 24, a distance of 850.07 feet; thence South 80 degrees 24 minutes 45 seconds West, 672.76 feet to the point of beginning of the tract herein described;thence continuing on a bearing of South 80 degrees 24 minutes 45 seconds West, 390.14 feet;thence North 5 degrees 52 minutes 03 seconds West, 315.69 feet; thence North 89 degrees 45 minutes 13 seconds West 185.38 feet to the West line of said Northeast Quarter of the Northeast Quarter; thence South 0 degrees 08 minutes 15 seconds East, along last said line 601.45 feet; thence North 80 degrees 24 minutes 45 seconds East 610.00 feet; thence North 0 degrees 08 minutes 15 seconds West 250.00 feet to the point of beginning..**

**Parcel B: SW 1/4 of SW 1/4 of Section 18, Township 37, Range 21, EXCEPT the South 2 rods thereof.**

**Parcel C: N 1/2 of SE 1/4 of Section 13, Township 37, Range 22.**

EXHIBIT M

**OFFICE OF COUNTY RECORDER**
Chisago County, Minnesota

I hereby certify that this document was filed in this office
on  4/16/2010  at  11:36:00 AM    and was duly
recorded as document number A-520800
    LEE OLSON-County Recorder, by____Deputy.
                                                    __p
Well Certificate: ___ Received ___ Not Required

Fees:
 REC'G COMPLIANCE FUND  $11.00
  STATE GENERAL FUND  10.50
  TECHNOLOGY FUND  10.00
  GENERAL ABSTRACT  14.50
       Total $46.00

Recording Requested By/Return To:
Stearns Bank N.A
Attn: Julie Forrest
600 Hillside Ave SW
Pine City, MN 55063

Prepared By: Julie Forrest
Stearns Bank, N. A.
600 Hillside Ave SW
Pine City, MN 55063

NOTE# B89'

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of Mortgage (herein "Assignor") whose address is 1601 Bryan Street, Dallas, Texas 75201, does hereby grant, sell, assign, transfer and convey effective as of June 26, 2009, unto Stearns Bank, N.A. its successors and assigns (herein "Assignee"), whose address is 4191 2nd Street South, St. Cloud, MN 56301, a certain Mortgage dated November 19, 2004 made and executed by, Nickolas Buehring aka Nicholas Buehring, and Diane Buehring, Husband and Wife in favor of Horizon Bank, Pine City, Minnesota, such Mortgage having been given to secure payment of $465,000.00 (Original Principal Amount), which Mortgage i_____ in Instrument No.A-440474 of the Official Records of Chisago County, State of Minnesota, together with the note(s) and obligations therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under Mortgage

TO HAVE AND TO HOLD the same unto Assignee, its successors and assigns, forever, subject only to the Terms and conditions of the above-described Mortgage.

THIS ASSIGNMENT IS MADE WITHOUT RECOURSE, REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, WRITTEN OR ORAL, BY THE FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR HORIZON BANK,. THE LOAN SECURED BY THE MORTGAGE, AS ASSIGNED AND MODIFIED, IS CONVEYED "AS IS" AND "WITH ALL FAULTS," WITHOUT ANY REPRESENTATION OR WARRANTY WHATSOEVER, INCLUDING AS TO COLLECTIBILITY, ENFORCEABILITY, VALUE OF COLLATERAL, ABILITY OF ANY OBLIGOR TO REPAY, CONDITION, FITNESS FOR ANY PARTICULAR PURPOSE MERCHANTABILITY OR ANY OTHER WARRANTY, EXPRESS OR IMPLIED, BY ANY PERSON, INCLUDING THE FDIC OR ITS OFFICERS, EMPLOYEES, AGENTS OR CONTRACTORS.

**EXHIBIT M**

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment Mortgage on April 13, 2010.

ASSIGNOR:
FEDERAL DEPOSIT INSURANCE CORPORATION AS
RECEIVER FOR HORIZON BANK, PINE CITY, MINNESOTA

By: _____

Name:   Nancy H. Kubasek
Its:     Attorney-In-Fact

**ACKNOWLEDGMENT**

State of ___MN___
County of ___Stearns___

The foregoing instrument was acknowledged before me this April 13, 2010 by Nancy Kubasek the Attorney-in-Fact for FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR HORIZON BANK, PINE CITY, MINNESOTA.

(SEAL)

JENNIFER MARIE ZIERDEN
Notary Public-Minnesota
My Commission Expires Jan 31, 2014

NOTARY PUBLIC

My Commission Expires: 1/31/14

Received from/return to:
STEARNS BANK
600 HILLSIDE AVE SW
PO BOX 49
PINE CITY, MN 55063- 0049

A-520800

EXHIBIT M

Office of County Recorder                        Fee     4
Chisago County, Minnesota                        Pages:  3
Certified, filed and/or Recorded on: November 20, 2019 9:33

Janet R. Converse, County Recorder               Doc

Well Certificate [   ] Received                  A6245

Received from:      UNITY BANK
Returned To:        UNITY BANK
                    PO BOX 604
                    1180 W 4TH ST
                    RUSH CITY, MN 55069 - 0000

*Reserved for Recording Information*

**Recording Prepared By:**          **Return To:**
Stearns Bank N.A.
4191 2ⁿᵈ Street South               UNITY BANK                    **(NOTE# 3897)**
St. Cloud, MN 56301                 1180 WEST 4TH STREET
                                    PO BOX 604
                                    RUSH CITY, MN 55069

### ASSIGNMENT OF MORTGAGE

For Value Received, **Stearns Bank National Association**, ("Assignor") whose address is 4191 2ⁿᵈ Street South, St. Cloud, MN 56301, does hereby grant, sell, assign, transfer and convey and set over, unto **Unity Bank**, (herein "Assignee"), whose address is 1180 W 4ᵗʰ Street, Rush City, MN 55069, all of its right, title and interest in to that certain **Mortgage** dated November 19, 2004 executed by Nickolas Buehring and Diane Buehring as Mortgagor and Horizon Bank, f/k/a Pine City State Bank, as Lender and recorded with the Office of the County Recorder of Chisago County on November 30, 2004 as Document Number A-440474 and assigned to the Assignor in that certain **Assignment of Mortgage** dated June 26, 2009 and recorded with the Office of the County Recorder of Chisago County on April 16, 2010 as Document Number A-520800, and was subsequently corrected by virtue of a **Mortgage** dated April 18, 2012 and recorded with the Office of the County Recorder of Chisago County on April 18, 2012 as Document Number A-543497 ("Mortgage"), and which Mortgage encumbers the property more particularly described therein, together with any and all amendments, modifications, renewals and extensions, and together with all indebtedness currently due and to become due under the terms of any promissory note, evidence of indebtedness and claims secured thereby upon the following described piece or parcel of land, situate and being in said County and State, to wit:

*See Exhibit A for Property Description*

In addition to the instrument described above, Stearns Bank National Association hereby assigns all of its right, title and interest in and to any and all notes, evidences of indebtedness, collateral, liens, security interests (real, personal and mixed property), loan documents and any other instrument that Stearns Bank National Association has an interest in with respect to the Mortgage and loan described above, together with all rights to payments and proceeds therefrom. Assignor directs all future payments under the mortgage and note, be made to Assignee.

EXHIBIT M

EXCEPT AS OTHERWISE AGREED TO IN THE ASSIGNMENT AGREEMENT EXECUTED ON OCTOBER 30, 2019 BETWEEN ASSIGNOR AND ASSIGNEE, THIS ASSIGNMENT IS MADE WITHOUT RECOURSE, REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, WRITTEN OR ORAL, BY STEARNS BANK NATIONAL ASSOCIATION. THE LOAN SECURED BY THE MORTGAGE, AS ASSIGNED AND MODIFIED IS CONVEYED "AS IS" AND "WITH ALL FAULTS" WITHOUT ANY REPRESENTATION OR WARRANTY WHATSOEVER, INCLUDING AS TO COLLECTIBILITY, ENFORCEABILITY, VALUE OF COLLATERAL, ABILITY OF ANY OBLIGOR TO REPAY, CONDITION, FITNESS FOR ANY PARTICULAR PURPOSE MERCHANTABILITY OR ANY OTHER WARRANTY, EXPRESS OR IMPLIED, BY ANY PERSON, INCLUDING THE FDIC OR ITS OFFICERS, EMPLOYEES, AGENTS OR CONTRACTORS.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on October 31, 2019.

**STEARNS BANK NATIONAL ASSOCIATION**
**a national banking association**

By: _____

Witness

Name: Steve Domine

Witness

Its: Senior Vice President

STATE OF MINNESOTA    )
                      ) ss
COUNTY OF STEARNS     )

The foregoing instrument was acknowledgement before me this 6th day of October 2019, by Steve Domine the Senior Vice President of Stearns Bank National Association, a national banking association on behalf of the Bank.

[Notary Stamp]

Notary Public
My Commission Expires: 1-31-24

DAWN M. BROUILLET
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2024

EXHIBIT M

**EXHIBIT A**


PARCEL A: NE 1/4 OF SW 1/4 AND SW 1/4 OF SE 1/4, SECTION 13, TOWNSHIP 37, RANGE 22; AND THE NE 1/4 OF NE 1/4 OF SECTION 24, TOWNSHIP 37, RANGE 22, CHISAGO COUNTY, MINNESOTA, DESCRIBED AS FOLLOWS:

EXCEPTION:

COMMENCING AT THE NORTHEAST CORNER OF SAID SECTION 24; THENCE ON AN ASSUMED BEARING OF SOUTH 0 DEGREES 00 MINUTES 17 SECONDS WEST, ALONG THE EAST LINE OF SAID SECTION 24, A DISTANCE OF 850.07 FEET; THENCE SOUTH 80 DEGREES 24 MINUTES 45 SECONDS WEST, 672.76 FEET TO THE POINT OF BEGINNING OF THE TRACT HEREIN DESCRIBED; THENCE CONTINUING ON A BEARING OF SOUTH 80 DEGREES 24 MINUTES 45 SECONDS WEST 390.14 FEET; THENCE NORTH 5 DEGREES 52 MINUTES 03 SECONDS WEST, 315.69 FEET; THENCE NORTH 89 DEGREES 45 MINUTES 13 SECONDS WEST 185.38 FEET TO THE WEST LINE OF SAID NORTHEAST QUARTER OF THE NORTHEAST QUARTER; THENCE SOUTH 0 DEGREES 08 MINUTES 15 SECONDS EAST. ALONG THE LAST SAID LINE 601.45 FEET; THENCE NORTH 80 DEGREES 24 MINUTES 45 SECONDS EAST 610.00 FEET; THENCE NORTH 0 DEGREES 08 MINUTES 15 SECONDS WEST 250.00 FEET TO THE POINT OF BEGINNING.

PARCEL B: SW 1/4 OF NW 1/4 OF SECTION 18, TOWNSHIP 37, RANGE 21, EXCEPT THE SOUTH 2 RODS THEREOF.

PARCEL C: N 1/2 OF SE 1/4 OF SECTION 13, TOWNSHIP 37, RANGE 22.

The Real Property or its address is commonly known as 51100 DRIFTWOOD AVENUE, RUSH CITY, MN 55069. The Real Property tax identification number is 06.00532.00, 06.00269.00, 06.00050.00, & 06.00271.00.

EXHIBIT M



**Tax Information**

**Parcel Number:** 06.00269.00                                                                                          **Payable Year:** 2020

**Property Address**            **Tax Roll Type:** Real Property
51100 DRIFTWOOD AVE RUSH CITY       **Jurisdiction:** NESSEL TOWNSHIP
                                **School District:** SCHOOL DISTRICT 139

 Print Bill     Print Valuation     Lookup Parcel in GIS

**Identification Information**

Primary Taxpayer/Owner

BUEHRING PROPERTIES LLC
4070 RUSH LAKE RD
RUSH CITY MN 55069

**Escrow Information:**
**Property Description For Tax Purpose Only (Note: Legal Description of your property may differ):**
NE 1/4 OF SW 1/4 EXCEPT THE S 450 FT. SW 1/4 OF SE 1/4.

**Section:** 13   **Township:** 037   **Range:** 022
**Lot:**        **Block:**          **Plat Name:**

Real Estate and Personal Property Taxes are determined using the previous year assessment value. Mobile Home Taxes are determined using the current year assessment value.

**Property Classification:** 2AHGA-Agricultural Homestead - HGA

| Assessment Year: 2019 | | Payable Year: 2020 | | Assessment Year: 2020 | |
|---|---|---|---|---|---|
| | | Total Tax | $2,156.56 | | |
| | | **Special Assessments:** | | | |
| Est. Market Value - Total | $395,300.00 | D-Ditch#8 | $29.44 | Proposed Est. Market Value - Total | $409,300 |
| Taxable Market Total | $367,300.00 | Waste Mgt Fee | $10.00 | Proposed Taxable Market Total | $382,500 |
| | | Total Tax/Asmts. | $2,196.00 | | |

**Tax Year: 2020** | **Delinquents**

| Installments | Due Date | Tax Amount | Penalty/Fee | Interest | Total Due |
|---|---|---|---|---|---|
| Taxes/Assessments 1st Half | May 15 | $1,098.00 | $0.00 | $0.00 | $ |
| Taxes/Assessments 2nd Half | November 16 | $1,098.00 | $0.00 | $0.00 | $1,09 |
| | | ONLINE PAY | | **Total Due:** | **$1,09** |

*Total Tax/Asmts./Balance Due/Paid to Date does not include any fees, interest and/or penalties that may apply.
**Additional reductions in taxable value may apply due to special tax deferrals, This Old House, Plat Laws, etc.
This data is typically refreshed every night, however, transaction or changes that occur today (during a normal work week of Monday - Friday) may not appear on this site for 48 hours or more.
Property Search | Frequent Questions | Glossary | County Website | Disclaimer | Contact Chisago County | Print Bill

EXHIBIT N



**Tax Information**

| **Parcel Number:** 06.00532.00 | | **Payable Year:** 2020 |

| **Property Address** | **Tax Roll Type:** Real Property<br>**Jurisdiction:** NESSEL TOWNSHIP<br>**School District:** SCHOOL DISTRICT 139 |  Print Bill |  Print Valuation |  Lookup Parcel in GIS |

**Identification Information**

**Primary Taxpayer/Owner**

BUEHRING PROPERTIES LLC
4070 RUSH LAKE RD
RUSH CITY MN 55069

**Escrow Information:**

**Property Description For Tax Purpose Only (Note: Legal Description of your property may differ):**
NE1/4 OF NE1/4. EXCEPT THAT PT OF NE 1/4 OF NE 1/4 DESC AS FOL: COMM AT NE COR OF SAID SEC 24; TH ON AN ASSUM BEARING OF S0D 00'17

**Section:** 24    **Township:** 037    **Range:** 022
**Lot:**              **Block:**              **Plat Name:**

Real Estate and Personal Property Taxes are determined using the previous year assessment value. Mobile Home Taxes are determined using the current year assessment value.

**Property Classification:** 2AREM-Agricultural Homestead - Remainder

| **Assessment Year: 2019** | | **Payable Year: 2020** | | **Assessment Year: 2020** | |
|---|---|---|---|---|---|
| | | Total Tax | $251.30 | | |
| Est. Market Value - Total | $78,200.00 | **Special Assessments:** | | Proposed Est. Market Value - Total | $86,200. |
| Taxable Market Total | $50,300.00 | D-Ditch#8 | $20.70 | Proposed Taxable Market Total | $50,300. |
| | | Total Tax/Asmts. | $272.00 | | |

| **Tax Year: 2020** | **Delinquents** | | | | |
|---|---|---|---|---|---|
| Installments | Due Date | Tax Amount | Penalty/Fee | Interest | Total Due |
| Taxes/Assessments 1st Half | May 15 | $136.00 | $0.00 | $0.00 | $ |
| Taxes/Assessments 2nd Half | November 16 | $136.00 | $0.00 | $0.00 | $13 |

ONLINE PAY

**Total Due:** **$13**

*Total Tax/Asmts./Balance Due/Paid to Date does not include any fees, interest and/or penalties that may apply.
**Additional reductions in taxable value may apply due to special tax deferrals, This Old House, Plat Laws, etc.
This data is typically refreshed every night, however, transaction or changes that occur today (during a normal work week of Monday - Friday) may not appear on this site for 48 hours or more.

Property Search | Frequent Questions | Glossary | County Website | Disclaimer | Contact Chisago County | Print Bill



**Tax Information**

| | |
|---|---|
| **Parcel Number:** 06.00050.00 | **Payable Year:** 2020 |

| | | | |
|---|---|---|---|
| **Property Address** | **Tax Roll Type:** Real Property<br>**Jurisdiction:** NESSEL TOWNSHIP<br>**School District:** SCHOOL DISTRICT 139 |  Print Bill    Print Valuation |  Lookup Parcel in GIS |

**Identification Information**

**Primary Taxpayer/Owner**

BUEHRING PROPERTIES LLC
4070 RUSH LAKE RD
RUSH CITY MN 55069

**Escrow Information:**
**Property Description For Tax Purpose Only (Note: Legal Description of your property may differ):**
SW1/4 OF NW1/4 EX 2 RD ON S SIDE

**Section:** 18    **Township:** 037    **Range:** 021
**Lot:**    **Block:**    **Plat Name:**

Real Estate and Personal Property Taxes are determined using the previous year assessment value. Mobile Home Taxes are determined using the current year assessment value.

**Property Classification:** 2AREM-Agricultural Homestead - Remainder

| Assessment Year: 2019 | | Payable Year: 2020 | | Assessment Year: 2020 | |
|---|---|---|---|---|---|
| Est. Market Value - Total | $99,600.00 | Total Tax | $364.60 | Proposed Est. Market Value - Total | $107,600 |
| Taxable Market Total | $73,100.00 | **Special Assessments:** | | Proposed Taxable Market Total | $73,100 |
| | | D-Ditch#8 | $63.40 | | |
| | | Total Tax/Asmts. | $428.00 | | |

| Tax Year: 2020 | Delinquents | | | | | |
|---|---|---|---|---|---|---|
| Installments | | Due Date | Tax Amount | Penalty/Fee | Interest | Total Due |
| Taxes/Assessments 1st Half | | May 15 | $214.00 | $0.00 | $0.00 | $ |
| Taxes/Assessments 2nd Half | | November 16 | $214.00 | $0.00 | $0.00 | $21 |
| | | | | ONLINE PAY | **Total Due:** | **$21** |

*Total Tax/Asmts./Balance Due/Paid to Date does not include any fees, interest and/or penalties that may apply.
**Additional reductions in taxable value may apply due to special tax deferrals, This Old House, Plat Laws, etc.
This data is typically refreshed every night, however, transaction or changes that occur today (during a normal work week of Monday - Friday) may not appear on this site for 48 hours or more.
Property Search | Frequent Questions | Glossary | County Website | Disclaimer | Contact Chisago County | Print Bill



## Tax Information

**Parcel Number:** 06.00271.00                                                                 **Payable Year:** 2020

**Property Address**
**Tax Roll Type:** Real Property
**Jurisdiction:** NESSEL TOWNSHIP
**School District:** SCHOOL DISTRICT 139

 Print Bill     Print Valuation     Lookup Parcel in GIS

**Identification Information**

Primary Taxpayer/Owner

BUEHRING PROPERTIES LLC
4070 RUSH LAKE RD
RUSH CITY MN 55069

**Escrow Information:**
**Property Description For Tax Purpose Only (Note: Legal Description of your property may differ):**
N1/2 OF SE1/4

**Section:** 13    **Township:** 037    **Range:** 022
**Lot:**    **Block:**    **Plat Name:**

Real Estate and Personal Property Taxes are determined using the previous year assessment value. Mobile Home Taxes are determined using the current year assessment value.

**Property Classification:** 2AREM-Agricultural Homestead - Remainder

| Assessment Year: 2019 | | Payable Year: 2020 | | Assessment Year: 2020 | |
|---|---|---|---|---|---|
| | | Total Tax | $2,369.66 | | |
| | | **Special Assessments:** | | | |
| Est. Market Value - Total | $254,300.00 | D-Ditch#8 | $54.34 | Proposed Est. Market Value - Total | $262,300 |
| Taxable Market Total | $228,400.00 | Total Tax/Asmts. | $2,424.00 | Proposed Taxable Market Total | $228,400 |

| Tax Year: 2020 | Delinquents | | | | | |
|---|---|---|---|---|---|---|
| Installments | Due Date | Tax Amount | Penalty/Fee | Interest | Total Due |
| Taxes/Assessments 1st Half | May 15 | $1,212.00 | $0.00 | $0.00 | $ |
| Taxes/Assessments 2nd Half | November 16 | $1,212.00 | $0.00 | $0.00 | $1,21 |

ONLINE PAY    **Total Due:**    **$1,21**

*Total Tax/Asmts./Balance Due/Paid to Date does not include any fees, interest and/or penalties that may apply.
**Additional reductions in taxable value may apply due to special tax deferrals, This Old House, Plat Laws, etc.
This data is typically refreshed every night, however, transaction or changes that occur today (during a normal work week of Monday - Friday) may not appear on this site for 48 hours or more.
Property Search | Frequent Questions | Glossary | County Website | Disclaimer | Contact Chisago County | Print Bill


**Chisago County**
MINNESOTA

**Tax Information**

**Parcel Number:** 06.00272.10                                                                              **Payable Year:** 2020

**Property Address**     **Tax Roll Type:** Real Property
                         **Jurisdiction:** NESSEL TOWNSHIP
                         **School District:** SCHOOL DISTRICT 139

 Print Bill      Print Valuation      Lookup Parcel in GIS

**Identification Information**

**Primary Taxpayer/Owner**

BUEHRING PROPERTIES LLC
4070 RUSH LAKE RD
RUSH CITY MN 55069

**Escrow Information:**
**Property Description For Tax Purpose Only (Note: Legal Description of your property may differ):**
W 1/2 OF SE 1/4 OF SE 1/4

**Section:** 13    **Township:** 037    **Range:** 022
**Lot:**            **Block:**            **Plat Name:**

Real Estate and Personal Property Taxes are determined using the previous year assessment value. Mobile Home Taxes are determined using the current year assessment value.

**Property Classification:** 2AREM-Agricultural Homestead - Remainder

| Assessment Year: 2019 | | Payable Year: 2020 | | Assessment Year: 2020 | |
|---|---|---|---|---|---|
| Est. Market Value - Total | $67,600.00 | Total Tax | $208.00 | Proposed Est. Market Value - Total | $75,600. |
| Taxable Market Total | $41,700.00 | **Special Assessments:** | | Proposed Taxable Market Total | $41,700. |
| | | Total Tax/Asmts. | $208.00 | | |

| Tax Year: 2020 | Delinquents |
|---|---|

| Installments | Due Date | Tax Amount | Penalty/Fee | Interest | Total Due |
|---|---|---|---|---|---|
| Taxes/Assessments 1st Half | May 15 | $104.00 | $0.00 | $0.00 | $ |
| Taxes/Assessments 2nd Half | November 16 | $104.00 | $0.00 | $0.00 | $10 |
| | | ONLINE PAY | | **Total Due:** | **$10** |

*Total Tax/Asmts./Balance Due/Paid to Date does not include any fees, interest and/or penalties that may apply.
**Additional reductions in taxable value may apply due to special tax deferrals, This Old House, Plat Laws, etc.
This data is typically refreshed every night, however, transaction or changes that occur today (during a normal work week of Monday - Friday) may not appear on this site for 48 hours or more.
Property Search | Frequent Questions | Glossary | County Website | Disclaimer | Contact Chisago County | Print Bill



**Tax Information**

**Parcel Number:** 06.00260.00                                                                 **Payable Year:** 2020

| Property Address | **Tax Roll Type:** Real Property | | |
|---|---|---|---|
| | **Jurisdiction:** NESSEL TOWNSHIP |  Print Bill |  Print Valuation |  Lookup Parcel in GIS |
| | **School District:** SCHOOL DISTRICT 139 | | |

**Identification Information**

**Primary Taxpayer/Owner**

BUEHRING PROPERTIES LLC
4070 RUSH LAKE RD
RUSH CITY MN 55069

**Escrow Information:**

**Property Description For Tax Purpose Only (Note: Legal Description of your property may differ):**
SE1/4 OF SE1/4

**Section:** 12    **Township:** 037    **Range:** 022
**Lot:**          **Block:**          **Plat Name:**

Real Estate and Personal Property Taxes are determined using the previous year assessment value. Mobile Home Taxes are determined using the current year assessment value.

**Property Classification:** 2ANHGA-Agricultural Non-homestead - Non HGA

| Assessment Year: 2019 | | Payable Year: 2020 | | Assessment Year: 2020 | |
|---|---|---|---|---|---|
| | | Total Tax | $884.30 | | |
| Est. Market Value - Total | $114,800.00 | **Special Assessments:** | | Proposed Est. Market Value - Total | $122,800 |
| Taxable Market Total | $88,900.00 | D-Ditch#8 | $9.70 | Proposed Taxable Market Total | $88,900 |
| | | Total Tax/Asmts. | $894.00 | | |

| Tax Year: 2020 | Delinquents | | | | |
|---|---|---|---|---|---|
| Installments | Due Date | Tax Amount | Penalty/Fee | Interest | Total Due |
| Taxes/Assessments 1st Half | May 15 | $447.00 | $0.00 | $0.00 | $ |
| Taxes/Assessments 2nd Half | November 16 | $447.00 | $0.00 | $0.00 | $44 |

ONLINE PAY                                                           **Total Due:**    **$44**

*Total Tax/Asmts./Balance Due/Paid to Date does not include any fees, interest and/or penalties that may apply.
**Additional reductions in taxable value may apply due to special tax deferrals, This Old House, Plat Laws, etc.
This data is typically refreshed every night, however, transaction or changes that occur today (during a normal work week of Monday - Friday) may not appear on this site for 48 hours or more.
Property Search | Frequent Questions | Glossary | County Website | Disclaimer | Contact Chisago County | Print Bill



**Tax Information**

**Parcel Number:** 06.00261.00        **Payable Year:** 2020

| | |
|---|---|
| **Property Address** | **Tax Roll Type:** Real Property |
| 51765 ELMCREST AVE RUSH CITY | **Jurisdiction:** NESSEL TOWNSHIP |
| | **School District:** SCHOOL DISTRICT 139 |

 Print Bill     Print Valuation     Lookup Parcel in GIS

**Identification Information**

**Primary Taxpayer/Owner**

BUEHRING PROPERTIES LLC
4070 RUSH LAKE RD
RUSH CITY MN 55069

**Escrow Information:**
**Property Description For Tax Purpose Only (Note: Legal Description of your property may differ):**
E1/2 OF NE1/4

**Section:** 13   **Township:** 037   **Range:** 022
**Lot:**   **Block:**   **Plat Name:**

Real Estate and Personal Property Taxes are determined using the previous year assessment value. Mobile Home Taxes are determined using the current year assessment value.

**Property Classification:** 2ANHGA-Agricultural Non-homestead - Non HGA

| Assessment Year: 2019 | | Payable Year: 2020 | | Assessment Year: 2020 | |
|---|---|---|---|---|---|
| Est. Market Value - Total | $207,500.00 | Total Tax | $2,229.21 | Proposed Est. Market Value - Total | $217,700 |
| Taxable Market Total | $207,500.00 | **Special Assessments:** | | Proposed Taxable Market Total | $217,700 |
| | | D-Ditch#8 | $28.79 | | |
| | | Total Tax/Asmts. | $2,258.00 | | |

| Tax Year: 2020 | Delinquents | | | | | |
|---|---|---|---|---|---|---|
| Installments | | Due Date | Tax Amount | Penalty/Fee | Interest | Total Due |
| Taxes/Assessments 1st Half | | May 15 | $1,129.00 | $0.00 | $0.00 | $ |
| Taxes/Assessments 2nd Half | | November 16 | $1,129.00 | $0.00 | $0.00 | $1,12 |

<span style="color:red">ONLINE PAY</span>      **Total Due:** **$1,12**

*Total Tax/Asmts./Balance Due/Paid to Date does not include any fees, interest and/or penalties that may apply.
**Additional reductions in taxable value may apply due to special tax deferrals, This Old House, Plat Laws, etc.
This data is typically refreshed every night, however, transaction or changes that occur today (during a normal work week of Monday - Friday) may not appear on this site for 48 hours or more.
Property Search | Frequent Questions | Glossary | County Website | Disclaimer | Contact Chisago County | Print Bill



## Tax Information

**Parcel Number:** 06.00533.15                                                                                                              **Payable Year:** 2020

| | |
|---|---|
| **Property Address** | **Tax Roll Type:** Real Property |
| | **Jurisdiction:** NESSEL TOWNSHIP |
| | **School District:** SCHOOL DISTRICT 139 |

 Print Bill    Print Valuation   Lookup Parcel in GIS

### Identification Information

**Primary Taxpayer/Owner**

BUEHRING PROPERTIES LLC
4070 RUSH LAKE RD
RUSH CITY MN 55069

**Escrow Information:**

**Property Description For Tax Purpose Only (Note: Legal Description of your property may differ):**
THAT PT OF NW1/4 OF NE1/4 IN SEC 24 DES AS FOL: COMM AT N 1/4 COR; TH 92 D 15'40" ASSUMED AZIMUTH FROM N ALONG N LINE OF NE 1/4 6

**Section:** 24   **Township:** 037   **Range:** 022
**Lot:**   **Block:**   **Plat Name:**

Real Estate and Personal Property Taxes are determined using the previous year assessment value. Mobile Home Taxes are determined using the current year assessment value.

**Property Classification:** 2AREM-Agricultural Homestead - Remainder

| Assessment Year: 2019 | | Payable Year: 2020 | | Assessment Year: 2020 | |
|---|---|---|---|---|---|
| | | Total Tax | $94.53 | | |
| Est. Market Value - Total | $55,500.00 | **Special Assessments:** | | Proposed Est. Market Value - Total | $63,500. |
| Taxable Market Total | $29,600.00 | D-Ditch#8 | $13.47 | Proposed Taxable Market Total | $29,600. |
| | | Total Tax/Asmts. | $108.00 | | |

| Tax Year: 2020 | Delinquents | | | | |
|---|---|---|---|---|---|
| Installments | Due Date | Tax Amount | Penalty/Fee | Interest | Total Due |
| Taxes/Assessments 1st Half | May 15 | $54.00 | $0.00 | $0.00 | $ |
| Taxes/Assessments 2nd Half | November 16 | $54.00 | $0.00 | $0.00 | $5 |

ONLINE PAY                                                        **Total Due:**        **$5**

*Total Tax/Asmts./Balance Due/Paid to Date does not include any fees, interest and/or penalties that may apply.
**Additional reductions in taxable value may apply due to special tax deferrals, This Old House, Plat Laws, etc.
This data is typically refreshed every night, however, transaction or changes that occur today (during a normal work week of Monday - Friday) may not appear on this site for 48 hours or more.
Property Search | Frequent Questions | Glossary | County Website | Disclaimer | Contact Chisago County | Print Bill

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

Buehring Properties, LLC,                                      Chapter 12
                                                              Case No. BKY 20-31858 MER

           Debtor.

_____

### UNSWORN DECLARATION FOR PROOF OF SERVICE

The undersigned, being an employee of Greenstein Sellers PLLC, declares that on the date indicated below, I served the attached Notice of Hearing and Motion for Relief from Stay upon all entities named below by first class mail postage prepaid and to any entities who are Filing Users, by automatic e-mail notification pursuant to the Electronic Case Filing System:

Brandon Gustav Buehring             Buehring Properties, LLC
540 W. 11th St                      51100 Driftwood Ave
Rush City, MN 55069                 Rush City, MN 55069

Nicholas Buehring                   Chad Buehring
51100 Driftwood Ave                 3838 Rush Lake Rd
Rush City, MN 55069                 Rush City, MN 55069

Diane Buehring aka Diane L. Buehring   Lynette Buehring
51100 Driftwood Ave                 3838 Rush Lake Rd
Rush City, MN 55069                 Rush City, MN 55069

U.S. Trustee                        Buehring Farms LLC
1015 US Courthouse                  51100 Driftwood Ave
300 S. 4th St.                      Rush City, MN 55069
Minneapolis, MN 55415

Kyle Carlson
P.O. Box 519
Barnesville, MN 56514

And I declare, under penalty of perjury, that the foregoing is true and correct.

Dated: October 8, 2020            /s/ Heidi Liebersbach
                                  Heidi Liebersbach

4815-1968-3534, v. 1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In Re:                                          Bky File No: 20-31858– MER
                                                                    Chapter 12
Buehring Properties, LLC,

                                          **ORDER GRANTING RELIEF FROM
                                                        STAY**

                    Debtor.

This case is before the court on the motion of Unity Bank for relief from the automatic stay imposed by 11 U.S.C. 362(a).

Based on the record, the court finds that grounds exist under 11 U.S.C. 362(d) to warrant relief, the automatic stay having terminated upon entry of the debtor's discharge.

IT IS ORDERED:

1.        The motion for relief from stay is granted as follows.

2.        The automatic stay imposed by 11 U.S.C. 362(a) is terminated as to the estate's interest in the property such that the movant may exercise its rights and remedies under applicable nonbankruptcy law with respect to the following property:

Parcel 1:

The Northeast Quarter of the Southwest Quarter (NE¼ of SW¼) and the Southwest Quarter of the Southeast Quarter (SW¼ of SE¼), in Section Thirteen (13), Township Thirty-seven (37) North, Range Twenty-two (22) West, Chisago County, Minnesota, EXCEPTING THEREFROM the South 450 Feet of the Northeast Quarter of the Southwest Quarter of Section Thirteen (13), Township Thirty-seven (37) North, Range Twenty-two (22) West, Chisago County, Minnesota.

(PID: 06.00269.00)

And

The Northeast Quarter of the Northeast Quarter (NE¼ of NE¼) of Section Twenty-four (24), Township Thirty-seven (37) North, Range Twenty-two (22) West, Chisago County, Minnesota EXCEPTING THEREFROM the following described parcel:

That part of the Northeast Quarter of the Northeast Quarter of Section Twenty-four (24), Township Thirty-seven (37), Range Twenty-two (22), Chisago County, Minnesota, described as follows:

Commencing at the northeast corner of said Section 24; thence on an assumed bearing of South 0 degrees 00 minutes 17 seconds West, along the East line of said Section 24, a distance of 850.07 feet; thence South 80 degrees 24 minutes 45 seconds West, 672.76 feet to the point of beginning of the tract herein described; thence continuing on a bearing of South 80 degrees 24 minutes 45 seconds West, 390.14 feet; thence North 5 degrees 52 minutes 03 seconds West, 315.69 feet, thence North 89 degrees 45 minutes 13 seconds West 185.38 feet to the West line of said Northeast Quarter of the Northeast Quarter; thence South 0 degrees 08 minutes 15 seconds East, along last said line 601.45 feet; thence North 80 degrees 24 minutes 45 seconds East 610.00 feet; thence North 0 degrees 08 minutes 15 seconds West 250.00 feet to the point of beginning.

(PID: 06.00532.00, with the excepted property as 06.00532.10)

Parcel 2:

The Southwest Quarter of the Northwest Quarter (SW ¼ of NW ¼), Section Eighteen (18), Township Thirty-seven (37) North, Range Twenty-one (21) West, except the South 2 Rods thereof, Chisago County, Minnesota.

(PID: 06.00050.00)

Parcel 3:

The North Half of the Southeast Quarter of Section Thirteen (13), Township Thirty-seven (37), Range Twenty-two (22), Chisago County, Minnesota.
(PID: 06.00271.00)

Parcel 4:

The West Half of the Southeast Quarter of the Southeast Quarter of Section Thirteen (13), Township Thirty-seven (37), Range Twenty-two (22), Chisago County, Minnesota.

(PID: 06.00272.10)

Parcel 5:

The Southeast Quarter of the Southeast Quarter (SE¼ of SE¼) of Section Twelve (12), Township Thirty-seven (37), Range Twenty-two (22), Chisago County, Minnesota.

(PID: 06.00260.00)

And

The East Half of the Northeast Quarter (E ½ of NE¼) of Section Thirteen (13), Township Thirty-seven (37), Range Twenty-two (22), Chisago County, Minnesota.

(PID: 06.00261.00)

Parcel 6:

That part of the Northwest Quarter of the Northeast Quarter (NW ¼ of NE ¼), Section Twenty-four (24), Township Thirty-seven (37) North, Range Twenty-two (22) West, described as follows:

Commencing at the north quarter corner of said Sec. 24; thence 92 degrees 15 minutes 40 seconds, assumed azimuth from North along the north line of the NE¼ of said Sec. 24, a distance of 647.07 feet; thence 179 degrees 35 minutes, 634.48 feet; thence 270 degrees 59 minutes 42 seconds, a distance of 32.70 feet to the point of beginning of the parcel to be described; thence return 90 degrees 59 minutes 42 seconds along the last described line, a distance of 32.70 feet; thence 89 degrees 35 minutes to the east line of said NW¼ of NE ¼; thence northerly, along said east line to the northeast corner of said NW ¼ of NE ¼ thence 272 degrees 15 minutes 40 seconds along the north line of said NW ¼ of NE ¼ to a point distant 248.73 feet easterly of the north quarter corner of said Sec. 24; thence 176 degrees 22 minutes 23 seconds, a distance of 234.36 feet; thence 139 degrees 29 minutes 42 seconds, a distance of 546.75 feet to the point of beginning.

(PID: 06.00533.15)

All contained in the County of Chisago, State of Minnesota.

3.      Notwithstanding Fed. R. Bankr. P. 4001(a)(3), this order is effective immediately.

_____
United States Bankruptcy Judge

Dated:

4824-5887-9950, v. 1

3